IN THE UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | District Court |
| Plaintiff, | ) | Case No. |
| vs. | ) | 13-10176 |
| | ) | |
| WALTER E. ACKERMAN, | ) | Circuit Court |
| | ) | Case No. |
| Defendant. | ) | 14-3265 |

TRANSCRIPT OF PLEA HEARING

On the 8th day of September, 2014, came on to be
heard proceedings in the above-entitled and numbered
cause before the HONORABLE ERIC F. MELGREN, Judge of the
United States District Court for the District of Kansas,
sitting in Wichita, commencing at 1:56 PM.  Proceedings
recorded by mechanical stenography.  Transcript produced
by computer.

APPEARANCES

The plaintiff appeared by and through:
        Mr. Jason Hart
        United States Attorney's Office
        1200 Epic Center
        301 North Main
        Wichita, Kansas  67202

The defendant appeared by and through:
        Mr. John K. Henderson, Jr.
        Federal Public Defender's Office
        301 North Main
        Suite 850
        Wichita, Kansas 67202

| | | |
|---|---|---|
| 13:56:15 | 1 | COURTROOM DEPUTY:  All rise.  United States |
| 13:56:18 | 2 | District Court for the District of Kansas is now in session, |
| 13:56:20 | 3 | the Honorable Eric F. Melgren presiding. |
| 13:56:24 | 4 | THE COURT:  Good afternoon.  You may be seated. |
| 13:56:26 | 5 | The court calls the case of the United States |
| 13:56:34 | 6 | versus Walter Ackerman, Case No. 13-10176-01.  The |
| 13:56:41 | 7 | United States appears by Assistant United States Attorney Jason |
| 13:56:43 | 8 | Hart, and the defendant appears in person and by his counsel |
| 13:56:48 | 9 | Assistant Federal Public Defender John Henderson.  This matter |
| 13:56:51 | 10 | comes before the court for a change of plea. |
| 13:56:55 | 11 | Mr. Ackerman, before I start with the change of |
| 13:56:57 | 12 | plea with you, I have some matters to address with counsel. |
| 13:57:00 | 13 | Counsel, I assume you both have a copy of the plea agreement. |
| 13:57:02 | 14 | I'd ask that you pull it out and look at it.  As you know, I |
| 13:57:06 | 15 | ask you to submit these plea agreements in advance so that I |
| 13:57:09 | 16 | can go through them and prepare for them in hearings.  Lately |
| 13:57:13 | 17 | I've had an increased episode of, after I've gone through a |
| 13:57:16 | 18 | plea agreement and prepared for it, I get a revised or changed |
| 13:57:19 | 19 | or amended plea agreement sent to me that I have to go through |
| 13:57:22 | 20 | and prepare for again, which is kind of a waste of my time. |
| 13:57:25 | 21 | To help ameliorate that, my assistant has asked |
| 13:57:29 | 22 | each of you to identify the changes to the plea agreement when |
| 13:57:34 | 23 | you send me a change of the plea agreement.  Mind you, I still |
| 13:57:37 | 24 | have to go through the amended plea agreement, make my notes on |
| 13:57:40 | 25 | it for these hearings, and it's still not a good use of my time |

9-8-14  USA v. ACKERMAN  No. 13-10176

3

| | | |
|---|---|---|
| 13:57:43 | 1 | but I've done that.  We received, Friday afternoon at 4:42, an |
| 13:57:48 | 2 | e-mail from your office, Mr. Henderson, that said -- that |
| 13:57:51 | 3 | attached the changed plea and petition, and the e-mail said, |
| 13:57:56 | 4 | "In the petition we just added the words conditional in the |
| 13:58:00 | 5 | caption and in Paragraph 5."  That appears to be correct.  "The |
| 13:58:03 | 6 | plea agreement changes are in Paragraph 4."  This is e-mail I |
| 13:58:09 | 7 | received from your office, Mr. Henderson. |
| 13:58:11 | 8 | Now, if you'd pull out the plea agreement and look |
| 13:58:13 | 9 | at it, in fact, the last sentence in Paragraph 1 is new. |
| 13:58:21 | 10 | Paragraph 2 is completely new, did not exist in the prior plea |
| 13:58:25 | 11 | agreement.  Paragraph 3 has a new number on it, and the last |
| 13:58:30 | 12 | sentence in the third paragraph of paragraph 3 is new.  In |
| 13:58:38 | 13 | Paragraph 4 the next-to-last sentence in the first paragraph |
| 13:58:41 | 14 | contains new language, and the first sentence in the second |
| 13:58:48 | 15 | paragraph contains new language.  The old Paragraph 5 is gone, |
| 13:58:52 | 16 | and in its place is an entirely new Paragraph 5 that didn't |
| 13:58:56 | 17 | exist in the prior document.  This paragraph, by the way, goes |
| 13:58:59 | 18 | on for a page and a half.  The next four paragraphs are |
| 13:59:02 | 19 | renumbered.  Actually, the next several paragraphs are |
| 13:59:05 | 20 | renumbered.  In Paragraph 11, the last paragraph is entirely |
| 13:59:11 | 21 | new.  And those are the changes I noted which you'll agree are |
| 13:59:17 | 22 | substantially beyond the note that the plea agreement changes |
| 13:59:22 | 23 | are in Paragraph 4. |
| 13:59:23 | 24 | Can you explain to me what happened?  Because this |
| 13:59:26 | 25 | is a huge waste of my time, first of all, to have -- don't look |

|          |    |                                                                 |
|----------|----|-----------------------------------------------------------------|
| 13:59:30 | 1  | at me that way, Mr. Hart -- first of all, to have to go through |
| 13:59:34 | 2  | plea agreements twice because you can't submit them to me       |
| 13:59:36 | 3  | correctly the first time; and then, secondly, to receive        |
| 13:59:39 | 4  | misinformation that the only changes are in Paragraph 4.  And   |
| 13:59:42 | 5  | the only reason I caught this is because Paragraph 4 in the new |
| 13:59:45 | 6  | agreement is not even the same paragraph as Paragraph 4 in the  |
| 13:59:49 | 7  | old plea agreement that have been renumbered.  And as I noted   |
| 13:59:52 | 8  | for you, there are substantial changes, so how did we get so    |
| 13:59:55 | 9  | messed up?  Can you advise me?                                  |
| 13:59:57 | 10 |          MR. HART:  Your Honor, if I may.  First off, the      |
| 13:59:59 | 11 | Government was not aware that the -- that a document had been    |
| 14:00:02 | 12 | sent to the Court indicating that a plea agreement had been     |
| 14:00:05 | 13 | reached, because the last communication that I had with         |
| 14:00:09 | 14 | Mr. Henderson before the present one was that the defendant was |
| 14:00:13 | 15 | going to be entering a plea without an agreement, so I'm -- the |
| 14:00:16 | 16 | look on my face is I'm confused because I did not realize you   |
| 14:00:21 | 17 | had been provided a previous document.  The only one that I was |
| 14:00:24 | 18 | aware of where we actually had an agreement as to the contents  |
| 14:00:27 | 19 | is the one that's presently before the Court.                   |
| 14:00:29 | 20 |          So in terms of, I guess, my understanding of what     |
| 14:00:34 | 21 | has transpired, my understanding is the defendant had notified  |
| 14:00:39 | 22 | the Court of his intent to enter a plea without a plea          |
| 14:00:44 | 23 | agreement, that would have been back on, I believe, August      |
| 14:00:47 | 24 | 19th, 2014.  In this intervening period Mr. Henderson and I,    |
| 14:00:54 | 25 | with Mr. Ackerman, have reached an agreement.  That is the one  |

14:00:57  1   that's presently before the Court.

14:00:59  2              In terms of advising the Court of any

14:01:01  3   modifications or changes, I would apologize.  I simply did not

14:01:06  4   know that the Court had been provided a previous plea

14:01:08  5   agreement, and my understanding was the defendant was pleading

14:01:11  6   without a plea agreement up until the point where we reached

14:01:15  7   this one, which the Court now has.

14:01:17  8              THE COURT:  All right.  Thank you, Mr. Hart.

14:01:18  9              And this e-mail did come from your office,

14:01:20  10  Mr. Henderson.  Can you explain this?

14:01:21  11             MR. HENDERSON:  Yes, Your Honor.  Thank you.  Your

14:01:23  12  Honor, Mr. Hart's recitation of our understanding and our

14:01:28  13  discussions is entirely accurate.  I was very surprised to find

14:01:32  14  that the first plea agreement had been sent to Your Honor as

14:01:35  15  well.  There was --

14:01:36  16             THE COURT:  Well, you're responsible for what

14:01:38  17  happens in your office, Mr. Henderson.

14:01:39  18             MR. HENDERSON:  I understand, Your Honor.  And I

14:01:41  19  apologize for that.  I know the buck stops with me and that I'm

14:01:44  20  ultimately responsible.  It was certainly not my intent to send

14:01:51  21  it.  It was sent.  That's my mistake, and I have to account for

14:01:56  22  it.

14:01:59  23             When I realized there was a mistake or an issue, I

14:02:06  24  asked Sharon to contact Court's chambers, alert them that that

14:02:14  25  version of the plea agreement should not have been sent, and

| | |
|---|---|
| 14:02:20 | 1 |
| 14:02:23 | 2 |
| 14:02:26 | 3 |
| 14:02:29 | 4 |
| 14:02:32 | 5 |
| 14:02:35 | 6 |
| 14:02:38 | 7 |
| 14:02:43 | 8 |
| 14:02:46 | 9 |
| 14:02:48 | 10 |
| 14:02:50 | 11 |
| 14:02:55 | 12 |
| 14:02:59 | 13 |
| 14:03:03 | 14 |
| 14:03:10 | 15 |
| 14:03:13 | 16 |
| 14:03:18 | 17 |
| 14:03:23 | 18 |
| 14:03:32 | 19 |
| 14:03:39 | 20 |
| 14:03:41 | 21 |
| 14:03:43 | 22 |
| 14:03:45 | 23 |
| 14:03:50 | 24 |
| 14:03:52 | 25 |

1  from that point forward then I did not think about that other

2  plea agreement.  I thought it was going to be thrown in the

3  trash can or otherwise disposed of.  I had not --

4       THE COURT:  Well, that means that you can send me

5  documents, expect me to look through them, send me new

6  documents and then expect me to start from scratch, which is

7  pretty inconsiderate of your free use of the Court's time, if

8  you're just expecting old agreements to be thrown in the trash

9  and we start new with a new agreement.

10       MR. HENDERSON:  Well, and I apologize, Your Honor.

11  As I say, from our -- logistically, from our office's

12  standpoint, it was a mistake to -- that should never have left

13  the office.  It should never have left the office.  And when I

14  realized it had, I tried to address it immediately by having

15  that document never reach Your Honor so that the Court wouldn't

16  have to even see it or consider it, because it never should

17  have been -- it never should have left the office.  And when

18  I -- so I apologize.  I did not know that -- I wasn't thinking

19  of it in terms of making corrections to a new plea agreement.

20  Sharon, I know, is --

21       THE COURT:  Where do you think she got the

22  information that the only changes in the plea agreement were in

23  Paragraph 4?  She wouldn't have made that up herself.

24       MR. HENDERSON:  Your Honor, I did not provide that

25  information to her.

9-8-14  USA v. ACKERMAN  No. 13-10176

| | | |
|---|---|---|
| 14:03:53 | 1 | THE COURT:  So she did make it up herself. |
| 14:03:55 | 2 | MR. HENDERSON:  She -- I'm assuming that she |
| 14:03:57 | 3 | looked at what she had sent before, looked at this new one, and |
| 14:04:02 | 4 | drafted the e-mail.  And I apologize -- |
| 14:04:05 | 5 | THE COURT:  Well, that can't even be, because, as |
| 14:04:07 | 6 | I said, the old one and the new one have different Paragraph |
| 14:04:11 | 7 | 4s.  Under the old one, Paragraph 4 -- no, I guess Paragraph 4s |
| 14:04:17 | 8 | are both Government agreements on the old and the new ones, but |
| 14:04:21 | 9 | the Paragraph 3s are different, which you think she would have |
| 14:04:24 | 10 | noticed, completely different.  They're about different |
| 14:04:27 | 11 | subjects.  One's half a page long; one's three lines long. |
| 14:04:34 | 12 | I don't understand.  I mean, it's a concern to me |
| 14:04:36 | 13 | because increasingly I'm getting revised plea agreements at the |
| 14:04:38 | 14 | last minute with information that "here's what the changes |
| 14:04:41 | 15 | are," and this tells me that I can't rely on information that I |
| 14:04:45 | 16 | get from your office, Mr. Henderson, as to what the changes are |
| 14:04:49 | 17 | because it's not even close to accurate. |
| 14:04:51 | 18 | And it gives rise to another concern as well, |
| 14:04:53 | 19 | which is we received this plea agreement after 4:00 o'clock on |
| 14:04:57 | 20 | Friday.  It's substantially different from the one I had |
| 14:05:01 | 21 | before.  It gives me cause for concern as to when you had time |
| 14:05:05 | 22 | to go over this substantially revised plea agreement with your |
| 14:05:08 | 23 | client. |
| 14:05:09 | 24 | When did you? |
| 14:05:11 | 25 | MR. HENDERSON:  Your Honor, we Federal Expressed |

| | | |
|---|---|---|
| 14:05:14 | 1 | it to Mr. Ackerman and then I talked to him over the phone |
| 14:05:18 | 2 | about it. |
| 14:05:18 | 3 | THE COURT:  When? |
| 14:05:21 | 4 | MR. HENDERSON:  I believe we talked Friday, I |
| 14:05:23 | 5 | believe, Your Honor.  But I had also -- we had anticipated -- |
| 14:05:32 | 6 | as Mr. Hart explained, we had anticipated entering a plea |
| 14:05:37 | 7 | without a plea agreement.  Notwithstanding that, I had gone |
| 14:05:40 | 8 | over with Mr. Ackerman in person the typical language that's in |
| 14:05:47 | 9 | a plea agreement, so that if something happened at the last |
| 14:05:51 | 10 | minute, that he would be informed as to those pieces of |
| 14:05:54 | 11 | information.  I then spoke to him on the phone.  We received |
| 14:06:00 | 12 | Mr. Hart's e-mail, I think it was Thursday, perhaps, Wednesday |
| 14:06:03 | 13 | or Thursday, with the new plea agreement.  I'd have to check |
| 14:06:08 | 14 | the dates.  But as soon as I received that, then I spoke to |
| 14:06:13 | 15 | Mr. Ackerman about the substantive contents of the plea |
| 14:06:18 | 16 | agreement, and he and I discussed it, and he made a decision, |
| 14:06:23 | 17 | based upon the substance, the substance offers, proposals in |
| 14:06:32 | 18 | the plea agreement.  And then I Federal Expressed it to him, we |
| 14:06:38 | 19 | went over it, and he was prepared to go.  He and I have talked |
| 14:06:43 | 20 | several times on the telephone since -- |
| 14:06:44 | 21 | THE COURT:  So after you Federal Expressed it to |
| 14:06:46 | 22 | him, did you go over it paragraph by paragraph with him? |
| 14:06:52 | 23 | MR. HENDERSON:  He -- yes.  Well, we went through |
| 14:06:57 | 24 | the what I'll call the draft agreement in the paragraphs.  I |
| 14:07:05 | 25 | told him -- I went through with him the key elements of the |

9-8-14  USA v. ACKERMAN  No. 13-10176

14:07:11  1   plea agreement that we have today.  He read it.  He had it in

14:07:16  2   front of him.  And I asked him if he had any further questions

14:07:22  3   about it.

14:07:23  4              THE COURT:  I -- you've lost me on your answer,

14:07:26  5   Mr. Henderson.

14:07:26  6              MR. HENDERSON:  Okay.

14:07:27  7              THE COURT:  My question was, with respect to this

14:07:28  8   final plea agreement, it was sent to me after 4:00 o'clock on

14:07:33  9   Friday, have you gone through that document by paragraph by

14:07:36 10   paragraph with him after it was compiled?

14:07:40 11              MR. HENDERSON:  Your Honor, I have in separate

14:07:44 12   meetings.

14:07:44 13              THE COURT:  Well, when was this document compiled?

14:07:48 14   How many separate meetings can you have had between 4:00

14:07:52 15   o'clock on Friday and today?

14:07:55 16              MR. HENDERSON:  Your Honor, we had a meeting face

14:07:57 17   to face.  We sat down in our office, I went through a plea

14:08:03 18   agreement that didn't have the new information, the new

14:08:07 19   language in it.  So I went through that portion of the

14:08:10 20   agreement with him and we discussed it.  Then I sent him the

14:08:17 21   plea agreement that we have and highlighted the portions of it

14:08:24 22   which were different, and he and I --

14:08:26 23              THE COURT:  Which, if it's the same as mine, are

14:08:30 24   considerable.  There are a lot of differences.

14:08:32 25              MR. HENDERSON:  There are, Your Honor.  And we

| 14:08:34 | 1 | discussed them.  He had several questions.  We had several |
|---|---|---|
| 14:08:39 | 2 | additional phone calls.  And I was satisfied that he understood |
| 14:08:45 | 3 | the plea agreement, he understood and does understand all of |
| 14:08:50 | 4 | the component parts of it, and what he's agreeing to do and |
| 14:08:53 | 5 | what the Government's agreeing to do. |
| 14:08:55 | 6 | THE COURT:  Well, counsel, this is no way to run a |
| 14:08:58 | 7 | Navy.  This is an increasing problem.  I'm frequently getting |
| 14:09:02 | 8 | revised plea agreements at the last minute with changes in |
| 14:09:07 | 9 | them.  I've tolerated that in the past because those agreements |
| 14:09:10 | 10 | have come with an indication of "here's where the changes are." |
| 14:09:15 | 11 | Often they're not substantive changes.  Occasionally they are. |
| 14:09:18 | 12 | But I've always gotten the indication of what those changes |
| 14:09:21 | 13 | are.  I'm no longer comfortable accepting those representations |
| 14:09:25 | 14 | because this e-mail from your office, Mr. Henderson, is so much |
| 14:09:29 | 15 | at variance with the facts as to be astonishing. |
| 14:09:33 | 16 | Plus, when these changes come in late, it really |
| 14:09:36 | 17 | gives me cause for concern as to whether the defendant's had |
| 14:09:40 | 18 | opportunity to go through them himself.  I'm sending a letter |
| 14:09:44 | 19 | today to both of your supervisors complaining about this |
| 14:09:47 | 20 | process of frequent last-minute changes to plea agreements.  It |
| 14:09:51 | 21 | seems to me that it would be only considerate of the Court and |
| 14:09:56 | 22 | the judicial process to not send me a document until it's |
| 14:09:58 | 23 | final, and not send me documents so there are stages in the |
| 14:10:03 | 24 | drafts for me to go through and waste my time when you're going |
| 14:10:05 | 25 | to change them again. |

14:10:07  1          As I said, this scenario has increased over the

14:10:10  2   last several months, that I get a plea agreement, I go through

14:10:13  3   it and prepare it, because I review these and I make notes on

14:10:17  4   them so I can explain to the defendant, and then, voila, a new

14:10:23  5   plea agreement shows up shortly before the hearing and I have

14:10:25  6   to go through it and do it again.  It's inconsiderate of the

14:10:28  7   Court's time to do that.  It gives me cause for concern as to

14:10:32  8   what document the defendant's gone through, and I've now lost

14:10:35  9   confidence that I can rely on what the changes are.  So this is

14:10:38  10  no way to run a Navy, and I'm asking you -- and in my letter

14:10:42  11  today to both of your supervisors I'm asking them -- to make

14:10:45  12  renewed efforts to only send me documents that are final drafts

14:10:52  13  because I'm not content with this process.

14:10:54  14          MR. HENDERSON:  All right.

14:10:56  15          THE COURT:  That's all I have to say about this.

14:10:59  16  But obviously it's, as I say, no way to run a Navy.

14:11:03  17          The only other change I would make, you did -- or

14:11:06  18  comment I would make, you did change the petition to note that

14:11:09  19  it's a conditional plea of guilty.  Although minor, I think it

14:11:13  20  would be helpful in these cases to also have the plea agreement

14:11:16  21  noted as a conditional plea agreement.  If that's what it is,

14:11:23  22  because it's not your standard plea agreement, I think,

14:11:27  23  although not critical, a caption in that regard would be

14:11:29  24  helpful as well.

14:11:30  25          All right.  Mr. Ackerman, that brings me back to

| | | |
|---|---|---|
| 14:11:33 | 1 | you. |
| 14:11:33 | 2 | THE DEFENDANT:  Yes, sir. |
| 14:11:34 | 3 | THE COURT:  And just for the record, you are |
| 14:11:36 | 4 | Walter Ackerman? |
| 14:11:37 | 5 | THE DEFENDANT:  Yes, sir. |
| 14:11:37 | 6 | THE COURT:  Mr. Ackerman, I'm going to ask you |
| 14:11:40 | 7 | some questions this afternoon, and your answers are going to be |
| 14:11:43 | 8 | under oath and on the record. |
| 14:11:44 | 9 | THE DEFENDANT:  Yes, sir. |
| 14:11:45 | 10 | THE COURT:  That means if you give me false |
| 14:11:47 | 11 | answers or if you change your answers, the United States could |
| 14:11:51 | 12 | prosecute you for perjury or for false statements.  Do you |
| 14:11:54 | 13 | understand? |
| 14:11:55 | 14 | THE DEFENDANT:  Yes, sir. |
| 14:11:55 | 15 | THE COURT:  Are you agreeable to take an oath to |
| 14:11:57 | 16 | tell the truth in this hearing? |
| 14:11:58 | 17 | THE DEFENDANT:  Yes, sir. |
| 14:11:59 | 18 | THE COURT:  Would you please stand, Mr. Ackerman, |
| 14:12:01 | 19 | and the courtroom deputy will swear you in. |
| 14:12:02 | 20 | (The defendant complies.) |
| 14:12:03 | 21 | COURTROOM DEPUTY:  If you would raise your right |
| 14:12:04 | 22 | hand for me, please.  You do solemnly swear that the statements |
| 14:12:08 | 23 | given in the petition to enter a plea of guilty herein are true |
| 14:12:13 | 24 | and correct and that any oral statements you make at this |
| 14:12:16 | 25 | hearing are true and correct, so help you God?  If so, please |

| | | |
|---|---|---|
| 14:12:21 | 1 | say, "I do." |
| 14:12:22 | 2 | THE DEFENDANT:  I do. |
| 14:12:22 | 3 | COURTROOM DEPUTY:  Thank you. |
| 14:12:23 | 4 | THE COURT:  You may be seated, Mr. Ackerman, and |
| 14:12:24 | 5 | you may answer my questions while you're sitting at the table |
| 14:12:28 | 6 | unless I direct you otherwise. |
| 14:12:29 | 7 | (The defendant complies.) |
| 14:12:30 | 8 | THE COURT:  I'm told that you're 57 years old and |
| 14:12:33 | 9 | you've completed formal education through the 12th grade, |
| 14:12:36 | 10 | through a high school diploma.  Is that correct? |
| 14:12:37 | 11 | THE DEFENDANT:  Yes, sir. |
| 14:12:38 | 12 | THE COURT:  Have you had any alcohol to drink in |
| 14:12:39 | 13 | the last 24 hours? |
| 14:12:40 | 14 | THE DEFENDANT:  No, sir. |
| 14:12:41 | 15 | THE COURT:  Have you taken any medicine or drugs |
| 14:12:44 | 16 | of any kind, whether legal or otherwise, at any time in the |
| 14:12:47 | 17 | past seven days? |
| 14:12:48 | 18 | THE DEFENDANT:  Yes, sir. |
| 14:12:48 | 19 | THE COURT:  Tell me what you've taken. |
| 14:12:49 | 20 | THE DEFENDANT:  I take medication for anxiety and |
| 14:12:57 | 21 | depression, and I took -- I took a pill to help me sleep 'cause |
| 14:13:03 | 22 | I've been having a problem sleeping at night, and I took pain |
| 14:13:09 | 23 | reliever medicines last night for a headache. |
| 14:13:14 | 24 | THE COURT:  Just over-the-counter pain reliever |
| 14:13:16 | 25 | medicine? |

| | | |
|---|---|---|
| 14:13:17 | 1 | THE DEFENDANT:  Pain reliever.  Yes, it's just |
| 14:13:25 | 2 | acetamino- -- it's kind of like under-the-counter -- |
| 14:13:27 | 3 | over-the-counter-type deal of Ibuprofen. |
| 14:13:31 | 4 | THE COURT:  Tell me about your anxiety medicine. |
| 14:13:33 | 5 | Is that prescribed medicine? |
| 14:13:35 | 6 | THE DEFENDANT:  Yes, it is.  It's prescribed -- |
| 14:13:36 | 7 | THE COURT:  How long have you been taking it? |
| 14:13:38 | 8 | THE DEFENDANT:  Several months.  I started taking |
| 14:13:42 | 9 | it around last December.  Or, actually, I've been -- December, |
| 14:13:50 | 10 | January, when I started therapy, I started taking the meds. |
| 14:13:54 | 11 | THE COURT:  Does it interfere with your process to |
| 14:13:56 | 12 | understand -- to process, to think clearly or to understand |
| 14:14:00 | 13 | what's going on? |
| 14:14:01 | 14 | THE DEFENDANT:  No, sir. |
| 14:14:01 | 15 | THE COURT:  What about your sleep aid medicine; is |
| 14:14:05 | 16 | that prescription medicine? |
| 14:14:06 | 17 | THE DEFENDANT:  Yes, it is. |
| 14:14:06 | 18 | THE COURT:  And how long have you been taking |
| 14:14:08 | 19 | that? |
| 14:14:08 | 20 | THE DEFENDANT:  I only take it off and on to help |
| 14:14:10 | 21 | me get to sleep 'cause, like I said, I've been having a problem |
| 14:14:13 | 22 | getting to sleep. |
| 14:14:14 | 23 | THE COURT:  But you've taken it for a while?  I |
| 14:14:18 | 24 | mean, you didn't just start taking it this week? |
| 14:14:21 | 25 | THE DEFENDANT:  No, sir, I've been taking it on |

14:14:22   1    and off for the past couple weeks.

14:14:25   2              THE COURT:  All right.  And again, I assume you

14:14:27   3    took that last night, so I'm assuming it has no affect on your

14:14:30   4    thought process today?

14:14:31   5              THE DEFENDANT:  No, I didn't want to take one

14:14:33   6    before court because I wanted to be --

14:14:35   7              THE COURT:  Oh, you did not take one last night.

14:14:38   8              THE DEFENDANT:  Not a sleep aid.

14:14:39   9              THE COURT:  But you've taken some previously.

14:14:40  10              THE DEFENDANT:  Yes, sir.  I didn't want to be

14:14:41  11    dysfunctional in court.

14:14:43  12              THE COURT:  All right.  Do any -- I appreciate

14:14:45  13    that.  Do any of those medicines -- and the other one you

14:14:47  14    mentioned was an over-the-counter pain reliever.  Do any of

14:14:51  15    them interfere with your thought process or your ability to

14:14:53  16    make clear judgments?

14:14:55  17              THE DEFENDANT:  No.  If anything, the anxiety

14:14:57  18    pills helps me calm down so I can speak more clearly to you.

14:15:01  19              THE COURT:  Okay.  I appreciate that.  Thank you,

14:15:02  20    Mr. Ackerman.

14:15:02  21              Mr. Henderson, how can you have gone through the

14:15:05  22    petition with your client and given me the answer on Paragraph

14:15:08  23    21 of that petition that you did?

14:15:11  24              MR. HENDERSON:  Your Honor, I did go through the

14:15:16  25    material and I thought I had made those changes.  They're not

| | |
|---|---|
| 14:15:22 | 1 |
| 14:15:24 | 2 |
| 14:15:27 | 3 |
| 14:15:28 | 4 |
| 14:15:30 | 5 |
| 14:15:33 | 6 |
| 14:15:35 | 7 |
| 14:15:39 | 8 |
| 14:15:41 | 9 |
| 14:15:44 | 10 |
| 14:15:45 | 11 |
| 14:15:45 | 12 |
| 14:15:48 | 13 |
| 14:15:52 | 14 |
| 14:15:54 | 15 |
| 14:15:57 | 16 |
| 14:16:01 | 17 |
| 14:16:05 | 18 |
| 14:16:07 | 19 |
| 14:16:08 | 20 |
| 14:16:12 | 21 |
| 14:16:15 | 22 |
| 14:16:18 | 23 |
| 14:16:20 | 24 |
| 14:16:24 | 25 |

reflected on the documents that the Court has.

THE COURT:  So you had a note of these items for Paragraph 21?

MR. HENDERSON:  Your Honor, I believe I did.  I'd have to go back and check the file, but I've known that --

THE COURT:  Well, what other changes are not reflected in the documents that I have?  You understand that my confidence level in these documents you've given me, Mr. Henderson, which started out pretty low, is sinking all the time.

MR. HENDERSON:  Your Honor --

THE COURT:  How do I know that the documents that I have here are really the correct documents?  Because you've just -- we're five minutes into this hearing with Mr. Ackerman and you're already telling me that there are other changes in these documents that you thought you made that you didn't.

MR. HENDERSON:  Your Honor, I'm not aware of any other changes that will be necessary.

THE COURT:  I don't have any confidence in that statement, Mr. Henderson, based on the representations I've gotten from you so far in this case.  Do you have your notes with you as to changes you've made on these documents?

MR. HENDERSON:  Your Honor, I'm not sure.  I don't have the entire file here.  I marked up the document.  I gave it to my paralegal.  It may have been that she destroyed it.

14:16:31  1          THE COURT:  When I work, even with my assistant

14:16:35  2     who is excellent, and gave her something to mark up, I always

14:16:40  3     review what she sent me back.  Do you not do that?

14:16:46  4          MR. HENDERSON:  I do, Your Honor.

14:16:47  5          THE COURT:  So how can you have given these

14:16:49  6     changes to your assistant to make and they're not made?

14:16:52  7          MR. HENDERSON:  Your Honor, it's my mistake.

14:17:03  8          THE COURT:  Mr. Ackerman's on that bond, and my

14:17:06  9     recollection is that he lives in north central Kansas, and has

14:17:10  10    doubtlessly driven down today for this hearing; is that

14:17:12  11    correct?

14:17:12  12         MR. HENDERSON:  That's correct, Your Honor.

14:17:18  13         THE COURT:  Well, were it not for that I would

14:17:21  14    certainly adjourn this proceeding and tell you to start over in

14:17:24  15    going through these documents with him.  I'm reluctant to do

14:17:26  16    that.  It's an inconvenience to him, but I'm reluctant to

14:17:30  17    proceed because I've lost all confidence in these documents, so

14:17:32  18    what do you suggest I do?

14:17:35  19         MR. HENDERSON:  Your Honor, if the Court would

14:17:43  20    care to recess for five --

14:17:45  21         THE COURT:  I have a substantial afternoon docket

14:17:47  22    that goes until after 4:00 o'clock today.

14:17:49  23         MR. HENDERSON:  Your Honor, I've gone through the

14:17:51  24    document with Mr. Ackerman.

14:17:53  25         THE COURT:  Well, obviously, you haven't because

14:17:55   1   it's inaccurate.

14:17:57   2             MR. HENDERSON:  Your Honor, I went through the

14:17:59   3   document that we have here with Mr. Ackerman.  I thought the

14:18:03   4   changes had been made to it after we met.  I see that they

14:18:07   5   haven't been made, and I apologize for that mistake.  But I

14:18:14   6   have gone through the document with Mr. Ackerman.  He and I've

14:18:19   7   discussed it.  He's aware of its contents and is prepared to

14:18:23   8   sign the document at the end of the proceeding.

14:18:25   9             THE COURT:  Which documents is he prepared to

14:18:27  10   sign?

14:18:27  11             MR. HENDERSON:  Both documents.

14:18:29  12             THE COURT:  Do we have an accurate one that he's

14:18:31  13   prepared to sign?  Is the one you have accurate as to question

14:18:34  14   21?

14:18:35  15             MR. HENDERSON:  Your Honor, as we were talking I

14:18:37  16   interlineated and wrote in the reference to the anxiety

14:18:40  17   medication and the sleep medication.

14:18:50  18             MR. HART:  Your Honor, if I may.

14:18:51  19             THE COURT:  I was just going to ask if you wanted

14:18:53  20   to be heard on this, Mr. Hart.

14:18:54  21             MR. HART:  Thank you, Your Honor.  Your Honor, the

14:18:56  22   nature of the plea agreement, one of the conditions of the plea

14:18:59  23   agreement is that the Government would recommend or agree that

14:19:03  24   the defendant remain on bond pending the appeal of the

14:19:08  25   conditional plea issue.

14:19:09  1            THE COURT:  Right.

14:19:09  2            MR. HART:  So, in effect, Mr. Ackerman would be

14:19:12  3  remaining on bond -- if the Court granted that -- he would be

14:19:16  4  remaining on bond while this matter was pending.  Given the

14:19:19  5  Court's concerns relative to the plea petition, as well as the

14:19:23  6  plea agreement, and I work very hard on that plea agreement to

14:19:29  7  make it very clear and very specific about what the parties

14:19:32  8  were agreeing to, and it is different than our standard form --

14:19:36  9            THE COURT:  It's very different.

14:19:37  10           MR. HART:  And --

14:19:38  11           THE COURT:  And that's neither good nor bad; it's

14:19:40  12  just I noted it was very much tailored to this case.

14:19:43  13           MR. HART:  Well, and I think if the Court has seen

14:19:46  14  the prior one, the Court probably has quite a bit of confusion

14:19:49  15  about what the nature of this current one is, because they are

14:19:53  16  very different and things are rearranged.

14:19:55  17           THE COURT:  I've spent time going through the

14:19:56  18  current one, came in late Friday afternoon, so I'm aware of

14:20:01  19  what its provisions are.

14:20:05  20           MR. HART:  Well, and, Your Honor, that was going

14:20:06  21  to be my suggestion, is if the Court was not or didn't feel

14:20:10  22  comfortable with it, that we adjourn this matter.

14:20:12  23           THE COURT:  No, I'm comfortable with it.  I'm just

14:20:14  24  not comfortable that Mr. Ackerman's comfortable with it.  I'm

14:20:17  25  not comfortable that Mr. Henderson has done an adequate job of

14:20:20  1    going through these documents with his client, which is one of

14:20:23  2    my presuppositions before we have these hearings.  I understand

14:20:26  3    it.  I've gone through the document.  That's the only way I

14:20:29  4    could make the lengthy recitation I made at the beginning of

14:20:32  5    this hearing of all the differences between the two documents,

14:20:35  6    so I -- I'm comfortable with it.  I do this all the time,

14:20:40  7    though.  My concern is for Mr. Ackerman.

14:20:42  8                MR. HART:  And, Your Honor, I share the Court's

14:20:44  9    concern, and I think it would probably be prudent to give

14:20:50  10   Mr. Ackerman more time to speak with Mr. Henderson, to have

14:20:54  11   these documents corrected, and if the Court even would like

14:20:58  12   even to label the plea agreement as conditional plea agreement.

14:21:01  13                THE COURT:  That's -- that comment was only for

14:21:04  14   future cases.  I have no concern about this one.

14:21:06  15                MR. HART:  I would advise the Court, though, that

14:21:08  16   many of the changes are actually things that Mr. Ackerman

14:21:13  17   communicated to the Government through Mr. Henderson, with the

14:21:16  18   exception of two provisions:  one being the restitution matter

14:21:21  19   and the other being the release on bond pending appeal.  Those

14:21:27  20   were the two significant issues.  We also included a provision

14:21:32  21   related to obtaining photographs from the computers that were

14:21:36  22   seized, family photographs.  Those were three things that were

14:21:40  23   communicated by Mr. Henderson to me that Mr. Ackerman had

14:21:44  24   requested that were different substantively from the prior

14:21:48  25   agreement.

14:21:49   1        And when Mr. Henderson says he's gone through the

14:21:52   2   agreement in different meetings, I understand what he means,

14:21:54   3   because there's several provisions that were in the previous

14:21:58   4   plea agreement that are also in the current one that the Court

14:22:04   5   has, such as sex offender registration, the FOIA request

14:22:09   6   waiver, and so on and so forth.

14:22:11   7        Now, those provisions, like the FOIA request and

14:22:15   8   so forth, have actually been moved up in the plea agreement to

14:22:18   9   a different section, but otherwise those would be things that

14:22:23  10   Mr. Ackerman would have previously discussed with

14:22:26  11   Mr. Henderson.  And, actually, that plea agreement would have

14:22:29  12   been provided back on January 8th or -- I'm sorry, not

14:22:32  13   January 8th, but July 8th of this year, and then again on

14:22:37  14   August 19th, when Mr. Henderson actually sent the e-mail to the

14:22:43  15   Court.

14:22:43  16        So I think, in terms of Mr. Ackerman's

14:22:48  17   understanding, based upon what he has communicated to the

14:22:52  18   Government through his counsel, I think Mr. Ackerman

14:22:54  19   understands the nature of the terms of the plea agreement and

14:22:58  20   the things that he is bargaining for.  The additional terms

14:23:04  21   that the Government has set forth in the current plea agreement

14:23:11  22   are the ones that I've just articulated, and I would not expect

14:23:14  23   those to be something that are significantly unusual or

14:23:18  24   difficult for Mr. Ackerman to comprehend.

14:23:20  25        But if the Court has any questions about whether

14:23:23  1    or not to proceed today, it would seem to make the most sense

14:23:26  2    to ask those of Mr. Ackerman himself, to assuage any concern

14:23:31  3    that the Court might have.

14:23:42  4              THE COURT:  Mr. Ackerman, this is a very important

14:23:44  5    hearing for you.

14:23:45  6              THE DEFENDANT:  Yes, I know, sir.

14:23:47  7              THE COURT:  And if I accept the plea that you're

14:23:51  8    offering today, obviously it's going to have a profound impact

14:23:56  9    on you.  And it's critical to me in these hearings that

14:24:06  10   defendants understand what they're agreeing to.  These

14:24:09  11   documents are legal documents.  That's unavoidable.  We're in

14:24:14  12   court.  Counsel and I are very familiar with how they're

14:24:18  13   structured, but people such as yourself generally are not,

14:24:20  14   which is why a requirement is that your attorney goes through

14:24:26  15   it with you first and then I go through, not all of it, but

14:24:30  16   some of it with you again here in court, because we want to be

14:24:33  17   very sure that before you give up rights that you have or make

14:24:39  18   agreements that you're making, that you're very certain about

14:24:43  19   what you're doing.

14:24:44  20             THE DEFENDANT:  Can I say something to you?

14:24:46  21             THE COURT:  Please, go ahead.

14:24:47  22             THE DEFENDANT:  John, Mr. Henderson, he told me to

14:24:52  23   read it, and I read it like four times already.  And my

14:24:58  24   understanding, I understand what I'll be giving up.  I give up

14:25:02  25   the right to appeal the sentencing of you, and I also

| | | |
|---|---|---|
| 14:25:08 | 1 | understand that, just because there's an agreement set down in |
| 14:25:14 | 2 | the plea between my attorney and the attorney for the, you |
| 14:25:22 | 3 | know, district attorney, that it isn't written in stone unless |
| 14:25:27 | 4 | you actually accept it as well. |
| 14:25:29 | 5 | THE COURT:  But if I accept it, it -- to use your |
| 14:25:32 | 6 | language -- it does become written in stone. |
| 14:25:35 | 7 | THE DEFENDANT:  Oh, I know.  I'm just saying it's |
| 14:25:39 | 8 | not written in stone unless you also agree to it.  I do |
| 14:25:42 | 9 | understand that, if I'm correct in saying that.  I also agree |
| 14:25:47 | 10 | that I understand everything that I'm pleading guilty to, and I |
| 14:25:58 | 11 | understand about, you know, everything else in the order of I |
| 14:26:01 | 12 | have to register, I can't -- basically, I have to keep on doing |
| 14:26:08 | 13 | what I'm doing, without breaking any of the rules, any of the |
| 14:26:13 | 14 | agreements, not changing any of my statements; I have to stand |
| 14:26:17 | 15 | as is, as we agree right now.  Everything I answered yes to |
| 14:26:22 | 16 | stands.  I cannot change my mind later on down the line once |
| 14:26:29 | 17 | that's accepted by the court. |
| 14:26:32 | 18 | If you don't mind me saying, I -- I know I need to |
| 14:26:39 | 19 | make amends.  Oh, I'm sorry.  I'm sorry, sir.  I didn't mean to |
| 14:26:44 | 20 | say -- |
| 14:26:45 | 21 | THE COURT:  That's all right. |
| 14:26:46 | 22 | THE DEFENDANT:  I'm just saying that I |
| 14:26:49 | 23 | understand -- I read everything, like I said, back and forth. |
| 14:26:53 | 24 | And any time I did have a question, I did contact John on |
| 14:26:57 | 25 | Friday, and he told me -- he gave me his cell number to call |

14:27:01  1    him on the weekend if I need to, and we talked three or four

14:27:05  2    times Friday evening, every time I had a question.  And if he

14:27:10  3    didn't have an answer for me, he said he would check into it,

14:27:13  4    so he could give me an answer later.  So I was contacting John

14:27:16  5    in reference to anything I had any question.  Does that help

14:27:20  6    you?

14:27:20  7                 THE COURT:  It does.  This hearing and my line of

14:27:24  8    inquiry, Mr. Ackerman, is being done solely to protect your

14:27:29  9    interests.

14:27:29  10               THE DEFENDANT:  Yes, I know this, sir.

14:27:30  11               THE COURT:  You've told me that you've read

14:27:36  12   through the agreement several times, and you seem both

14:27:40  13   reasonably familiar with it and reasonably astute with regard

14:27:45  14   to these matters.  Obviously, I'm very dissatisfied with the

14:27:51  15   way your attorney has prepared this hearing, but this is really

14:27:54  16   about you.

14:27:54  17               THE DEFENDANT:  Yes, sir.

14:27:54  18               THE COURT:  And so my question is, I guess, for

14:27:56  19   you before we proceed, do you feel like you're pretty

14:28:00  20   comfortable with what's in this document and what you're

14:28:02  21   agreeing to?

14:28:03  22               THE DEFENDANT:  If you don't mind me adding

14:28:05  23   something to what I've already said, is that I don't know what

14:28:11  24   my term of sentence is going to be.  I'm 57 years old.

14:28:15  25               THE COURT:  And we always explain in these

9-8-14  USA v. ACKERMAN  No. 13-10176                    25

| | | |
|---|---|---|
| 14:28:17 | 1 | hearings that no one can promise you what your sentence will |
| 14:28:20 | 2 | be. |
| 14:28:20 | 3 | THE DEFENDANT:  Yes, I know this. |
| 14:28:21 | 4 | THE COURT:  That your plea is made sort of |
| 14:28:24 | 5 | independent of knowing what your sentence will be. |
| 14:28:27 | 6 | THE DEFENDANT:  All right.  I don't know what I'm |
| 14:28:30 | 7 | allowed to say. |
| 14:28:31 | 8 | THE COURT:  Well, tell me what you want, but if |
| 14:28:33 | 9 | your attorney thinks it's not in your best interest to say |
| 14:28:36 | 10 | that, he'll stop you. |
| 14:28:39 | 11 | (Whereupon, a sotto voce discussion was had |
| 14:28:39 | 12 | between Mr. Henderson and the defendant.) |
| 14:28:43 | 13 | THE DEFENDANT:  Okay, all right.  I apologize. |
| 14:28:44 | 14 | THE COURT:  No, there's nothing to apologize for. |
| 14:28:49 | 15 | THE DEFENDANT:  I understand that you are speaking |
| 14:28:52 | 16 | for my rights, and I'm ready to hear anything you have to say. |
| 14:28:56 | 17 | THE COURT:  Do you feel comfortable proceeding? |
| 14:28:59 | 18 | THE DEFENDANT:  Yes, sir. |
| 14:29:00 | 19 | THE COURT:  If it weren't for the fact that you |
| 14:29:01 | 20 | live several hours from here, and for me to not continue this |
| 14:29:05 | 21 | hearing now would require a travel burden on you, I probably |
| 14:29:11 | 22 | would not continue.  But based on what you've told me, I am |
| 14:29:14 | 23 | going to continue with this hearing.  But, Mr. Henderson, this |
| 14:29:17 | 24 | is entirely unacceptable conduct on your part and I will not |
| 14:29:21 | 25 | tolerate it again.  Is that clear? |

14:29:22  1                    MR. HENDERSON:  Your Honor, it is clear and I will

14:29:24  2      take care of it.  I apologize.

14:29:28  3                    THE COURT:  Mr. Ackerman, have you ever been under

14:29:29  4      the care of a doctor or a health care worker for any mental

14:29:32  5      health or emotional health issues?

14:29:34  6                    THE DEFENDANT:  Yes, sir.

14:29:35  7                    THE COURT:  Tell me about those.

14:29:37  8                    THE DEFENDANT:  Back in 1975 I was -- I had an

14:29:46  9      incidence of being suicidal because of abuse I was receiving

14:29:52  10     from my father, physical abuse, not anything else.  And I

14:29:57  11     started out in one hospital and they deemed that I needed to

14:30:02  12     have a longer evaluation.  So I went to a private facility back

14:30:05  13     in Massachusetts, where I ended up determined that they needed

14:30:11  14     to have me as in-house care, so I stayed with them for two

14:30:16  15     years until my insurance ran out, and then I had to spend six

14:30:20  16     months in the state hospital.

14:30:21  17                    THE COURT:  You were a teenager at the time?

14:30:23  18                    THE DEFENDANT:  Yeah -- excuse me, yes.  I was --

14:30:30  19     from sophomore -- I went in in the tenth grade, and I graduated

14:30:36  20     with my high school diploma from the school I was going to, but

14:30:40  21     I received it in a school that was on the institute's grounds.

14:30:47  22     So I was basically in and out of institutions from '75 for

14:30:51  23     about seven years.

14:30:57  24                    THE COURT:  What was your diagnosis, if I can use

14:31:00  25     that word, that caused you to be hospitalized during that time?

14:31:04    1           THE DEFENDANT:  The title that they gave me back

14:31:07    2   in the time was paranoid schizophrenic with suicidal/homicidal

14:31:20    3   tendencies.

14:31:20    4           THE COURT:  And when was your -- when was your

14:31:24    5   period of hospitalization concluded?

14:31:33    6           THE DEFENDANT:  Concluded?  Altogether?  You're

14:31:37    7   saying within that seven-year period?

14:31:41    8           THE COURT:  Well, let's take that first.  When --

14:31:43    9   when did that seven-year period end?

14:31:45   10           THE DEFENDANT:  Well, '72, so it was '75, so

14:31:50   11   probably around '82.

14:31:54   12           THE COURT:  And what happened after that?

14:31:56   13           THE DEFENDANT:  I had -- I was released from -- I

14:32:01   14   was still taking outside therapy with the psychologist, a

14:32:06   15   psychiatrist, and on medications, you know, to keep everything

14:32:09   16   on the up and up.  And then I eventually had to be deemed safe,

14:32:17   17   so I could basically carry on the rest of my life, you know,

14:32:22   18   driving a car and stuff like that there.  I had to be deemed as

14:32:26   19   being safe to be outside.

14:32:32   20           THE COURT:  And how did that determination --

14:32:35   21           THE DEFENDANT:  That was determined by a

14:32:38   22   psychiatrist that I was under care at.

14:32:40   23           THE COURT:  When did that happen?

14:32:44   24           THE DEFENDANT:  I can't be exact.  It's quite a

14:32:47   25   while ago.

| | | |
|---|---|---|
| 14:32:48 | 1 | THE COURT:  But after '82? |
| 14:32:49 | 2 | THE DEFENDANT:  Hmm? |
| 14:32:51 | 3 | THE COURT:  But after 1982? |
| 14:32:54 | 4 | THE DEFENDANT:  Yes, sir. |
| 14:32:54 | 5 | THE COURT:  How long after? |
| 14:32:56 | 6 | THE DEFENDANT:  Well, I got my -- I'd say I got my |
| 14:33:01 | 7 | license in around '85, so between '82 and '85.  I can't be |
| 14:33:10 | 8 | exact. |
| 14:33:10 | 9 | THE COURT:  All right. |
| 14:33:11 | 10 | THE DEFENDANT:  It was a psychiatrist out of Lahey |
| 14:33:15 | 11 | Clinic in Massachusetts. |
| 14:33:16 | 12 | THE COURT:  Have you had any treatment since that |
| 14:33:18 | 13 | time? |
| 14:33:19 | 14 | THE DEFENDANT:  Yes, sir.  I've had -- I've been |
| 14:33:21 | 15 | mostly a therapist, you know, to help get through issues. |
| 14:33:30 | 16 | THE COURT:  Any inpatient treatment since that |
| 14:33:32 | 17 | time? |
| 14:33:32 | 18 | THE DEFENDANT:  No, sir. |
| 14:33:33 | 19 | THE COURT:  Any treatment that involved medication |
| 14:33:37 | 20 | for any psychological or psychiatric or emotional issues? |
| 14:33:42 | 21 | THE DEFENDANT:  Yes, sir, like what I'm taking |
| 14:33:44 | 22 | now. |
| 14:33:44 | 23 | THE COURT:  For your anxiety medicine? |
| 14:33:46 | 24 | THE DEFENDANT:  Yes, sir, that's still for |
| 14:33:50 | 25 | anti- -- it was antidepressant/anxiety pills. |

14:33:54   1          THE COURT:  What came of your diagnosis in the

14:33:58   2    1980s, the early 1980s, of being a paranoid schizophrenic?

14:34:02   3          THE DEFENDANT:  What it was deemed, they said that

14:34:06   4    the psychiatrist that was in the hospital that I was in for the

14:34:11   5    two-year stint, they said it was a wrong evaluation, that it

14:34:15   6    was a bit of a stretch from the truth.

14:34:18   7          THE COURT:  Who said that?

14:34:19   8          THE DEFENDANT:  The psychiatrist I was seeing when

14:34:24   9    I saw the psychiatrist in Lahey Clinic.

14:34:28   10          THE COURT:  And when was this, roughly?  In the

14:34:30   11    mid 1980s or later?

14:34:33   12          THE DEFENDANT:  Early.  This is '82 to -- I'm

14:34:38   13    sorry, I don't have exact dates.

14:34:40   14          THE COURT:  That's fine.

14:34:47   15          THE DEFENDANT:  So I've been taking -- I don't

14:34:49   16    know if it matters also, but I was in AA as well.

14:34:55   17          THE COURT:  Alcohol.

14:34:57   18          THE DEFENDANT:  Yes, sir.  Am I making problems?

14:35:03   19          THE COURT:  No, no, what you're doing is you're

14:35:06   20    telling me things that I need to know.

14:35:07   21          THE DEFENDANT:  Oh, okay.

14:35:08   22          THE COURT:  Because, again, the purpose of this

14:35:10   23    hearing is to protect your interests.

14:35:17   24          Is the Government aware of this history?

14:35:19   25          MR. HART:  No, Your Honor.

14:35:20  1                THE COURT:  Mr. Henderson, are you aware of this

14:35:22  2    history?

14:35:23  3                MR. HENDERSON:  Yes, Your Honor.

14:35:25  4                THE COURT:  Does it cause any concerns from you

14:35:29  5    today?

14:35:29  6                MR. HENDERSON:  No, Your Honor.  Mr. Ackerman has

14:35:34  7    been very stable throughout the pendency of this case.  He has

14:35:42  8    been very engaged in every aspect of the case.  He and I

14:35:47  9    discussed it in detail, and I'm not aware of any indication

14:35:54  10   that he doesn't understand the proceedings and isn't capable of

14:35:58  11   making the decisions he's made.

14:36:01  12               THE COURT:  So, Mr. Ackerman, since 1985 when you

14:36:06  13   were released to get a driver's license and et cetera, you

14:36:11  14   indicated that you'd seen a therapist on an ongoing -- I think

14:36:14  15   therapist was your word -- in an ongoing on-and-off basis, have

14:36:20  16   you, other than a therapist, have you seen a licensed

14:36:23  17   psychologist or psychiatrist?

14:36:25  18               THE DEFENDANT:  Yes, sir.  That's what I --

14:36:28  19               THE COURT:  Oh, okay, so your therapist?

14:36:30  20               THE DEFENDANT:  That's how I refer to them, yes.

14:36:32  21   I apologize.

14:36:33  22               THE COURT:  What was his designation; do you know?

14:36:37  23               THE DEFENDANT:  Pardon me?

14:36:37  24               THE COURT:  What was his professional designation;

14:36:39  25   do you know?

| | | |
|---|---|---|
| 14:36:39 | 1 | THE DEFENDANT:  Well, I've seen psychologists and |
| 14:36:42 | 2 | I've seen psychiatrists.  One can be a therapist and the other |
| 14:36:47 | 3 | can administer medication, and that's what the psychiatrist is. |
| 14:36:50 | 4 | THE COURT:  And it's a psychiatrist who prescribed |
| 14:36:52 | 5 | your anxiety medication to you? |
| 14:36:54 | 6 | THE DEFENDANT:  Yes, sir.  If it would benefit |
| 14:36:57 | 7 | you, I see a therapist with High Plains up in -- out of |
| 14:37:07 | 8 | Phillipsburg.  They're the ones that I see for therapy. |
| 14:37:14 | 9 | THE COURT:  Mr. Hart, does this history create any |
| 14:37:19 | 10 | concern for the Government? |
| 14:37:20 | 11 | MR. HART:  No, Your Honor.  Mr. Ackerman had been |
| 14:37:24 | 12 | employed for some time, has had, to my understanding, a stable |
| 14:37:28 | 13 | household.  While he may be in therapy and attending counseling |
| 14:37:35 | 14 | intermittently, I don't think that is an indication of |
| 14:37:37 | 15 | instability, either of a competence base or understanding of |
| 14:37:44 | 16 | the proceedings.  Quite frankly, from my understanding and |
| 14:37:50 | 17 | observe -- listening to his interaction with Agent Moore, which |
| 14:37:52 | 18 | was recorded back in the day, as well as his performance while |
| 14:37:55 | 19 | he's been on bond while this case has been pending, I have no |
| 14:37:58 | 20 | concerns about Mr. Ackerman's competency or his ability to |
| 14:38:02 | 21 | function in society as far as what the Court's inquiry may be |
| 14:38:08 | 22 | about. |
| 14:38:08 | 23 | THE COURT:  Well, both counsel have indicated they |
| 14:38:11 | 24 | see no cause for concerns for this, and my limited interaction |
| 14:38:15 | 25 | with Mr. Ackerman would concur, so I'm going to proceed. |

14:38:19  1              THE DEFENDANT:  Thank you.

14:38:20  2              THE COURT:  Has a court ever found that you were

14:38:25  3    incompetent to handle your own personal business affairs and

14:38:31  4    declared you incompetent and appointed somebody else to make

14:38:34  5    those decisions for you?

14:38:35  6              THE DEFENDANT:  If I understand you correctly, are

14:38:44  7    you asking me if anybody's ever been assigned to run my life

14:38:47  8    for me, because I'm not capable of doing it myself?

14:38:50  9              THE COURT:  Essentially.  There are proceedings

14:38:52  10   where individuals are brought in to court and found to be

14:38:56  11   incompetent to, as you put it, run their own life, to make

14:39:00  12   decisions about their health care or their financial or their

14:39:04  13   personal matters, and someone else is frequently called a

14:39:07  14   guardian is appointed to make those decisions for them.  Is

14:39:10  15   there anything like that ever happened to you?

14:39:12  16             THE DEFENDANT:  Well, the only time that's

14:39:15  17   actually happened is when I was an inpatient in that hospital

14:39:18  18   for that two-year stint.

14:39:19  19             THE COURT:  All right.

14:39:20  20             THE DEFENDANT:  They're the ones that determined

14:39:21  21   whether or not -- they're the ones that determined that I need

14:39:24  22   to be inside for treatment, and I wouldn't have been released

14:39:26  23   if they found that I couldn't handle myself on my own.

14:39:29  24             THE COURT:  And so nothing since that time?

14:39:30  25             THE DEFENDANT:  No, sir.

| | | |
|---|---|---|
| 14:39:31 | 1 | THE COURT:  All right.  Thank you, Mr. Ackerman. |
| 14:39:32 | 2 | You're represented in this case by Mr. Henderson. |
| 14:39:37 | 3 | Do you feel like you've had enough time to discuss this case |
| 14:39:40 | 4 | with Mr. Henderson? |
| 14:39:41 | 5 | THE DEFENDANT:  Yes, sir.  He's always been there |
| 14:39:43 | 6 | for me whenever I needed him. |
| 14:39:45 | 7 | THE COURT:  Has he talked to you and explained to |
| 14:39:48 | 8 | you the charges that you're facing and what your options for |
| 14:39:52 | 9 | those charges are, specifically that you could go to trial and |
| 14:39:54 | 10 | what your defenses might be, or so on?  Has he discussed all |
| 14:39:58 | 11 | that with you? |
| 14:39:58 | 12 | THE DEFENDANT:  Yes, sir. |
| 14:39:59 | 13 | THE COURT:  Are you satisfied with the way he's |
| 14:40:02 | 14 | representing your case? |
| 14:40:03 | 15 | THE DEFENDANT:  Yes, sir. |
| 14:40:04 | 16 | THE COURT:  All right.  Well, Mr. Ackerman, |
| 14:40:05 | 17 | Mr. Henderson continues to represent you during this hearing. |
| 14:40:09 | 18 | And that means that if at any point today before you tell me |
| 14:40:12 | 19 | something you want to first talk with him privately about what |
| 14:40:16 | 20 | you're going to say, you may do that.  Just let me know that |
| 14:40:22 | 21 | you'd like time to talk to Mr. Henderson privately at any point |
| 14:40:25 | 22 | in this proceeding, and I'll be happy to give you as much time |
| 14:40:27 | 23 | as you need for that conversation.  You understand? |
| 14:40:29 | 24 | THE DEFENDANT:  Thank you, sir. |
| 14:40:31 | 25 | THE COURT:  I'm going to proceed with this |

| | |
|---|---|
| 14:40:34 | 1 |
| 14:40:39 | 2 |
| 14:40:43 | 3 |
| 14:40:45 | 4 |
| 14:40:49 | 5 |
| 14:40:51 | 6 |
| 14:40:54 | 7 |
| 14:41:00 | 8 |
| 14:41:04 | 9 |
| 14:41:07 | 10 |
| 14:41:12 | 11 |
| 14:41:16 | 12 |
| 14:41:23 | 13 |
| 14:41:24 | 14 |
| 14:41:27 | 15 |
| 14:41:30 | 16 |
| 14:41:33 | 17 |
| 14:41:37 | 18 |
| 14:41:39 | 19 |
| 14:41:40 | 20 |
| 14:41:41 | 21 |
| 14:41:44 | 22 |
| 14:41:48 | 23 |
| 14:41:50 | 24 |
| 14:41:51 | 25 |

1  hearing, and I'm going to talk to you about your plans to plead

2  guilty.  I'm going to explain to you rights that the law and

3  the Constitution give you that you'll be giving up by entering

4  this plea, and I'm going to talk to you about some agreements

5  you're making in connection with this plea.

6            Now, I've kind of already referred to this.  This

7  sort of hearing, the attorneys and I do, all the time.  I mean,

8  dozens of times a year for them and more for me.  So this is a

9  process that's very familiar to us.  But, of course, it's

10 unfamiliar to you.  So that always creates a risk in these

11 hearings that we might all think that you're understanding what

12 I'm saying, but, in fact, I might have confused you or lost

13 you.  And I don't want to do that.

14            So if at any point this afternoon you're not

15 certain you understand what I'm talking about, I want you to

16 please let me know, and I'll gladly take whatever time we need

17 to explain things to me -- to you, because it's important to me

18 that you do understand what we're discussing.

19            Will you do that, sir?

20            THE DEFENDANT:  Yes, sir.  Thank you.

21            THE COURT:  And just so we're clear, if you don't

22 tell me that you don't understand what I'm talking about, then

23 we're all going to assume that you do understand.  All right?

24            THE DEFENDANT:  Yes, sir.

25            THE COURT:  All right.  You were charged,

14:41:55  1  Mr. Ackerman, by the grand jury with, I think, a two-count

14:41:59  2  indictment of distribution of child pornography and possession

14:42:04  3  of child pornography.  Are you familiar with these charges

14:42:06  4  against you?

14:42:06  5           THE DEFENDANT:  Yes, sir.

14:42:08  6           THE COURT:  You've discussed them with

14:42:11  7  Mr. Henderson and you think you understand them?

14:42:13  8           THE DEFENDANT:  Yes, sir.

14:42:14  9           THE COURT:  Mr. Henderson, are you confident your

14:42:16  10  client understands these charges against him?

14:42:18  11           MR. HENDERSON:  I am, Your Honor.

14:42:19  12           THE COURT:  Mr. Ackerman, the first thing I want

14:42:22  13  you to know is that you do not have to plead guilty to any of

14:42:25  14  these charges.  You're entitled to have a trial if you want

14:42:28  15  one.  And if you have a trial, at the trial the responsibility

14:42:34  16  of proving that you've committed the things you're charged with

14:42:39  17  doing is going to rest entirely on the Government.  It is not

14:42:42  18  going to be your job at trial to prove that you have not done

14:42:48  19  these things or that you're not guilty of them.  You won't have

14:42:51  20  to prove anything at all.  The entire burden of proof at a

14:42:54  21  trial is going to rest on the Government to prove its charges

14:42:58  22  against you.

14:42:59  23           If we have a trial, we'll pick a jury of 12

14:43:02  24  ordinary citizens who have no prior opinion about your case and

14:43:06  25  each one of whom can persuade me that they could give you a

14:43:10  1   fair and impartial trial.  They'll sit as your jury, and I'll

14:43:16  2   tell that jury at the start of the trial that it has to presume

14:43:19  3   you innocent of any charge against you unless the U.S.

14:43:24  4   Attorney's Office can persuade each one of them, and all 12 of

14:43:29  5   them unanimously, beyond a reasonable doubt, that you've done

14:43:33  6   the things you're charged with doing.

14:43:35  7            You're entitled to a speedy trial, which means

14:43:38  8   this matter cannot just drag on indefinitely, but you'd have

14:43:43  9   the right to go to trial more or less as quickly as you wanted.

14:43:47  10  In preparation for trial and throughout the trial, you'd

14:43:49  11  continue to have the right to an attorney to assist you.

14:43:53  12  During the trial you'd have the right to see and hear every

14:43:57  13  witness that the Government called in its attempt to prove its

14:44:01  14  case against you, and your attorney would have the right to ask

14:44:04  15  those witnesses any questions that were helpful and appropriate

14:44:07  16  to your defense.

14:44:10  17            You'd have the right to call witnesses of your own

14:44:13  18  if you wanted to, and you'd have the right to use the power and

14:44:16  19  process of the court to compel those witnesses to appear at

14:44:19  20  trial.  You yourself, however, could choose to not take the

14:44:25  21  stand if you would have to answer questions, but you could

14:44:30  22  choose to remain silent.  And if you chose to remain silent, I

14:44:33  23  would tell the jury that it could not consider your silence as

14:44:37  24  any evidence that you were guilty.  If you were convicted,

14:44:42  25  you'd have a right to appeal, and a right to appeal everything.

14:44:47  1          Do you understand you have all these rights

14:44:49  2   available to you if you choose to go to trial?

14:44:51  3          THE DEFENDANT:  Yes, sir.

14:44:51  4          THE COURT:  If I accept your plea today -- if you

14:44:54  5   plead guilty and if I accept that, you'll still have the right

14:44:56  6   to an attorney to assist you with anything else we do in

14:44:59  7   preparation for court, and you will have the right to appeal my

14:45:03  8   decision as referenced in this plea agreement with regards to

14:45:07  9   your earlier statements in voluntariness.  But all these other

14:45:13  10  rights that I've discussed with you, you'll give up.  And once

14:45:17  11  I've accepted your plea, that's final; you can't change your

14:45:20  12  mind and get those other rights back.  You understand that?

14:45:22  13          THE DEFENDANT:  Yes, sir.

14:45:24  14          THE COURT:  Do you still wish to proceed to plead

14:45:25  15  guilty?

14:45:26  16          THE DEFENDANT:  Yes, sir.

14:45:26  17          THE COURT:  All right.  Well, obviously, because

14:45:29  18  I've been discussing this with your attorneys, with the

14:45:34  19  attorneys, at some length, I've gone through this plea

14:45:40  20  agreement that's been given to me, and you've indicated to me

14:45:43  21  that you've gone through it several times, and you've discussed

14:45:45  22  it with Mr. Henderson.  And I think you've told me that you

14:45:50  23  believe you understand it.  Is that correct?

14:45:51  24          THE DEFENDANT:  Yes, sir.

14:45:51  25          THE COURT:  Mr. Henderson, are you confident that

14:45:55   1    your client understands this agreement?

14:45:56   2              MR. HENDERSON:  Your Honor, I am.

14:45:59   3              THE COURT:  Mr. Ackerman, I want to walk through

14:46:02   4    some of the provisions in this agreement with you on the

14:46:05   5    record, just to satisfy myself that you understand what you've

14:46:09   6    agreed to.  Paragraph 1 in this plea agreement indicates that

14:46:14   7    you're agreeing to plead guilty to Count 1 of the indictment,

14:46:17   8    which charges you with violating 18 United States Code

14:46:22   9    2252(a)(2), which is distribution of child pornography, and

14:46:27   10   Count 2 of the indictment, which charges you with violating 18

14:46:29   11   United States Code 2252(a)(4)(B), which is possession of child

14:46:35   12   pornography.

14:46:35   13             And I'm required to tell you that under the law,

14:46:41   14   for being found guilty of these charges, you could receive a

14:46:44   15   sentence, with respect to Count 1, that's no less than five

14:46:48   16   years and may be as great as 20 years in prison; you could

14:46:52   17   receive a $250,000 fine; a term of supervised release of at

14:46:56   18   least five years and potentially for the rest of your life; and

14:47:00   19   a hundred dollar special assessment.  As to Count 2, you could

14:47:04   20   receive a sentence that could be as long as ten years in

14:47:08   21   prison, up to a $250,000 fine, supervised release of at least

14:47:14   22   five years and up to life, and a hundred dollar assessment for

14:47:19   23   that as well.

14:47:19   24             Do you understand this?

14:47:21   25             THE DEFENDANT:  Yes, sir.

14:47:21   1            THE COURT:  Let me talk to you about supervised

14:47:23   2    release because that's a concept you may not be familiar with,

14:47:25   3    and it simply means that, after you're released from prison,

14:47:29   4    you'll be subject to supervision by the United States Probation

14:47:32   5    Office for a period of time.  And during that supervision

14:47:35   6    you'll be required to comply with the terms and conditions of

14:47:38   7    supervision.  Those will all be set forth at the time of your

14:47:42   8    sentencing.

14:47:43   9            THE DEFENDANT:  Can I ask you a question?

14:47:44   10           THE COURT:  Certainly.

14:47:45   11           THE DEFENDANT:  I don't know -- it was something

14:47:56   12   at the end I had asked, and I don't know if I should wait till

14:48:02   13   you get there or --

14:48:04   14           THE COURT:  Is it about restitution?

14:48:05   15           THE DEFENDANT:  No, sir.  Well, I understand the

14:48:09   16   restitution.  I also -- if I read right, in the -- actually, I

14:48:17   17   got the information from John.  Restitution could actually be

14:48:19   18   paid by me while I'm in prison.  It'll be taken out of what I

14:48:26   19   do for work.  Is that true?

14:48:28   20           THE COURT:  It could be, yes, up to a certain

14:48:30   21   amount.

14:48:31   22           THE DEFENDANT:  Okay.

14:48:32   23           THE COURT:  Was that the question you wanted to

14:48:33   24   ask me?

14:48:34   25           THE DEFENDANT:  Yes, sir.

9-8-14  USA v. ACKERMAN  No. 13-10176

40

| | | |
|---|---|---|
| 14:48:34 | 1 | THE COURT:  Oh, okay. |
| 14:48:35 | 2 | THE DEFENDANT:  I have one at the end, but we're |
| 14:48:36 | 3 | not there yet, and I don't want to jump the gun. |
| 14:48:38 | 4 | THE COURT:  Okay.  And I'll get to restitution |
| 14:48:40 | 5 | itself in a second. |
| 14:48:42 | 6 | THE DEFENDANT:  Yep. |
| 14:48:42 | 7 | THE COURT:  Let me talk about supervised release |
| 14:48:44 | 8 | first, though, and that just means that after you're out of |
| 14:48:49 | 9 | prison and being supervised by the probation office, if you |
| 14:48:54 | 10 | violate these terms of supervision, you could be brought back |
| 14:48:57 | 11 | in to court and charged with violation of your supervised |
| 14:49:00 | 12 | release.  And if you are found that you have violated your |
| 14:49:03 | 13 | supervised release, then you could be sent back to prison, and |
| 14:49:06 | 14 | you wouldn't have a right to a jury trial at that point.  Do |
| 14:49:10 | 15 | you understand that? |
| 14:49:10 | 16 | THE DEFENDANT:  Yes, sir.  I understand the |
| 14:49:13 | 17 | provisions regarding the probation because the judge that I had |
| 14:49:20 | 18 | seen before you, when I was first charged, when I made a |
| 14:49:24 | 19 | statement of not guilty, she also told me that any time if I |
| 14:49:28 | 20 | make -- if I break any of that agreement, that I would be back |
| 14:49:31 | 21 | in jail all over again, and -- |
| 14:49:34 | 22 | THE COURT:  That probably related to the terms of |
| 14:49:35 | 23 | your bond and your being out. |
| 14:49:37 | 24 | THE DEFENDANT:  I'm sorry.  I guess I thought that |
| 14:49:40 | 25 | was the same. |

14:49:40    1            THE COURT:  This refers to after you've served

14:49:44    2    your prison sentence --

14:49:44    3            THE DEFENDANT:  Okay.

14:49:45    4            THE COURT:  -- and it's completed and you're

14:49:46    5    released.  At that point you're going to have different terms

14:49:49    6    of supervision that you'll have to follow.  Those are different

14:49:55    7    than your conditions on bond.  We'll explain what those terms

14:49:58    8    of supervision are when we have your sentencing.

14:50:01    9            THE DEFENDANT:  Okay.

14:50:01   10            THE COURT:  But if you don't follow those terms of

14:50:03   11    supervision, then we could find you violated supervised

14:50:08   12    release.  And even though you'd served your full prison

14:50:10   13    sentence, we could send you back to prison for an additional

14:50:13   14    time for violating your supervised release.  Do you understand

14:50:18   15    that?

14:50:18   16            THE DEFENDANT:  Yes, sir.

14:50:19   17            THE COURT:  All right.  Then let's talk about

14:50:22   18    restitution, which says -- and we'll talk about restitution

14:50:25   19    more later in this agreement, and I think we'll just wait until

14:50:28   20    we get there.  But right now it says that you understand that

14:50:31   21    restitution may be ordered.  Victims of child pornography whose

14:50:38   22    images are possessed and distributed are entitled to

14:50:42   23    restitution for the harm they've suffered as a result of having

14:50:46   24    their young pornographic images distributed on the Internet,

14:50:55   25    and that this explains you understand that you may be subject

| | |
|---|---|
| 14:50:58 | 1 | to some restitution for that.  Do you understand that? |
| 14:51:01 | 2 | THE DEFENDANT:  Yes, sir. |
| 14:51:02 | 3 | THE COURT:  All right.  And we'll talk about |
| 14:51:03 | 4 | restitution more in a little bit. |
| 14:51:05 | 5 | Finally, Paragraph 1 says that by entering this |
| 14:51:10 | 6 | plea agreement you admit that you knowingly committed these |
| 14:51:14 | 7 | crimes and you admit that you're guilty of them.  Is that a |
| 14:51:19 | 8 | correct statement? |
| 14:51:19 | 9 | THE DEFENDANT:  Yes, sir. |
| 14:51:20 | 10 | THE COURT:  Paragraph 2 says that you're entering |
| 14:51:26 | 11 | into a conditional plea agreement that will allow you to appeal |
| 14:51:30 | 12 | the decision I made denying your motion to suppress around |
| 14:51:35 | 13 | events that happened the day of your -- the search warrant at |
| 14:51:38 | 14 | your house and the day that you were interviewed by federal law |
| 14:51:44 | 15 | enforcement officers. |
| 14:51:44 | 16 | You understand that? |
| 14:51:45 | 17 | THE DEFENDANT:  Yes, sir. |
| 14:51:45 | 18 | THE COURT:  All right.  Paragraph 3 sets out the |
| 14:51:48 | 19 | facts you're admitting to as a part of this plea.  And those |
| 14:51:53 | 20 | facts, summarized, are that you used AOL mail on April 22nd of |
| 14:52:00 | 21 | last year, using your AOL e-mail account, you sent an e-mail |
| 14:52:04 | 22 | that contained child pornography to another user.  That |
| 14:52:08 | 23 | included a file of a nude prepubescent female sitting on a |
| 14:52:14 | 24 | washing machine with her legs spread open and exposing her |
| 14:52:18 | 25 | genitals.  AOL detected that there was child pornography in |

14:52:23  1   this e-mail.  They intercepted it and terminated your account

14:52:25  2   and notified law enforcement officer.  And Special Agent Rick

14:52:32  3   Moore -- I never know what HSI is.  What's HSI?

14:52:37  4                  MR. HART:  Homeland Security Investigations.

14:52:39  5                  THE COURT:  That's different from ICE or postal

14:52:42  6   service or all the other people that investigate this?

14:52:45  7                  MR. HART:  It's the same as ICE; it's just

14:52:47  8   rebranded.  It's the Immigrations and Customs Enforcement.  It

14:52:53  9   is more the customs enforcement side of things.

14:52:56  10                 THE COURT:  All right.

14:52:56  11                 MR. HART:  And if you were to ask Mr. Moore, he

14:52:59  12  would probably heave a big sigh and roll his eyes and say, "I

14:53:03  13  don't know the difference either, Your Honor."

14:53:04  14                 THE COURT:  All right.  Thank you, Mr. Hart.

14:53:05  15                 So as a result of this law enforcement tip, Agent

14:53:09  16  Moore with Homeland Security Investigation got a search warrant

14:53:13  17  for your house in Lebanon, Kansas, which he executed on

14:53:16  18  May 30th of '13, and there they found multiple electronic

14:53:22  19  devices, including a Dell laptop, an HP Compaq laptop, a

14:53:30  20  Kangaroo hard drive and a Sandisk USB drive.  They forensically

14:53:36  21  previewed those at the time and determined that they had child

14:53:39  22  pornography on them.

14:53:41  23                 That same day they went to where you worked and

14:53:44  24  asked if you would speak to them, which you did, and you

14:53:47  25  admitted in your conversation with them that you distributed

9-8-14   USA v. ACKERMAN   No. 13-10176

14:53:51  1   child pornography via on your e-mail account, and you also

14:53:54  2   admitted that you used anonymizing services to try to access

14:54:00  3   and obtain child pornography.

14:54:02  4          Are all those facts true and correct,

14:54:04  5   Mr. Ackerman?

14:54:05  6          THE DEFENDANT:  Yes, sir.

14:54:08  7          THE COURT:  Finally, this paragraph says that

14:54:10  8   forensic examination of the devices that were received from

14:54:12  9   your house subsequently revealed the presence of several images

14:54:16  10  of child pornography, both images and videos, that depicted

14:54:19  11  minors engaged in a variety of sex acts.  Do you admit to that

14:54:24  12  as well?

14:54:25  13         THE DEFENDANT:  Yes, sir.

14:54:25  14         THE COURT:  Paragraph 5 sets out the Government's

14:54:30  15  agreements to you in exchange for your plea.  And it says the

14:54:37  16  Government agrees, in exchange for your plea, that they're not

14:54:39  17  going to file any more charges against you that are based on

14:54:41  18  the same facts these charges were based on; they're going to

14:54:45  19  agree that you can enter a conditional plea, allowing you to

14:54:48  20  appeal my earlier suppression decision in this case; they're

14:54:51  21  going to agree that you can continue on bond with the

14:54:55  22  previously stated conditions.

14:54:56  23         Normally in a case like this you'd be taken into

14:54:58  24  custody no later than today.  But they're agreeing you can

14:55:02  25  continue on bond with the same conditions while you appeal this

| | | |
|---|---|---|
| 14:55:06 | 1 | issue.  They're going to recommend that you get a two-level |
| 14:55:10 | 2 | reduction in the offense level for acceptance of |
| 14:55:13 | 3 | responsibility. |
| 14:55:14 | 4 | And is that it, Mr. Hart, just the two levels? |
| 14:55:16 | 5 | MR. HART:  Yes, Your Honor. |
| 14:55:17 | 6 | THE COURT:  They're going to recommend to me that |
| 14:55:22 | 7 | when you're sentenced, that counts -- any sentence you receive |
| 14:55:25 | 8 | for Counts 1 and 2 run concurrently -- that means they'll run |
| 14:55:30 | 9 | at the same time, not one after the other -- and that you'll be |
| 14:55:35 | 10 | free to argue whatever position you want to argue at |
| 14:55:39 | 11 | sentencing, as will they. |
| 14:55:40 | 12 | These are the only promises the Government's |
| 14:55:42 | 13 | making to you as a part of this plea agreement, Mr. Ackerman. |
| 14:55:48 | 14 | And the first thing it means is that if you're pleading guilty |
| 14:55:51 | 15 | because you thought you had other promises from them that |
| 14:55:56 | 16 | you're relying on besides these, then I would advise you not to |
| 14:55:58 | 17 | do that, because the Government will not have to do anything |
| 14:56:00 | 18 | except what's set forth in this plea agreement.  Do you |
| 14:56:03 | 19 | understand that? |
| 14:56:03 | 20 | THE DEFENDANT:  Yes, sir. |
| 14:56:03 | 21 | THE COURT:  The second thing that this agreement |
| 14:56:07 | 22 | explains is that these promises the Government's making depend |
| 14:56:12 | 23 | on you continuing to show that you accept responsibility for |
| 14:56:15 | 24 | what you've done in this case, just as you're doing by pleading |
| 14:56:18 | 25 | guilty today.  All this, of course, is with the exception that |

14:56:25  1   you have the right to appeal my suppression order.  But within

14:56:29  2   that context, if you deny or give conflicting statements about

14:56:35  3   your involvement or you try to interfere with the process of

14:56:37  4   justice in this case, if you commit any additional crimes, if

14:56:41  5   you violate the conditions of your bond that you're on release

14:56:45  6   for right now, the United States can ask for a hearing to find

14:56:48  7   that you've violated this plea agreement.  And if the court

14:56:50  8   finds that you have, then the U.S. won't be held to these

14:56:58  9   promises, but they'll be free to file more charges against you.

14:57:01  10  They'll be free to pursue whatever other remedy they think is

14:57:06  11  appropriate for your violation.  The charges that they file

14:57:12  12  against you will include perjury, false statement, obstruction

14:57:16  13  of justice or underlying criminal conduct.  Do you understand

14:57:17  14  this?

14:57:18  15            THE DEFENDANT:  Yes, sir.

14:57:20  16            THE COURT:  Paragraph 5 sets out things that

14:57:21  17  you're agreeing to as a part of your plea.  And you're agreeing

14:57:29  18  that you are waiving any right to appeal or attack this

14:57:34  19  conviction or sentence or how the sentence is calculated other

14:57:38  20  than with respect to my motion to suppress.  You're agreeing

14:57:42  21  that you're waiving the sentence that you receive, unless I

14:57:48  22  give you a sentence above the high end of the sentencing

14:57:52  23  guidelines.  Have you and Mr. Henderson discussed the

14:57:53  24  sentencing guidelines?

14:57:54  25            THE DEFENDANT:  Yes, sir.

14:57:58  1          THE COURT:  Do we talk about the sentencing

14:58:00  2   guidelines in here?

14:58:04  3          MR. HENDERSON:  Your Honor, I think they're in

14:58:11  4   paragraph --

14:58:12  5          THE COURT:  We don't.  All right.

14:58:15  6          Mr. Ackerman, the sentencing guidelines are a

14:58:17  7   process whereby the factor -- normally, this is set forth in

14:58:20  8   the plea agreement.  The sentencing guidelines are a process

14:58:24  9   whereby the various factors related to your crime are analyzed

14:58:29  10  and they're assigned a number.  They call that number an

14:58:32  11  offense level --

14:58:32  12          THE DEFENDANT:  Uh-huh.

14:58:33  13          THE COURT:  -- that represents how serious your

14:58:36  14  crime is.  And that offense level is plotted on a chart against

14:58:40  15  any prior criminal history you may have, if any, to arrive at a

14:58:46  16  range of a recommended appropriate sentence.  Do you understand

14:58:48  17  that?  Have you and Mr. Henderson talked about that?

14:58:50  18          THE DEFENDANT:  Yes, sir.

14:58:50  19          THE COURT:  All right.  Well, earlier one of the

14:58:52  20  Government's agreements was it's going to recommend a two-level

14:58:55  21  reduction in your offense level because you're pleading guilty

14:58:59  22  to this case, and that's what we referenced there.  Here in

14:59:05  23  this paragraph you're agreeing that as long as I don't sentence

14:59:08  24  you above the highest end of the range that's calculated in the

14:59:14  25  guidelines, you're waiving your right to appeal matters related

14:59:16  1    to my sentence.  Do you understand that?

14:59:18  2                THE DEFENDANT:  Umm, umm, it sounds, umm,

14:59:31  3    confusing when you say -- it sounds like your decision on the

14:59:36  4    high end, but then again I'm not supposed to argue your

14:59:41  5    decision, but they're offering to lower it down by two.  Is

14:59:46  6    that -- are you saying -- am I incorrect on saying what I'm

14:59:51  7    saying?

14:59:52  8                THE COURT:  I probably confused you, so let me try

14:59:54  9    it this way.  On the sentencing guidelines think of it as a

14:59:59  10   chart, with two axes, and one axis sets out the offense

15:00:08  11   level --

15:00:08  12               THE DEFENDANT:  Right.

15:00:09  13               THE COURT:  -- which is calculated by determining

15:00:10  14   how serious your offense is.

15:00:15  15               THE DEFENDANT:  Right.

15:00:15  16               THE COURT:  And what happens is they'll take all

15:00:16  17   the factors and they'll figure out how serious your offense is

15:00:18  18   and they'll arrive at a number.  I don't know what the number

15:00:21  19   will be.  Let's say it's 30.  I'm just making a number up --

15:00:23  20               THE DEFENDANT:  Okay.

15:00:24  21               THE COURT:  -- that they decide that an offense

15:00:26  22   level 30 is what represents your crime.  Then because you're

15:00:29  23   pleading guilty, the guidelines allow that level to be reduced

15:00:33  24   two levels to an offense level 28, in my example, and that

15:00:37  25   becomes your controlling offense level because you get that

15:00:39  1    reduction for pleading guilty.

15:00:40  2                THE DEFENDANT:  That I understand.

15:00:42  3                THE COURT:  Then you go across on offense level 28

15:00:45  4    on the chart for any prior criminal record you might have, if

15:00:51  5    you have any, and if you don't you'll be in the first category,

15:00:53  6    and then you'll end up with a -- on that chart a recommended

15:00:57  7    range of an appropriate sentence.  And it'll have a range with

15:01:04  8    a low-end number and a high-end number.  Okay?  Do you

15:01:07  9    understand that?

15:01:07  10               THE DEFENDANT:  Yes, sir.

15:01:11  11               THE COURT:  What this says is that even if I

15:01:13  12   sentence you at the high end number of that guideline, you

15:01:18  13   don't get to appeal that.  Only if I go -- and I'm authorized

15:01:22  14   to do this -- but only if I go above the high end of that

15:01:27  15   guideline range do you have the right to appeal my sentence.

15:01:30  16   Does that make sense?

15:01:33  17               THE DEFENDANT:  I understand the plea that I'm

15:01:39  18   going to be assigning to is that I waive that right to argue

15:01:44  19   your final decision on my sentencing.  I can only appeal what

15:01:49  20   was brought up in the case beforehand that was part of the

15:01:56  21   suppression.  I can't argue your decision on the term you want

15:02:00  22   to sentence me to.

15:02:02  23               THE COURT:  Yeah, you can appeal your -- my

15:02:05  24   suppression decision as a result of this plea.  And if you're

15:02:07  25   successful in that appeal, then all the rest of this plea

15:02:11  1    agreement goes away.

15:02:13  2              THE DEFENDANT:  Right.

15:02:13  3              THE COURT:  We'll only proceed to a sentencing

15:02:16  4    hearing under this plea agreement if you're not successful in

15:02:21  5    that appeal.  So if you are successful in that appeal, we won't

15:02:26  6    even get to a sentencing hearing under this plea agreement.  So

15:02:30  7    the matters I'm discussing with you will only apply if your

15:02:34  8    appeal of my suppression order is not successful.

15:02:37  9              Does that make sense?

15:02:38  10             THE DEFENDANT:  Yes, sir.

15:02:39  11             THE COURT:  And so in that scenario, if your

15:02:43  12   appeal is not successful and we proceed to sentencing, we'll

15:02:46  13   calculate that guideline range, and that guideline range will

15:02:51  14   have, you know, a number of months from the low end to a high

15:02:54  15   end.  And this says that if I sentence you within that range,

15:02:57  16   you can't appeal my sentence.  If I sentence you above that

15:03:01  17   range, then you can turn around again and appeal my sentence.

15:03:06  18   This is again after your appeal for the suppression's already

15:03:08  19   over.  But if I sentence you within that range, even if it's

15:03:12  20   the highest number in that range, then you can't appeal my

15:03:15  21   sentence, you're waiving your right at that point to appeal my

15:03:20  22   sentence.  Do you understand that?

15:03:22  23             THE DEFENDANT:  Yeah.  Yes, I mean, but I

15:03:28  24   understand also I can't appeal it but my attorney can still

15:03:33  25   fight for a lower number, correct?

15:03:35  1          THE COURT:  During your sentencing hearing,

15:03:36  2  absolutely it.

15:03:37  3          THE DEFENDANT:  Yes, okay.

15:03:37  4          THE COURT:  Your attorney is free to argue

15:03:39  5  anything you wants.

15:03:40  6          THE DEFENDANT:  Well, that much I do understand.

15:03:42  7          THE COURT:  All right.  And then I can sentence

15:03:45  8  you anywhere I want, but as long as I don't sentence you to any

15:03:49  9  number higher than the top end, the longest term, in that

15:03:54 10  guideline range, you can't appeal what my final sentence is

15:03:57 11  after I've finally reached it.  Do you understand that?

15:03:59 12          THE DEFENDANT:  Yes, sir.

15:04:00 13          THE COURT:  Okay.  In addition, the law lets you,

15:04:06 14  after this whole case is over, file a separate action in which

15:04:10 15  you say that we didn't follow the rules of the law in this case

15:04:16 16  and, as a result of us not following those, you shouldn't be

15:04:21 17  held to any order or sentence you issued in this case.  You can

15:04:24 18  do that in a separate action after this case is over.  But

15:04:28 19  you're also waiving your right to file that separate -- we call

15:04:32 20  it a collateral attack -- a separate case that attacks what we

15:04:36 21  did here.  You're also waiving your right to do that.

15:04:38 22          THE DEFENDANT:  Well, I understand that if I read,

15:04:43 23  and it -- if I did that, basically I would nullify everything

15:04:49 24  else, if I'm using the words correctly.

15:04:50 25          THE COURT:  Actually, what happens is if you try

| | | |
|---|---|---|
| 15:04:52 | 1 | to do that, the Court will dismiss it and say this is an |
| 15:04:55 | 2 | unauthorized appeal. |
| 15:04:56 | 3 | THE DEFENDANT:  Right. |
| 15:04:57 | 4 | THE COURT:  So you understand that you're -- you |
| 15:04:59 | 5 | have a right, under the law, to file that separate action, but |
| 15:05:02 | 6 | you're giving up that right as a part of your plea here? |
| 15:05:06 | 7 | THE DEFENDANT:  Right, yes, sir. |
| 15:05:07 | 8 | THE COURT:  All right.  You and your attorney have |
| 15:05:12 | 9 | reached an agreement with the Government regarding restitution, |
| 15:05:16 | 10 | that you'll pay restitution in the amount of $3,000 per victim |
| 15:05:21 | 11 | who can be identified in the child pornography on your |
| 15:05:25 | 12 | computers so long as the total number of restitution order |
| 15:05:32 | 13 | doesn't exceed $50,000.  If it does, then that $3,000 |
| 15:05:38 | 14 | agreement's thrown out and the restitution amount will have to |
| 15:05:41 | 15 | be separately determined by the court.  But as long as it's |
| 15:05:45 | 16 | under that, you're agreeing to pay $3,000 in restitution to any |
| 15:05:50 | 17 | victim that's associated with the counts you're pleading to in |
| 15:05:55 | 18 | this case. |
| 15:05:56 | 19 | THE DEFENDANT:  Can I ask you a question? |
| 15:05:58 | 20 | THE COURT:  Absolutely. |
| 15:05:58 | 21 | THE DEFENDANT:  Like I was saying before, as far |
| 15:06:04 | 22 | as I understand, that -- 'cause we don't have that kind of |
| 15:06:08 | 23 | money, can I write that restitution off while I'm in prison, |
| 15:06:14 | 24 | because I don't know how long it will take, I just -- I'll be |
| 15:06:20 | 25 | paying it by the time I'm there. |

15:06:21  1         THE COURT:  The law says that I'm obligated to
15:06:24  2    enter a restitution order without regard to whether or not you
15:06:29  3    can pay it.
15:06:30  4         THE DEFENDANT:  Okay.
15:06:32  5         THE COURT:  And so if we enter a restitution order
15:06:35  6    beyond what you can pay, then the law also will say that there
15:06:41  7    are certain amounts of your monthly income, not a large amount
15:06:44  8    but some, that they can take each month to pay towards your
15:06:48  9    restitution, and it may well never be paid, but I guess that
15:06:54 10    amount, that judgment, is out there in the event you won the
15:06:58 11    lottery or inherited a lot of money or found oil on your
15:07:02 12    property or something, that that amount's not reduced.  I have
15:07:08 13    to enter restitution without regard to your present ability to
15:07:11 14    actually pay that amount.
15:07:15 15         Does that answer your question?
15:07:16 16         THE DEFENDANT:  I believe so.
15:07:17 17         THE COURT:  All right.  Have you and Mr. Henderson
15:07:23 18    discussed forfeiture?
15:07:26 19         THE DEFENDANT:  I -- I read it in the document.
15:07:30 20         THE COURT:  Do you know what it means?
15:07:31 21         THE DEFENDANT:  I forfeit any right, basically, to
15:07:34 22    lay claim to anything that might have been taken by the
15:07:37 23    Government.
15:07:38 24         THE COURT:  Yeah, forfeiture essentially means
15:07:40 25    that property that's connected to your crime -- and in this

15:07:44  1    case that relates to the computers -- you surrender your

15:07:52  2    ownership or possession of that to the Government, and so it

15:07:55  3    says here you're agreeing to the forfeiture of that property to

15:07:58  4    the Government because it was connected with this crime.  And

15:08:01  5    there are some exceptions to that that we'll discuss when we

15:08:04  6    get down to Paragraph 11, but at this point it says you're

15:08:07  7    agreeing to forfeit the property used in the crime.  Do you

15:08:11  8    understand what that means?

15:08:12  9              THE DEFENDANT:  Yes, sir.

15:08:12  10             THE COURT:  All right.  And, of course, the

15:08:18  11   Government's agreeing that you can stay on bond during your

15:08:21  12   appeal, but you're agreeing that if you lose your appeal, then

15:08:30  13   your right to stay on bond will be revoked and at that point

15:08:32  14   you're agreeing to surrender yourself to the custody of law

15:08:40  15   enforcement officers and your release status will be

15:08:43  16   terminated.

15:08:45  17             Go ahead, you have do you have a question on that?

15:08:48  18             THE DEFENDANT:  I understood that the bond ends

15:08:50  19   once the appeal is over anyhow.

15:08:54  20             THE COURT:  Right, if you lose your appeal.

15:08:56  21             THE DEFENDANT:  Right.  Then the first thing I

15:08:59  22   have to do is report to where I have to serve my sentence.  Is

15:09:04  23   that correct?

15:09:08  24             THE COURT:  Let me back up a half step, because

15:09:10  25   actually this paragraph says if you decide not to appeal, and

15:09:13   1    your time to appeal expires, or if you lose your appeal -- and

15:09:19   2    I hadn't mentioned that first piece to you -- you have to

15:09:21   3    surrender yourself to the Government.  It won't be where your

15:09:25   4    sentence is, because you will not have been sentenced at that

15:09:28   5    point.  We're not going to do a sentencing hearing until after

15:09:31   6    you've had -- well, actually, that's not -- that's probably not

15:09:34   7    true, is it?

15:09:34   8                    MR. HART:  That's correct, Your Honor.  The court

15:09:38   9    will proceed to sentencing.

15:09:39   10                   THE COURT:  That's right, we will.

15:09:40   11                   MR. HART:  And then the appeal time, and I -- I

15:09:43   12   cannot remember if it's 14 days or 10 days or 30 days.

15:09:46   13                   THE COURT:  It's 14 days.

15:09:47   14                   MR. HART:  It's 14 days.  The defendant would then

15:09:49   15   at that point in time file his notice of appeal within that

15:09:52   16   time period.  If he does not, wherever the court has designated

15:09:56   17   him for or, I guess, the Bureau of Prisons has designated him

15:10:00   18   for --

15:10:00   19                   THE COURT:  Right.

15:10:01   20                   MR. HART:  -- he would need to either turn himself

15:10:03   21   in here locally or immediately turn himself in there.  And if

15:10:09   22   he is successful or -- or unsuccessful on his appeal, if he

15:10:12   23   does take it, what he has recited is exactly correct, is he

15:10:16   24   will be turning himself in to wherever Bureau of Prisons has

15:10:18   25   assigned him.

15:10:19   1          THE COURT:  Mr. Hart's correct.  I will actually

15:10:21   2   pass sentence on you before you take your appeal.  If you're

15:10:25   3   successful in your appeal, then that sentence and this plea

15:10:29   4   agreement will be set aside.  If you're not successful in that

15:10:32   5   appeal, then you're going to surrender yourself either to the

15:10:36   6   Bureau of Prisons facility that's been designated for you, if

15:10:40   7   they're ready to take you, or to the local marshal's office,

15:10:43   8   who will hold you until the Bureau of Prisons is ready to take

15:10:46   9   you.

15:10:47  10          THE DEFENDANT:  Yes, sir.  I just jumped the gun.

15:10:49  11   I apologize.

15:10:50  12          THE COURT:  No, no, you didn't at all, not at all.

15:10:53  13          All right.  That takes us up to Paragraph 6, which

15:10:57  14   explains that once I've accepted your plea you're not allowed

15:11:02  15   to withdraw your plea unless you prevail on your appeal.  If

15:11:09  16   you later change your mind about the rest of this, it doesn't

15:11:13  17   matter; you can only withdraw your plea if your appeal is

15:11:17  18   successful.  Otherwise you can't change your mind later and get

15:11:21  19   these rights back.  You understand that?

15:11:22  20          THE DEFENDANT:  Yes, sir.

15:11:22  21          THE COURT:  Paragraph 7 explains that at the time

15:11:27  22   of your sentencing the sentence you receive is going to be

15:11:30  23   entirely up to me.  The guideline range will be calculated.

15:11:33  24   The Government may make a recommendation.  Your attorney may

15:11:38  25   make a recommendation.  But I'm the one that decides what your

15:11:41  1    sentence will be.  Is that clear?

15:11:43  2                    THE DEFENDANT:  Yes, sir.

15:11:44  3                    THE COURT:  And, of course, if you don't like what

15:11:46  4    sentence I give you, that's also not a basis for you to

15:11:48  5    withdraw your plea.

15:11:51  6                    Oh, here's Paragraph 8, sentencing guideline.

15:11:56  7    We've already talked about that.  So let's jump to

15:12:00  8    Paragraph 10, which explains that you understand that as a

15:12:03  9    result of a conviction under this offense you're subject to the

15:12:06  10   Sex Offender Registration and Notification Act, which will

15:12:09  11   require you to register and keep your registration current

15:12:12  12   anyplace you live, work, or go to school.  And your

15:12:17  13   registration's going to have to include your name, your

15:12:20  14   address, and the addresses of where you're employed or in

15:12:24  15   school.  And it's going to require that if those change you

15:12:28  16   notify -- you make changes to your registration within three

15:12:34  17   days of them changing.  And if you don't do all that, that

15:12:38  18   itself is a violation of federal law, and you could be

15:12:41  19   prosecuted for failure to register and to keep your

15:12:44  20   registration current.  Is that all clear?

15:12:46  21                    THE DEFENDANT:  I do have a question about that.

15:12:48  22                    THE COURT:  All right.

15:12:48  23                    THE DEFENDANT:  That's the question I had earlier.

15:12:53  24   Does the registration happen when you get out of prison or does

15:12:56  25   it happen beforehand?

| | | |
|---|---|---|
| 15:12:59 | 1 | THE COURT:  It'll happen when you're out of |
| 15:13:01 | 2 | prison. |
| 15:13:01 | 3 | THE DEFENDANT:  When I'm out of prison.  Okay. |
| 15:13:04 | 4 | Just I wanted -- I don't want to screw up. |
| 15:13:07 | 5 | THE COURT:  Right.  Well, no, as long as you're in |
| 15:13:09 | 6 | prison you're the Government's responsibility.  It's only when |
| 15:13:12 | 7 | you're out that you're going to be required to make these |
| 15:13:15 | 8 | registration. |
| 15:13:17 | 9 | THE DEFENDANT:  Okay. |
| 15:13:18 | 10 | THE COURT:  Any other questions? |
| 15:13:19 | 11 | THE DEFENDANT:  No, sir. |
| 15:13:19 | 12 | THE COURT:  Paragraph 11 talks about forfeiture, |
| 15:13:21 | 13 | and we've pretty much already talked about forfeiture and the |
| 15:13:24 | 14 | forfeiture of the computer equipment that I've previously |
| 15:13:27 | 15 | identified.  However, Paragraph 11 says that the Government |
| 15:13:31 | 16 | does agree that files on these computers that are not |
| 15:13:34 | 17 | contraband, that is that are not child pornography or otherwise |
| 15:13:37 | 18 | illegal, which you or your wife can identify, these may be |
| 15:13:42 | 19 | individual photos or personal documents or whatever, they'll |
| 15:13:46 | 20 | return to you, although they may require you to provide them a |
| 15:13:49 | 21 | disc to put them on.  Otherwise you're forfeiting the computers |
| 15:13:52 | 22 | and everything on them. |
| 15:13:53 | 23 | Is that clear? |
| 15:13:54 | 24 | THE DEFENDANT:  Yes, sir. |
| 15:13:54 | 25 | THE COURT:  I think I'm going to jump to Paragraph |

| | | |
|---|---|---|
| 15:14:00 | 1 | 14, which simply explains that the promises the Government is |
| 15:14:04 | 2 | making to you in this case are only binding against federal |
| 15:14:06 | 3 | prosecutors in Kansas, and nobody else, no state or local |
| 15:14:12 | 4 | authorities are in any way restricted by the agreements in this |
| 15:14:16 | 5 | plea agreement.  I don't know that you would face any |
| 15:14:20 | 6 | prosecution by state or local authorities.  I'm unaware that |
| 15:14:24 | 7 | you will.  But I just want you to understand that only the |
| 15:14:26 | 8 | federal prosecutors in Kansas are bound by the promises in this |
| 15:14:29 | 9 | agreement.  Is that clear? |
| 15:14:30 | 10 | THE DEFENDANT:  Yes, sir. |
| 15:14:30 | 11 | THE COURT:  And, finally, the last sentence of |
| 15:14:32 | 12 | this plea agreement says that you acknowledge that you're |
| 15:14:35 | 13 | entering into this agreement and you're pleading guilty because |
| 15:14:38 | 14 | you are guilty, and you're doing that freely and voluntarily. |
| 15:14:43 | 15 | Is that a correct statement, sir? |
| 15:14:45 | 16 | THE DEFENDANT:  Yes, sir. |
| 15:14:45 | 17 | THE COURT:  Other than the promises the |
| 15:14:48 | 18 | Government's made to you in this plea agreement that I've |
| 15:14:50 | 19 | already gone over with you, has anybody made any other promises |
| 15:14:53 | 20 | to you to persuade you to enter a plea of guilty? |
| 15:14:57 | 21 | THE DEFENDANT:  No, sir. |
| 15:14:57 | 22 | THE COURT:  Has anyone made any threats against |
| 15:14:59 | 23 | you to make you enter this plea? |
| 15:15:01 | 24 | THE DEFENDANT:  No, sir. |
| 15:15:01 | 25 | THE COURT:  Anybody used or attempted to use any |

9-8-14  USA v. ACKERMAN  No. 13-10176

60

15:15:04  1  physical force or violence against you?

15:15:07  2            THE DEFENDANT:  No, sir.

15:15:08  3            THE COURT:  Counsel for both sides, have I

15:15:10  4  adequately covered this plea agreement to your satisfaction?

15:15:11  5            MR. HART:  Yes, Your Honor.

15:15:12  6            MR. HENDERSON:  Yes, Your Honor.  Thank you.

15:15:14  7            THE COURT:  Mr. Ackerman, let's talk briefly about

15:15:17  8  your petition to enter a conditional plea of guilty, a separate

15:15:21  9  document.  I'm not going to go through it in detail like I did

15:15:24  10  the plea agreement, but I do want to ask you a few questions

15:15:26  11  about it.

15:15:27  12            Are you familiar with this petition?

15:15:30  13            THE DEFENDANT:  Which one?

15:15:32  14            MR. HENDERSON:  (Indicating.)

15:15:34  15            THE DEFENDANT:  Yes, sir.  Mr. Henderson showed me

15:15:36  16  this.

15:15:37  17            THE COURT:  Have you gone through it?

15:15:38  18            THE DEFENDANT:  Yes, sir, I believe I did.  We

15:15:42  19  went through it together.

15:15:43  20            THE COURT:  So you've gone through it together

15:15:44  21  with him and discussed it.  Do you think you understand it?

15:15:46  22            THE DEFENDANT:  I discussed it when I saw it.  I

15:15:50  23  don't remember it right now.

15:15:51  24            THE COURT:  Well, that's okay.  This isn't a

15:15:54  25  memory test.  But did you go through this, and when you went

15:15:57  1   through it with Mr. Henderson did you think you understood what

15:16:00  2   it was saying?

15:16:01  3                THE DEFENDANT:  Yes, sir.

15:16:01  4                THE COURT:  Counsel, are you confident your client

15:16:03  5   understands the consequences of signing this petition and

15:16:08  6   presenting it to the Court?

15:16:09  7                MR. HENDERSON:  I am, Your Honor.

15:16:14  8                THE COURT:  You understand, Mr. Ackerman, that by

15:16:15  9   signing this petition and giving it to me it means you're

15:16:18  10  telling me, under oath, that you committed the crime to which

15:16:21  11  you're pleading, and you're telling me that you're, in fact,

15:16:24  12  legally guilty of that crime; you understand that?

15:16:27  13               THE DEFENDANT:  Yes, sir.

15:16:29  14               THE COURT:  And by signing this petition and

15:16:30  15  giving it to me you're telling me that you want to plead guilty

15:16:34  16  to that crime and you want me to accept that plea and to find

15:16:37  17  that you are guilty, without having to have a trial; you

15:16:40  18  understand that?

15:16:41  19               THE DEFENDANT:  Yes, sir.

15:16:43  20               THE COURT:  Are you signing this petition and

15:16:45  21  presenting it to the Court because you are, in fact, legally

15:16:47  22  guilty of the crime to which you're pleading?

15:16:49  23               THE DEFENDANT:  Yes, sir.

15:16:50  24               THE COURT:  Do you have any more questions about

15:16:52  25  anything I've talked with you about this afternoon?

9-8-14   USA v. ACKERMAN   No. 13-10176

62

| | | |
|---|---|---|
| 15:16:54 | 1 | THE DEFENDANT:  I believe not, Your Honor. |
| 15:17:00 | 2 | THE COURT:  Before I take your plea, do you want |
| 15:17:02 | 3 | any additional time to talk privately with Mr. Henderson about |
| 15:17:06 | 4 | anything at all? |
| 15:17:07 | 5 | THE DEFENDANT:  No, sir. |
| 15:17:08 | 6 | THE COURT:  Are you ready to enter your plea? |
| 15:17:10 | 7 | THE DEFENDANT:  Yes, sir. |
| 15:17:11 | 8 | THE COURT:  Would you please stand, sir. |
| 15:17:12 | 9 | (The defendant complies.) |
| 15:17:13 | 10 | THE COURT:  Walter Ackerman, as to Count 1 of the |
| 15:17:20 | 11 | grand jury's indictment against you, how do you plead, guilty |
| 15:17:23 | 12 | or not guilty? |
| 15:17:23 | 13 | THE DEFENDANT:  Guilty. |
| 15:17:24 | 14 | THE COURT:  As to Count 2 in the grand jury's |
| 15:17:26 | 15 | indictment against you, how do you plead, guilty or not guilty? |
| 15:17:29 | 16 | THE DEFENDANT:  Guilty. |
| 15:17:30 | 17 | THE COURT:  Mr. Henderson, you may assist your |
| 15:17:32 | 18 | client in executing these documents and presenting them to the |
| 15:17:35 | 19 | court. |
| 15:17:36 | 20 | MR. HENDERSON:  Thank you, Your Honor. |
| 15:17:38 | 21 | (Brief pause.) |
| 15:18:21 | 22 | MR. HENDERSON:  Your Honor, Mr. Ackerman and I |
| 15:18:22 | 23 | have both signed the plea agreement and the petition to enter a |
| 15:18:25 | 24 | plea, and I'm handing those to the clerk. |
| 15:18:27 | 25 | COURTROOM DEPUTY:  Thank you. |

15:19:08   1        THE COURT:  You've modified the petition,

15:19:11   2   Mr. Henderson, as to counts -- or paragraphs 21 and 22, but

15:19:16   3   they've not been initialed.  Should they not be initialed?

15:19:19   4        MR. HENDERSON:  I'm sorry, Your Honor.

15:19:29   5        (Brief pause.)

15:20:02   6        MR. HENDERSON:  May I approach, Your Honor?

15:20:15   7        THE COURT:  Counsel, do either of you know any

15:20:17   8   reason why I should not accept this plea?

15:20:18   9        MR. HART:  No, Your Honor.

15:20:19   10        MR. HENDERSON:  No, Your Honor.

15:20:20   11        THE COURT:  Very well.  I find that the defendant

15:20:21   12   has made his plea freely, voluntarily, and because he is guilty

15:20:26   13   as charged, and not out of ignorance, fear, inadvertence, or

15:20:31   14   coercion, but with a full understanding of the consequences.  I

15:20:35   15   further find that he's admitted to the essential elements of

15:20:38   16   the crimes charged and that he's mentally competent to do so.

15:20:40   17   I'm, therefore, ordering that his pleas of -- conditional pleas

15:20:44   18   of guilty be accepted and entered as prayed for in the petition

15:20:47   19   and as recommended by his counsel.

15:20:50   20        Mr. Ackerman, I'm going to have the United States

15:20:53   21   Probation Office prepare a background presentence investigation

15:20:55   22   report on you that we'll use at the time of your sentencing.

15:20:59   23   In connection with that, they'll probably want to interview you

15:21:03   24   or talk to you.  I'm advising you to have Mr. Henderson present

15:21:05   25   for that interview or, at a minimum, to at least discuss it

| | | |
|---|---|---|
| 15:21:09 | 1 | with him in advance.  Do you understand? |
| 15:21:11 | 2 | THE DEFENDANT:  Yes, sir. |
| 15:21:12 | 3 | THE COURT:  What date can we set for sentencing in |
| 15:21:14 | 4 | this case? |
| 15:21:15 | 5 | COURTROOM DEPUTY:  November 24th at 10:15 AM. |
| 15:21:17 | 6 | THE COURT:  All right.  Sentencing's set |
| 15:21:19 | 7 | accordingly.  Pursuant to the agreement of the parties as set |
| 15:21:22 | 8 | forth in the plea agreement, the defendant will continue on |
| 15:21:24 | 9 | release status with the same conditions and terms as before. |
| 15:21:28 | 10 | MR. HART:  Your Honor, if I may.  I don't know, |
| 15:21:31 | 11 | that 10:15 setting, I would expect, may require Mr. Ackerman to |
| 15:21:34 | 12 | drive down the night before, 'cause that's a significant drive. |
| 15:21:39 | 13 | THE COURT:  That's a good call.  We almost never |
| 15:21:42 | 14 | do sentencings on the date we initially set them, but we might |
| 15:21:46 | 15 | as well not set one to begin with that's awkward, so let's move |
| 15:21:50 | 16 | it to maybe 2:00 in the afternoon. |
| 15:21:53 | 17 | THE DEFENDANT:  How about 2:30 in the afternoon? |
| 15:21:55 | 18 | THE COURT:  That'll work, too. |
| 15:21:57 | 19 | MR. HART:  Thank you, Your Honor. |
| 15:21:57 | 20 | THE COURT:  All right.  Thank you, Mr. Hart. |
| 15:21:59 | 21 | Is there anything else we need to take up |
| 15:22:01 | 22 | regarding this matter this afternoon? |
| 15:22:03 | 23 | MR. HENDERSON:  No, Your Honor.  Thank you. |
| 15:22:04 | 24 | MR. HART:  (Shaking head.) |
| 15:22:04 | 25 | THE COURT:  All right.  Court will be in -- I |

15:22:07   1   mean, that'll conclude our hearing as to this case.

15:22:10   2              MR. HART:  Thank you, Your Honor.

15:22:11   3              (Whereupon, the proceedings were concluded at

15:22:12   4              3:22 PM.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    C E R T I F I C A T E

          I, Johanna L. Wilkinson, United States Court
Reporter in and for the District of Kansas, do hereby
certify:

          That the above and foregoing proceedings were
taken by me at said time and place in stenotype;

          That thereafter said proceedings were
transcribed under my direction and supervision by means
of computer-aided transcription, and that the above and
foregoing constitutes a full, true and correct
transcript of said proceedings;

          That I am a disinterested person to the said
action.

          IN WITNESS WHEREOF, I hereto set my hand on
this the 24th day of February, 2015.



               s/ Johanna L. Wilkinson
               Johanna L. Wilkinson, CSR, CRR, RMR
               United States Court Reporter