IN THE UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

THE UNITED STATES OF AMERICA,    )
                                 )  District Court
                    Plaintiff,   )  Case No.
vs.                              )  13-10176
                                 )
WALTER E. ACKERMAN,              )  Circuit Court
                                 )  Case No.
                    Defendant.   )  14-3265


TRANSCRIPT OF SENTENCING HEARING

     On the 24th day of November, 2014, came on to be heard proceedings in the above-entitled and numbered cause before the HONORABLE ERIC F. MELGREN, Judge of the United States District Court for the District of Kansas, sitting in Wichita, commencing at 2:26 PM.  Proceedings recorded by mechanical stenography.  Transcript produced by computer.

APPEARANCES

The plaintiff appeared by and through:
        Mr. Jason Hart
        United States Attorney's Office
        1200 Epic Center
        301 North Main
        Wichita, Kansas  67202

The defendant appeared by and through:
        Mr. John K. Henderson, Jr.
        Federal Public Defender's Office
        301 North Main
        Suite 850
        Wichita, Kansas 67202

Also present:
        Mr. Shawn Brewer, U.S. Probation Officer

14:26:19  1        THE COURT:  The next case on the Court's docket is

14:26:21  2   the case of the United States versus Walter Ackerman, Case

14:26:25  3   No. 13-10176.  The United States appears by Assistant United

14:26:30  4   States Attorney Jason Hart, and the defendant appears in person

14:26:33  5   and by his counsel Assistant Federal Public Defender John

14:26:35  6   Henderson.  This matter comes before the court for sentencing.

14:26:46  7        For the record, sir, are you Walter Ackerman?

14:26:49  8        THE DEFENDANT:  Yes, sir, I am.

14:26:50  9        THE COURT:  We're here because this is the time

14:26:52  10  set for your sentencing, and we've come to this point because

14:26:55  11  the United States Probation Office has prepared a background

14:26:59  12  presentence investigation report on you for our use at this

14:27:02  13  hearing.  Have you had an opportunity to go through that report

14:27:06  14  and discuss it with your attorney?

14:27:08  15       THE DEFENDANT:  Yes, sir, I have.

14:27:09  16       THE COURT:  Mr. Henderson, the probation office

14:27:15  17  presentence investigation report notes one objection by you.

14:27:22  18  And, again, it strikes me that this is not really an objection

14:27:25  19  to the calculation of the sentencing guideline but it's more of

14:27:30  20  an argument in the nature of a variance.  Is that correct?

14:27:33  21       MR. HENDERSON:  That's correct, Your Honor.

14:27:34  22       THE COURT:  All right.  Well, since it's not

14:27:36  23  really an objection, I'm going to overrule the objection and

14:27:39  24  allow you to make those arguments when we address the proposed

14:27:44  25  sentence in this case.  Are there any other objections to the

14:27:46  1    presentence report?

14:27:47  2             MR. HENDERSON:  No, Your Honor.

14:27:48  3             THE COURT:  According to the presentence report,

14:27:51  4    and following the defendant's guilty plea to Count 1 of

14:27:55  5    distribution of child pornography and Count 2 of possession of

14:27:58  6    child pornography, the defendant presents to this court at an

14:28:02  7    Offense Level 38, Criminal History Category I.  The

14:28:06  8    United States Sentencing Guidelines would suggest a sentence

14:28:10  9    for that offense level and criminal history category of 235 to

14:28:15  10   293 months.  However, the statute in this case -- well, with

14:28:21  11   respect to Count 1 -- has a statutory maximum of 20 years.

14:28:25  12   With respect to Count 2 it has a statutory maximum of ten

14:28:28  13   years.  So in order to go above the 240-month sentence I would

14:28:31  14   have to make sentences consecutive and not concurrent,

14:28:35  15   otherwise the guideline range would be 235 to 240 months.

14:28:40  16             Both parties have filed lengthy sentencing

14:28:44  17   memorandums in this case, which I have read and reviewed and

14:28:47  18   spent some time with.  Obviously, sentencings in these cases

14:28:53  19   are far from routine matters.  I'll be happy to hear any

14:28:58  20   additional comments the parties wish to make at this point

14:29:02  21   regarding the proposed sentence.  Mr. Hart?

14:29:06  22             MR. HART:  Thank you, Your Honor.  I don't think

14:29:08  23   there's anything I would add beyond what I've submitted in the

14:29:11  24   sentencing brief.  I would clarify, at the very end, our

14:29:15  25   conclusion at the very end, I request that the Court impose a

| | | |
|---|---|---|
| 14:29:19 | 1 | sentence of 240 months or, in any event, no less than 160 |
| 14:29:24 | 2 | months.  Where I get the 240 months from is that is a -- that |
| 14:29:29 | 3 | is within the guideline range as it's in the PSR, but it's also |
| 14:29:33 | 4 | what would be the top if these two counts were run |
| 14:29:37 | 5 | concurrently. |
| 14:29:37 | 6 | THE COURT:  Right. |
| 14:29:38 | 7 | MR. HART:  So that -- I just wanted to articulate |
| 14:29:41 | 8 | that to the Court, where that number comes from.  I think the |
| 14:29:43 | 9 | Court is well aware of the defendant's -- the facts related to |
| 14:29:47 | 10 | the defendant's conduct from having conducted the previous |
| 14:29:51 | 11 | suppression hearing.  I don't think I have any additional |
| 14:29:55 | 12 | information. |
| 14:29:56 | 13 | THE COURT:  Your 160 months is just based on your |
| 14:29:59 | 14 | analysis of my own sentencing patterns in these types of cases? |
| 14:30:04 | 15 | MR. HART:  Yes, Your Honor. |
| 14:30:04 | 16 | THE COURT:  All right.  Thank you, Mr. Hart.  And |
| 14:30:07 | 17 | as I said, I did spend time reading your sentencing memorandum |
| 14:30:11 | 18 | carefully, and appreciate all the detail that you provided. |
| 14:30:15 | 19 | Mr. Henderson? |
| 14:30:15 | 20 | MR. HENDERSON:  Thank you, Your Honor. |
| 14:30:27 | 21 | Your Honor, the Court's introductory comments |
| 14:30:36 | 22 | regarding the difficulty of sentencing in these cases is shared |
| 14:30:41 | 23 | by us all who have been through this experience multiple times. |
| 14:30:47 | 24 | They're never easy cases.  They're always very difficult, for a |
| 14:30:52 | 25 | variety of reasons at very different levels.  But one thing |

14:30:57  1   that speaks loudly, at least to me, after reviewing Mr. Hart's

14:31:03  2   brief, which I agree was an excellent brief and it brought to

14:31:06  3   the fore information detail that I wasn't familiar with, and I

14:31:11  4   appreciated the opportunity to review that, but what spoke to

14:31:16  5   me, as a result of preparing our brief and reviewing his and

14:31:22  6   the attached article, doing some additional reading, is that

14:31:25  7   the status of the law in this area with respect to sentencing

14:31:32  8   is, my words, chaotic, very uncertain and, if nothing else

14:31:44  9   fraught with a tremendous amount of variation, which is

14:31:48  10  difficult to reconcile at times.

14:31:50  11          THE COURT:  It's not really the status of the law

14:31:55  12  that's chaotic and subject to widely varying; it's the status

14:31:58  13  of the execution and enforcement of that law.  Would that be a

14:32:01  14  fair statement?

14:32:02  15          MR. HENDERSON:  Thank you, Your Honor.  I

14:32:03  16  appreciate that.  That's absolutely right.  And we see it at

14:32:11  17  the national level.  We have two very aggressive positions:

14:32:18  18  One articulated by the piece that was appended to the

14:32:22  19  Government's memorandum, we have the Stabenow article and the

14:32:28  20  cases that followed that and additional writings; we have the

14:32:31  21  commission's own report, a very lengthy report, very detailed

14:32:36  22  report describing the variations and bringing to fore all the

14:32:45  23  numbers and statistics that illustrate the variations; and then

14:32:51  24  we have, even here in Wichita, variations that, as Mr. Hart's

14:32:59  25  pointed out, are attributable to the different judges that we

14:33:04  1   appear before and our clients appear before.

14:33:09  2            Stepping back from all of that, again, from our

14:33:16  3   perspective, I think it's incredibly difficult to discern, to

14:33:28  4   conclude with any degree of reliability or certainty what is or

14:33:36  5   is not appropriate punishment in cases like this, because there

14:33:42  6   is such a range and there's so many variables.  I don't have

14:33:48  7   any magical answers, and I've read the statistics, I've looked

14:33:54  8   at the numbers as well, and I think different sentences can be

14:34:02  9   justified, even though they're very different, for a variety of

14:34:07  10  good reasons, both in favor of our clients and against our

14:34:13  11  clients.

14:34:15  12           So where I -- how I approach this -- and I can

14:34:20  13  cite Your Honor no authority for it other than it just seems to

14:34:24  14  make sense in the environment that we're in -- my approach to

14:34:28  15  it is to start with what we know for certain, and that is

14:34:31  16  there's a statutory mandatory minimum of five years in the

14:34:37  17  distribution cases.  And I start there for a number of reasons,

14:34:43  18  the first of which is the legislature -- Congress must have

14:34:47  19  meant something when they started there at five years, yet it's

14:34:51  20  remarkable that in applying the guidelines I have never seen a

14:34:57  21  case -- and I don't know that any have been cataloged -- where

14:35:02  22  the guidelines bring you to five years.  It's always higher

14:35:06  23  than five years.  I may be wrong, but at least from my

14:35:09  24  experience I've never seen one start there.  And I've seen many

14:35:13  25  more at the higher end of the spectrum, and certainly in this

| | | |
|---|---|---|
| 14:35:20 | 1 | case it's as high as you can get, to the maximum statutory |
| 14:35:24 | 2 | penalty. |
| 14:35:26 | 3 | And I start at five and asked what is it that |
| 14:35:31 | 4 | takes this case beyond what the Congress has said is the |
| 14:35:35 | 5 | baseline, is the starting point, for this crime?  And, again, |
| 14:35:41 | 6 | in trying to discern the principles and the concepts and the |
| 14:35:47 | 7 | motivating factors, taking into consideration what the |
| 14:35:53 | 8 | guidelines were, taking into consideration what the guideline |
| 14:35:57 | 9 | report now talks about may be the guidelines in the future, |
| 14:36:02 | 10 | taking into consideration all of the arguments that Mr. Hart's |
| 14:36:06 | 11 | presented and others, it seems to me that when you boil it all |
| 14:36:10 | 12 | down it comes to a point where you're asking the question and |
| 14:36:14 | 13 | you're trying to quantify to what extent is the person who has |
| 14:36:21 | 14 | child pornography on their computer, to what extent is this |
| 14:36:25 | 15 | person a threat to children, to what extent is this person a |
| 14:36:30 | 16 | pedophile, to what extent is this person taking those |
| 14:36:37 | 17 | photographs and deriving enjoyment and pleasure in them which |
| 14:36:44 | 18 | may be later translated into action? |
| 14:36:46 | 19 | The social scientists, the behavioral scientists, |
| 14:36:52 | 20 | will probably be working for years and years to try to study |
| 14:36:56 | 21 | and quantify and measure in any reliable fashion a connection |
| 14:37:03 | 22 | between the possession of the photographs and dangerous |
| 14:37:07 | 23 | activity.  But it seems to me that that's ultimately what we're |
| 14:37:12 | 24 | trying to do.  As inartfully, as imprecise as it is, we're |
| 14:37:17 | 25 | trying our best to do that. |

14:37:20   1          Each case, of course, is different.  Each case has

14:37:24   2    facts, has indicators, has information that helps us answer

14:37:27   3    those questions beyond those that are tabulated or collected in

14:37:34   4    the sentencing guidelines.  Bringing that analysis to this

14:37:41   5    case, I don't think it's fair to say in this case, or in other

14:37:47   6    cases, that there's necessarily a presumption that someone is a

14:37:56   7    pedophile because they have child pornography on their

14:38:01   8    computer.  I know that that argument is there.  I know many

14:38:04   9    advocate it.  But this case, again, I suggest, is an example.

14:38:12  10          Mr. Ackerman has no -- absolutely no history, no

14:38:18  11    hint of any history, no indications of any inappropriate

14:38:24  12    activity with children.  None.  None whatsoever.  And, indeed,

14:38:29  13    as he explained to the officer who arrested -- not arrested

14:38:33  14    him, but who interviewed him, and that was a lengthy interview,

14:38:38  15    and it evolved -- I listened to the latter portion of it again

14:38:42  16    this morning -- it evolved to a point where they were having a

14:38:45  17    conversation.  I won't say an academic, but it was a genuine,

14:38:52  18    intellectual conversation, and you could hear Mr. Ackerman

14:38:57  19    struggling to respond as honestly as he could and as

14:39:02  20    thoughtfully as he could to the challenges, to the questions

14:39:05  21    that were raised by the officer.

14:39:07  22          And keep in mind the context.  The officer's tape

14:39:12  23    recording the conversation.  He knows from his experience who

14:39:14  24    the ultimate audience will be.  Mr. Ackerman does not have that

14:39:19  25    experience, and he's having a conversation.  And in that

14:39:23  1   conversation Mr. Ackerman repeatedly tried to explain that his

14:39:31  2   interest or his association with these pictures was all about

14:39:39  3   establishing relationships with adult males in an interest in

14:39:49  4   sexual activity that is in some -- by some accounts extreme or

14:39:56  5   fringe but, nevertheless, legal.  But the important point is,

14:40:03  6   the important point is, it wasn't focused on activity with

14:40:07  7   children.  It wasn't focused on an interest in children; it was

14:40:13  8   focused on Mr. Ackerman's interest in other men.

14:40:17  9            Now, because of some what I'll describe as

14:40:24  10  horrific experiences, almost life-threatening experiences, he's

14:40:28  11  changed.  He is no longer pursuing those kinds of relationships

14:40:39  12  and, of course, this case has had a dramatic effect in other

14:40:43  13  ways as well.  But --

14:40:46  14            THE COURT:  The experiences you're referring to

14:40:49  15  are the arrest and the charges in this case that have caused

14:40:53  16  this -- the life-changing effects that you talked about?

14:40:58  17            MR. HENDERSON:  There are two parts to that.

14:41:00  18  Certainly, this has had a dramatic effect on him, and the

14:41:06  19  arrest, certainly, but when listening to that conversation with

14:41:12  20  the officer, it was as much, if not more, that dialogue that

14:41:17  21  took place and his finally confronting what it really meant to

14:41:25  22  have these photographs.  When he personalized, when he realized

14:41:33  23  and started thinking about these are real people, they're just

14:41:38  24  not pictures, these are real children, they're just not videos,

14:41:46  25  his perspective on it and his regard for those changed

14:41:50  1    dramatically.  But the change with respect to his sexual

14:41:56  2    fetish, if you will, his interest in other men and activities

14:42:01  3    with other men changed as a result of at least one, if not

14:42:09  4    more, episodes where he was brutally victimized.

14:42:14  5         I mean, his whole orientation in those contexts

14:42:20  6    was not to inflict the kind of experience, but to be the

14:42:28  7    recipient, going back to his childhood and his abuse by his

14:42:34  8    father, I suppose.  I'm not a psychiatrist.  But that changed

14:42:41  9    as a result of some poisonous dates, if you will, and the -- as

14:42:50  10   I say, the experience with the child pornography obviously

14:42:54  11   changed with the arrest, being caught with them, and then

14:43:02  12   having that conversation with the officer, and since then

14:43:06  13   reflecting on it, discussing it with family, his therapist and

14:43:11  14   others.

14:43:13  15        So getting back to how -- why we proposed a

14:43:18  16   sentence at five years, I look at the -- I look at the

14:43:21  17   threshold and I look at the experience in this case, and I say

14:43:27  18   to what extent is this individual someone who is a threat to

14:43:30  19   children, someone who is deriving personal pleasure from the

14:43:37  20   experiences depicted in those photographs, and I see that

14:43:41  21   Mr. Ackerman does not fall under that category.

14:43:47  22        With respect to the conduct described in

14:43:56  23   Mr. Hart's memorandum and conduct that the commission is

14:43:59  24   apparently thinking about using to categorize incremental

14:44:10  25   punishment, there's a reference to the use of the anonymous

14:44:15  1    program to gain access to the pictures.  There's no doubt that

14:44:19  2    that's how Mr. Ackerman acquired the photographs.  Whoever is

14:44:24  3    generating them was anonymous to Mr. Ackerman.  But as we know

14:44:29  4    from the suppression hearing in this case, Mr. Ackerman's

14:44:34  5    distribution was anything but anonymous.  He sent e-mails over

14:44:39  6    the regular e-mail system to the individual and attached the

14:44:43  7    photographs.

14:44:47  8            Also with regard to the -- one of the criteria is

14:44:52  9    an association with individuals who are part of a community and

14:45:01  10   enhancing that community.  There's no question that his

14:45:04  11   association with these -- with at least this one individual,

14:45:07  12   and perhaps others, certainly a bi-product of that was

14:45:14  13   reinforcing or generating the community, but I come back to --

14:45:19  14   with respect to Mr. Ackerman -- his interest in doing that had

14:45:22  15   everything to do about potentially dating men, as opposed to

14:45:30  16   anything focused on children.

14:45:39  17           Your Honor, a concluding observation I would like

14:45:44  18   to make is that, again, these cases are always very difficult

14:45:51  19   and traumatic at very different levels for everyone involved,

14:45:57  20   but one thing that does happen is that we spend a lot of time

14:46:02  21   together, we get to know each other, we talk on the phone

14:46:06  22   regularly, and Mr. Ackerman, consistent with the way he behaved

14:46:14  23   at the interview, has been always compliant, honest to a fault,

14:46:23  24   as he was with the -- not all -- I don't think too honest, but

14:46:28  25   he overextended himself, he provided information in the

14:46:32  1  interview that he didn't need to provide.  The first words out

14:46:36  2  of his mouth, in so many words, was "I know why you're here,

14:46:40  3  child pornography."

14:46:43  4        With respect to the statements that he made, and I

14:46:47  5  know Mr. Hart's brief made mention to this, but what my

14:46:53  6  recollection is that it was my mistake at the suppression

14:46:56  7  hearing.  I understood that Mr. Ackerman had been told that if

14:47:03  8  he didn't cooperate, he'd go to prison.  But that statement was

14:47:08  9  actually made to his wife, and that was my mistake.  I

14:47:10 10  understood it was him, but it was actually his wife.  The

14:47:14 11  testimony from both he and his wife made that clear.  They

14:47:17 12  said, "No, they didn't tell me that."  His wife said, "It was

14:47:21 13  me."

14:47:21 14        So Mr. Ackerman has always been very honest, very

14:47:25 15  forthcoming, and accepting of what he has done.  And he has

14:47:31 16  agonized, as the Court knows, over this and has shown a

14:47:38 17  tremendous amount of remorse, has not only shown but

14:47:42 18  demonstrated he's -- he recognizes what he did was a terrible

14:47:49 19  thing and he knows he's going to pay a price for it, and he's

14:47:54 20  prepared to accept that judgment of this court, whatever it may

14:47:57 21  be.  But in the final analysis -- and I know Your Honor has had

14:48:07 22  as much experience with this as we have and perhaps more, and

14:48:18 23  struggles with it as mightily as we do, but I simply ask that

14:48:24 24  the Court, in rendering its judgment in this case, consider the

14:48:27 25  special case presented by Mr. Ackerman and a sentence below the

14:48:33  1    proposed guideline range.

14:48:34  2              THE COURT:  Let me -- let me dialogue just a bit

14:48:38  3    with you, Mr. Henderson.  I -- as I noted, these are difficult

14:48:45  4    cases.  The only other people who appear in my courtroom with a

14:48:49  5    recommended sentence of 20 years are people involved in the

14:48:53  6    violent and obviously highly illegal business of significant

14:48:57  7    drug-trafficking.  I guess we could just say that a 20-year

14:49:07  8    proposed or recommended sentence in this case doesn't carry

14:49:09  9    with it sort of the emotional angst that it does in this case,

14:49:15  10   and so, obviously, I always struggle with these cases.

14:49:20  11             There are probably a couple of areas, though, in

14:49:24  12   your analysis at the beginning, that I would have to disagree a

14:49:27  13   bit.  I don't think the sentence in these cases is designed to

14:49:33  14   address -- to identify and address potential pedophiles,

14:49:39  15   because I don't think it would be appropriate under our

14:49:44  16   criminal justice system to punish people for what they might

14:49:49  17   do.  There was a movie out several years ago about that,

14:49:54  18   punishing people for what they were going to do.  I didn't see

14:49:56  19   that movie.  I don't really enjoy those kinds of movies, but

14:50:00  20   that's clearly not our system.  We punish people for what they

14:50:04  21   did and not for what they might do.

14:50:06  22             Back when I was first looking at these kinds of

14:50:09  23   cases from a prosecutorial perspective, I was struck by

14:50:13  24   someone's comment that said people who look at these images

14:50:18  25   aren't telling us that's what they're going to do, they're

14:50:23   1   telling us that's what they like.  It may be that that's what

14:50:26   2   they would enjoy doing, but it may be that there's very little

14:50:30   3   chance that they ever will do it and so it's hard to actually

14:50:34   4   say these people will do that.  And I thought about that for a

14:50:36   5   long time, but I finally decided that's really irrelevant,

14:50:39   6   because our system can only punish for what people actually do,

14:50:44   7   and not for what they might do.  And so I don't think it's

14:50:47   8   appropriate to look at these offenses in terms of trying to

14:50:50   9   identify and then punish potential pedophiles.

14:50:53   10              I'm even a bit uncomfortable with your suggestion

14:50:57   11   that we punish people who take pleasure in these images, in

14:51:00   12   part because I think that's completely nonascertainable, and in

14:51:04   13   part because I don't think our system really punishes people

14:51:07   14   for what they think.  If we measured punishment based on

14:51:12   15   pleasure, then it becomes a bit of a thought crime, and

14:51:15   16   certainly that's anathema to our criminal justice system as

14:51:19   17   well.  So I think really we only punish people here for what

14:51:23   18   they do, and in this case what they've done, of course, is

14:51:29   19   collect and, when so charged, distribute or further circulate

14:51:36   20   child pornography images.

14:51:37   21              So I think that's really how I have to look at

14:51:40   22   this.  And in that context then, I look at -- Congress has

14:51:48   23   obviously prescribed horrific punishments for these, even apart

14:51:51   24   from the sentencing guidelines.  We look at the statutory

14:51:54   25   minimums and maximums, and Congress has prescribed horrific

14:51:58  1   punishments for them.  But the point that I was wanting, I felt

14:52:01  2   like, something more from you, as I read your brief, is that if

14:52:06  3   Congress has said the least offensive of these offenders, if I

14:52:15  4   can say that, are at the statutory minimum of five years, and

14:52:19  5   then it goes up to 20, where would they fall on this continuum?

14:52:25  6   And for me to sentence someone at the statutory minimum would

14:52:29  7   have to mean, as I perceive the sentencing framework, that I

14:52:33  8   see them as the least-offensive of the range of offenders who

14:52:38  9   will be charged under this statute.

14:52:40  10          And if I don't see them that way, then I have to

14:52:43  11  begin moving away from the minimum towards the maximum.  And

14:52:48  12  the maximum would be those who are the most offensive of people

14:52:51  13  who would be charged, only under this statute and not perhaps

14:52:56  14  something more serious, and on that continuum, of what they've

14:52:59  15  actually done, is where I have to place the sentence.

14:53:04  16          So in light of that framework, what could you tell

14:53:07  17  me, from your perspective and your client's perspective, to

14:53:12  18  help me know where along that continuum it would be appropriate

14:53:16  19  to place Mr. Ackerman?

14:53:18  20          MR. HENDERSON:  Thank you, Your Honor.  Your

14:53:20  21  Honor, we start with the fact that we find photographs on the

14:53:26  22  computer, a possession charge.  We increase that to

14:53:32  23  distribution, where there's evidence that the individual has

14:53:38  24  shared the photographs with others, which triggers the

14:53:42  25  five-year mandatory minimum.  Beyond the distribution point, I

14:53:50  1  think we get into this quagmire as to what events take place

14:53:57  2  with respect to the defendant and the images that merit

14:54:02  3  increased punishment.  And where I come -- where I travel next

14:54:12  4  is, well, what is the principle, what are -- what is the

14:54:17  5  concept that's driving that?

14:54:19  6      I mean, we talk about -- or the guideline talks

14:54:22  7  about more images, the guideline talks about using the

14:54:26  8  computer.  I think -- and Your Honor may disagree with me --

14:54:29  9  but I think we're beyond that now, especially with the

14:54:32  10  commission's report.  In this day and age it's all computer,

14:54:38  11  it's all hundreds of images because it's -- when you download

14:54:45  12  the stuff, you get hundreds of images.

14:54:46  13      THE COURT:  I was interested in your discussion in

14:54:50  14  your brief of I think you called it the 13-point enhancement

14:54:54  15  that always occurs.  And I went back and looked through that.

14:54:58  16  I probably would tend to agree with you with respect to the

14:55:01  17  two-point enhancement for computers.  I mean, I understand

14:55:04  18  where that came from, but that was then and this is now.  Maybe

14:55:08  19  not so much with respect to the others, but with respect to the

14:55:12  20  two-point enhancement for computers, I would tend to agree with

14:55:15  21  you.  And when I looked at what the calculation would be

14:55:17  22  otherwise, which meant that Mr. Ackerman, without that

14:55:21  23  two-point, we'd be looking at a guideline range of 188 to 235

14:55:24  24  months, for what it's worth.  Because certainly at least that

14:55:28  25  one it's hard to think in this day and age of a charge under

14:55:32   1   this offense that would not have that two-point enhancement.

14:55:35   2             MR. HENDERSON:  Right, right.  So looking at the

14:55:40   3   other factors, and I'll, again, apologize, but, you know, the a

14:55:48   4   la carte list of factors that can increase the punishment, to

14:55:52   5   make sense of it, at least from my perspective, it only makes

14:55:58   6   sense if you're trying to identify the more dangerous person.

14:56:08   7   And I appreciate Your Honor's comments about trying to

14:56:11   8   anticipate what they would do in the future, what they're

14:56:14   9   thinking, and so forth.  But I don't know how honestly we can

14:56:22   10  divorce ourselves from that, because the whole -- the whole

14:56:27   11  explosion -- and that's my word -- of increase in the

14:56:33   12  sentences, it seems to me, has been a reflection of an

14:56:37   13  evisceral (sic) and an honest and a genuine reaction to the

14:56:44   14  community's revulsion to this and its association with impact

14:56:51   15  on children, danger to children, damage to children.

14:56:56   16            I don't know how we can divorce ourselves from

14:57:00   17  that.  And I just keep coming back to the point that what we're

14:57:04   18  trying to do, what the commission is trying to do, is come up

14:57:10   19  with a la carte measures that seem to make sense, and trying to

14:57:17   20  gauge the extent to which this person is a threat or is a

14:57:20   21  danger to children.  We can pick and choose and they can evolve

14:57:27   22  over time, as technology evolves over time, but I don't see how

14:57:33   23  we can really divorce ourselves from that.  At the end of the

14:57:36   24  day, that's really what we're trying to do, because the number

14:57:42   25  of images.

11-24-14  USA v. ACKERMAN  No. 13-10176

18

14:57:43   1        I mean, surely there's -- you know, there is some

14:57:47   2   number that would trigger some increase that's relevant, but

14:57:56   3   doesn't it all come back to they have hundreds of thousands,

14:58:00   4   they have millions of images, because they're so into it,

14:58:06   5   they're so -- they're addicted to it.  I -- and I know that's

14:58:15   6   not a helpful answer to Your Honor's question.  I apologize.

14:58:18   7   But I don't -- I don't see how there's a way to calibrate the

14:58:25   8   sentences without reflecting on how we got to where we are, in

14:58:34   9   response to the revulsion to the event.

14:58:38  10        I can't think of calibrating or, if I were in the

14:58:45  11   commission's chair or in the seat of the commissioners, I can't

14:58:47  12   think of any way to begin to make sense of those numbers and

14:58:52  13   enhancements, without tying it to that purpose.

14:59:02  14             THE COURT:  All right.  Thank you, Mr. Henderson.

14:59:03  15             MR. HENDERSON:  Thank you, Your Honor.

14:59:04  16             THE COURT:  Mr. Hart, does the Government want any

14:59:06  17   response to the defendant's argument?

14:59:11  18             MR. HART:  Your Honor, is there any question that

14:59:13  19   you would like me to respond to?

14:59:17  20             THE COURT:  No.  I just -- Mr. Henderson made a

14:59:20  21   lengthy statement.  It's my practice to usually give defense

14:59:23  22   the last word, and so if you have a response, I'll probably

14:59:27  23   recognize him for any rebuttal to that, but since he's had a

14:59:31  24   long statement I just wanted to see if you wanted an

14:59:33  25   opportunity to respond to it.

| | | |
|---|---|---|
| 14:59:35 | 1 | MR. HART:  Your Honor, I think the last line of |
| 14:59:37 | 2 | question that the Court had for Mr. Henderson was one of the |
| 14:59:39 | 3 | questions that I posed in my brief, is if this defendant is |
| 14:59:43 | 4 | unusual, identify the characteristics that the Court should |
| 14:59:48 | 5 | rely on.  And Mr. Henderson has not availed the Court of that |
| 14:59:52 | 6 | description.  And I think, at the end of the day, we're with |
| 14:59:55 | 7 | the guidelines with what we have.  I don't believe anything |
| 14:59:58 | 8 | that Mr. Henderson has provided works as mitigation for this |
| 15:00:02 | 9 | particular defendant or would serve to support departing, and I |
| 15:00:07 | 10 | think the Government has identified certain factors that |
| 15:00:11 | 11 | warrant the level of sentence that the guidelines consider. |
| 15:00:14 | 12 | And I know the Court has indicated use of |
| 15:00:18 | 13 | computer, we see it all the time.  I can think of two cases |
| 15:00:21 | 14 | that we've had here in this district while I've been here, |
| 15:00:26 | 15 | Mr. Van Gates, that did not.  It involved the mail.  I believe |
| 15:00:30 | 16 | Mr. Jackie Mitchell was another case.  I don't think either one |
| 15:00:33 | 17 | of those were in front of this court.  I think one was in front |
| 15:00:36 | 18 | of Judge Belot and one was in front of Judge Marten. |
| 15:00:40 | 19 | And in that case with Mr. Gates, I recall his |
| 15:00:43 | 20 | guideline range was 53 to 61, and so we agreed to do a charge |
| 15:00:49 | 21 | to possession in order to account for that, the fact that his |
| 15:00:53 | 22 | guideline range actually came in below or right at the |
| 15:00:56 | 23 | mandatory minimum, so he got no benefit of acceptance of |
| 15:00:59 | 24 | responsibility. |
| 15:01:00 | 25 | That is the way that I believe that I've exercised |

15:01:03  1    my discretion as a prosecutor in these cases, and I think

15:01:06  2    that's appropriate.  I think what that does do is that takes a

15:01:10  3    lot of wind out of the sails that defense counsel would say of,

15:01:12  4    well, there's all these charging discrepancies and practices

15:01:16  5    which are unfair.  And I think what we strive to do here in the

15:01:19  6    District of Kansas is charge very accurately and to present the

15:01:23  7    cases as best we're able.  And in those circumstances where a

15:01:26  8    defendant would not otherwise get acceptance of responsibility,

15:01:30  9    we'll work within the guidelines but also work within the

15:01:33  10   charges to make that happen.

15:01:34  11            But as it relates to this defendant, Your Honor, I

15:01:37  12   think the guideline range is appropriate.

15:01:39  13            THE COURT:  All right.  Thank you, Mr. Hart.

15:01:41  14            Mr. Henderson, anything further?

15:01:43  15            MR. HENDERSON:  Your Honor, I don't.  Thank you

15:01:45  16   very much.

15:01:45  17            THE COURT:  I note that Mr. Ackerman's wife is

15:01:48  18   present.  I remember her from our last hearing.  Did she or

15:01:52  19   anyone else wish to make any comments to the Court; do you

15:01:54  20   know?

15:01:55  21            MR. HENDERSON:  May I inquire, Your Honor?

15:01:57  22            THE COURT:  Certainly.

15:02:12  23            (Brief pause.)

15:02:28  24            MR. HENDERSON:  Thank you, Your Honor.  Your

15:02:30  25   Honor, in addition to his wife, his pastor is available and

15:02:34   1    indicated that he would like to address the Court as well.

15:02:37   2            THE COURT:  All right.  I'd be happy to hear from

15:02:39   3    anyone who wishes to speak.  I'm going to ask that you come and

15:02:42   4    speak at the microphone, where Mr. Henderson spoke, just so the

15:02:46   5    court reporter can pick you up.  And then I'm also going to ask

15:02:50   6    that, for purposes of the record, you start just by identifying

15:02:53   7    who you are.  And then I'll be happy to hear any comments that

15:02:58   8    you might wish to make.

15:03:00   9            MRS. ACKERMAN:  Good afternoon, Your Honor.  My

15:03:05  10    name's Michelle Ackerman, and Walter Ackerman is my husband.  I

15:03:13  11    keep going through my head, what do I want to say, what do I

15:03:17  12    not say something I want to say and say something I don't want

15:03:21  13    to say.  I guess what I really have to say is that Walter is a

15:03:26  14    good person.  He did a horrible thing.  And I myself am a

15:03:34  15    sexual abuse survivor several times over, and this has hit me

15:03:39  16    close to home.  However, I took my vows, and I believe in my

15:03:43  17    vows, and right now this is the worst.  And I stand behind my

15:03:49  18    husband.  I've known him for 19 years.  I know he couldn't harm

15:03:56  19    anybody.  He didn't -- he didn't touch anybody.  He didn't hurt

15:03:59  20    anybody physically.  He didn't murder anybody.

15:04:04  21            I just -- to me it's -- the sentencing is unfair

15:04:11  22    such that there are murderers and there are drug dealers who

15:04:18  23    are going to get off on way less than -- sometimes they get off

15:04:23  24    with less than five years.  Sometimes they just get off.  And,

15:04:27  25    to me, that's very unfair.  And I just pray that you find it in

| | |
|---|---|
| 15:04:33 | 1 |
| 15:04:36 | 2 |
| 15:04:45 | 3 |
| 15:04:50 | 4 |
| 15:04:56 | 5 |
| 15:04:59 | 6 |
| 15:05:04 | 7 |
| 15:05:11 | 8 |
| 15:05:14 | 9 |
| 15:05:22 | 10 |
| 15:05:25 | 11 |
| 15:05:32 | 12 |
| 15:05:34 | 13 |
| 15:05:45 | 14 |
| 15:05:51 | 15 |
| 15:05:56 | 16 |
| 15:06:03 | 17 |
| 15:06:10 | 18 |
| 15:06:14 | 19 |
| 15:06:20 | 20 |
| 15:06:24 | 21 |
| 15:06:31 | 22 |
| 15:06:35 | 23 |
| 15:06:42 | 24 |
| 15:06:49 | 25 |

1  your heart, no matter what you sentence him to, that you'll

2  allow him to come home and be with me through the -- what do I

3  want to call it, what's the word? -- appeal.  And I understand

4  you need to do what you need to do, and he does.  He made -- he

5  broke the law.

6          And I just want him there for enough time so we

7  can bury our dog that's going to pass away very soon, and, you

8  know, I have a house that's almost done but I'm not quite in it

9  yet.  I just need him long enough to -- I know I'm being

10  selfish -- but to get myself to the point where I can go on

11  while he does what he has to do to pay back society.  And I

12  guess that's all I really have to say.  Thank you.

13          THE COURT:  Thank you, Ms. Ackerman.

14          MR. LUCAS:  Thank you, sir.  My name is Matthew

15  Lucas, and I'm the pastor of the local church that Mr. Ackerman

16  has been attending very regularly for the last several months.

17  And he has been faithful in his attendance.  And the change

18  that Mr. Henderson has spoke of in Mr. Ackerman's life has been

19  evident, not only to me but to our community, and his taking --

20  willing to accept the responsibility for what he has done has

21  been real and profound.  And so I just want to say that, as a

22  witness, as someone who has experienced this change in

23  Mr. Ackerman, it's not just a -- I could assume that you hear

24  that a lot, but that it has been real and profound for

25  Mr. Ackerman, at least from my perspective and from my

15:06:53  1  experience.  And so I just -- I wanted to say that I have seen

15:06:59  2  that in Mr. Ackerman.  Thank you, sir.

15:07:01  3              THE COURT:  Thank you, pastor.

15:07:02  4              Mr. Ackerman, before I would announce a tentative

15:07:12  5  sentence, before I would formulate a tentative sentence, I

15:07:15  6  would always give the defendant an opportunity to make any

15:07:17  7  statement he might wish to make for my consideration.  You're,

15:07:22  8  of course, not required to say anything at this point, but if

15:07:25  9  there's anything you'd like to say, I'll be happy to hear from

15:07:28  10 you at this time.

15:07:31  11             THE DEFENDANT:  Yes, sir.  I'd just like to say

15:07:35  12 just a couple things.  I wanted to basically -- when I came in

15:07:45  13 before you I had no understanding of the system, and I wanted

15:07:50  14 to thank you for taking the time to explain things to me that I

15:07:54  15 did not understand.

15:07:56  16             I also wanted to thank Mr. Henderson for being

15:08:00  17 available to me 24/7 with anything I had to ask regarding

15:08:07  18 everything.  And it may sound odd, but I'm also going to thank

15:08:13  19 the district attorney for allowing me to remain out on bond and

15:08:17  20 also being considerate to the distance that I travel when

15:08:22  21 arrange -- when it came down to arranging trials before you, I

15:08:33  22 guess, I'm trying to say, and I'm also thanking you for

15:08:36  23 allowing me to remain out on bond as well.  That's all I -- oh,

15:08:40  24 one other thing.  As my wife has said and my pastor says, I am

15:08:48  25 ready to do whatever I have to do to make amends because I want

15:08:52  1   to make amends for what I've done.  I'm ashamed of what I've

15:08:57  2   done.  But I just needed to tell you that I appreciate

15:09:00  3   everything you've done for me as well.

15:09:03  4               THE COURT:  Thank you, Mr. Ackerman.

15:09:08  5               Well, as I noted, the defendant presents to this

15:09:11  6   court at an Offense Level 38, Criminal History Category I.  The

15:09:14  7   guidelines would suggest a sentence of 235 to 293 months for

15:09:20  8   that offense.  I could actually only get to the 293 by making

15:09:26  9   sentences between Counts 1 and 2 consecutive because Count 1,

15:09:30  10  the distribution charge, has a 240-month statutory maximum, and

15:09:37  11  then Count 2, the possession charge, has a ten-year or

15:09:42  12  120-month maximum.

15:09:42  13              The Supreme Court's made it clear that the

15:09:48  14  guidelines are advisory only, they're not something that I'm

15:09:51  15  compelled to follow.  In fact, it's legal error for me to

15:09:55  16  consider them binding on me.  And I don't.  I never have.  But

15:10:01  17  I've always -- I've always looked quite seriously at guideline

15:10:10  18  sentences, among other reasons, because they promote uniformity

15:10:16  19  in sentencing.

15:10:17  20              I was a law clerk in this courthouse, in fact in

15:10:20  21  this very courtroom, 25-some years ago before the guidelines

15:10:24  22  existed.  And I recall my judge complaining -- he was referring

15:10:28  23  to drug sentences at the time -- that identical defendants were

15:10:36  24  getting ten years up here on the fourth floor in his courtroom

15:10:39  25  and down on the second floor they were being given the French

15:10:42  1    Medical of Honor.  My judge was kind of a humorous guy.  But

15:10:47  2    his point was that there was wide discrepancy in the

15:10:50  3    sentencing, and that was one of the errors that -- error's not

15:10:56  4    the right word.  That was one of the situations that was

15:11:00  5    recognized by the criminal justice system and the United States

15:11:03  6    Congress when they imposed sentencing guidelines, to promote

15:11:06  7    some uniformity in sentencing.

15:11:07  8           So although those who practice before me now know

15:11:11  9    I don't always follow the guidelines, I always give them great

15:11:15  10   weight and great respect in formulating what the final sentence

15:11:19  11   would be.  The problem in this area, and Mr. Hart candidly

15:11:25  12   admits that in his very thorough brief that he filed, is that

15:11:28  13   giving a guideline sentence does not promote uniformity in

15:11:32  14   sentencing because, unlike any other federal criminal

15:11:37  15   violation, the courts seldom follow the guidelines in these

15:11:42  16   cases.  And so, frankly, I'm faced with the dilemma that to

15:11:48  17   impose a guideline sentence in these cases would promote

15:11:53  18   nonuniformity in sentencing.

15:11:58  19          I agree that in some ways this could become a race

15:12:02  20   to the bottom because some judges routinely give very, very low

15:12:09  21   sentences in these cases, and if you looked only at an average

15:12:12  22   or a mean, that's an ever-decreasing standard.  And I don't

15:12:15  23   think that's what Congress intended.  But I don't know that

15:12:23  24   I've ever given a pure guideline sentence in one of these

15:12:26  25   cases.  Mr. Hart probably knows what I've done better than I

15:12:29  1    do.  He's nodding his head.  Perhaps I have.  As I said, he

15:12:32  2    probably has researched my own practice better than I have.  It

15:12:36  3    certainly is unusual, and I'm not going to give a guideline

15:12:39  4    sentence in this case, just because of my concern to not create

15:12:45  5    more disparity in sentencing than it absolutely unavoidable.

15:12:50  6            I do think, however, as I told Mr. Henderson, that

15:12:54  7    Congress is punishing these offenses not for what a defendant

15:12:57  8    might do, but for what a defendant has done, and Congress has

15:13:02  9    determined that the mere trafficking, whether you're possessing

15:13:05  10   or whether you're involved in distribution, either way, of

15:13:09  11   these images is itself an offense.  And I agree with that.

15:13:16  12   Because these offenses are not merely images, but they're

15:13:23  13   images of events in a young child's life that we know have, in

15:13:28  14   many senses, destroyed their life.  It's not murder, and yet

15:13:36  15   many victims of child pornography say that they feel that their

15:13:41  16   life has been destroyed because of the way they, as helpless

15:13:45  17   children, were nevertheless abused in creating these images.

15:13:47  18            Now, a lot of that analysis goes to the production

15:13:50  19   charges, and I'm pretty unsympathetic in production cases.

15:13:56  20   This is not a production case.  But it's also certainly not a

15:14:01  21   case without victims.  And Congress has decided that these

15:14:05  22   offenses are horrific and merit serious punishment, and I agree

15:14:14  23   with that, because of the nature of them.

15:14:16  24            So those are the factors that I've had in mind as

15:14:20  25   I've struggled with this sentence.  I don't find this to be a

15:14:27  1   minimum-level offense.  It's not an offense that I can accept

15:14:34  2   Mr. Henderson's argument that it's the least of all those who

15:14:37  3   are charged under this.  But as I've indicated, I'm not going

15:14:43  4   to do a guideline sentence because those are very rare in this

15:14:48  5   field.

15:14:48  6              After much consideration and thought and review of

15:14:53  7   the matters in this case, I've decided to propose a sentence of

15:14:57  8   170 months for Mr. Ackerman in this offense.  That's a

15:15:03  9   substantial departure from what the low-end guideline offense

15:15:08  10  would be.  It's still a very serious sentence, particularly for

15:15:11  11  a man of Mr. Ackerman's age.  I recognize that, and I've

15:15:14  12  struggled with that as well.  But as I balance all these

15:15:17  13  factors that I'm required to balance and to consider, I think

15:15:23  14  it's the closest that I can come to a sentence that I think

15:15:30  15  satisfies the sentencing objectives that I'm required to

15:15:33  16  consider.

15:15:35  17             I've considered the factors set forth under 18

15:15:39  18  U.S.C. 3553(a), both the history and characteristics of the

15:15:43  19  defendant and I -- don't I have a -- I believe you provided me

15:15:55  20  some letters, Mr. Henderson; did you not?

15:15:59  21             MR. HENDERSON:  I don't believe we did, Your

15:16:02  22  Honor.

15:16:02  23             THE COURT:  I thought I read -- yes, I read a

15:16:06  24  comment from -- and it is attached to your brief -- from the

15:16:09  25  defendant's father-in-law --

15:16:10   1          MR. HENDERSON:  Oh, yes.  Thank you.

15:16:11   2          THE COURT:  -- which I read.  And he speaks, as

15:16:15   3   did Mrs. Ackerman, to his fine characteristics as an

15:16:23   4   individual.  Those are the factors under the nature and

15:16:28   5   characteristics of the defendant himself that I'm to consider.

15:16:31   6   I'm also to consider the factors of the offense.  I'm to

15:16:35   7   consider a sentence that will promote respect for the law and

15:16:43   8   provide just punishment for the offense, as Congress has

15:16:46   9   determined is warranted; reflect the seriousness of the

15:16:49  10   offense, and ultimately is to be sufficient but not greater

15:16:52  11   than necessary to comply with the purposes of sentencing set

15:16:56  12   forth in the law.

15:16:58  13          And I've determined that this sentence, I think,

15:17:01  14   does meet those factors.  It reflects the serious nature of

15:17:06  15   this crime, and those who have been victimized by it.  It

15:17:11  16   reflects the overall trend that Mr. Henderson alluded to, in

15:17:20  17   how sentencing in these cases go, and it, I believe, does

15:17:24  18   provide at the end of the day just punishment for the offense

15:17:27  19   as I'm required to consider.

15:17:28  20          So I intend to propose a sentence of 170 months

15:17:33  21   for Count 1, 120 months for Count 2, but that to be served

15:17:39  22   concurrently with the first sentence, for a total sentence of

15:17:43  23   170 months.

15:17:45  24          Following that term of incarceration, I intend to

15:17:49  25   place Mr. Ackerman on supervised release for five years on both

15:17:57  1  counts.  That's the statutory minimum.  I think at that point

15:18:02  2  that will be adequate to address the concerns that otherwise

15:18:06  3  exist in his case, and that's in part out of recognition of his

15:18:09  4  age upon his release from incarceration.  While he's on

15:18:14  5  supervised release, I intend to impose the mandatory and

15:18:18  6  special conditions of supervision that are set forth in Part D

15:18:21  7  of the presentence report.

15:18:24  8          Drug testing and DNA collection are required by

15:18:27  9  law, but I don't think there's any -- well, I'm going to impose

15:18:44  10  those.  They are required by law, and they are appropriate in

15:18:47  11  this case.

15:18:47  12          The defendant's prohibited by federal law from

15:18:51  13  purchasing a firearm and ammunition, and is also going to be

15:18:53  14  prohibited during his supervised release from having a

15:18:55  15  destructive device or other dangerous weapon.

15:18:57  16          I'm also going to order the conditions of sex

15:19:01  17  offender monitoring and registration, and he will, as a result

15:19:03  18  of this offense, be required to comply with federal

15:19:05  19  registration requirements.  Mental health and sex offender

15:19:09  20  treatment will be required during his supervised release, as

15:19:13  21  will restrictions regarding unsupervised contact with minors,

15:19:16  22  and I'm going to impose the search-and-seizure conditions set

15:19:19  23  forth in the presentence report as appropriate in this case.

15:19:22  24          The defendant is required to pay a special

15:19:24  25  assessment of $200 for each of the counts of conviction under

15:19:28  1   18 U.S.C. 3553(a).  I'm not going to impose any other fine.

15:19:41  2              The law also indicates that this is a mandatory

15:19:47  3   detention case.  Mr. Hart, I assume that's the Government's

15:19:55  4   position, even though, like the sentencing guidelines, that's a

15:20:01  5   rule that may be honored as much in the breach as not?

15:20:06  6              MR. HART:  And, Your Honor, I would say that in

15:20:08  7   our plea agreement -- I would agree with the Court's assessment

15:20:12  8   that it is a mandatory detention case, pursuant to 18 U.S.C.

15:20:18  9   3143; however, that is, as in sentencings, not necessarily

15:20:24  10  always done down here.  I actually learned about that rule up

15:20:28  11  in Judge Robinson's courtroom probably a year into doing these

15:20:31  12  cases.

15:20:32  13             We have agreed, pursuant to the plea agreement in

15:20:35  14  Paragraph 4(c), to agree to the defendant's continued release

15:20:41  15  on bond with conditions pending resolution of the defendant's

15:20:44  16  appeal.

15:20:49  17             THE COURT:  Oh, so you have.  And I had forgotten

15:20:52  18  that.  You've agreed not only to not detaining him today but to

15:20:56  19  allow him to remain out on appeal?

15:21:00  20             MR. HART:  Correct, Your Honor.

15:21:01  21             THE COURT:  Normally this -- I mean, the statute

15:21:04  22  requirements for bond on appeal -- and I don't have those in

15:21:08  23  front of me -- but are that the Court thinks there's a

15:21:12  24  substantial likelihood that the defendant's appeal will be

15:21:16  25  successful.  Tell me what the Government's rationale is for

15:21:24   1   having him remain on bond during appeal.

15:21:27   2              MR. HART:  Your Honor, to be completely candid, I

15:21:30   3   don't think he will be very successful.  I think the Court made

15:21:33   4   a very well-reasoned and thoughtful and well-considered written

15:21:37   5   opinion about that, and I think the parties presented quite a

15:21:41   6   good record as to that issue.  This is an important issue, and

15:21:47   7   that is really driving the train for the Government's

15:21:49   8   recommendation or agreement.  We would like the defendant to

15:21:54   9   appeal this issue so that we can resolve it at the federal

15:21:56   10  level.  The Keith decision, as the Court may be mindful of,

15:22:00   11  sort of put prosecution in a little bit of a quandary because

15:22:05   12  they made a determination in that case at the district court

15:22:08   13  level which was not subject to appeal because the prosecution

15:22:10   14  ultimately won the issue.

15:22:12   15             This narrows that issue and puts it squarely --

15:22:17   16  puts this particular issue squarely in front of a circuit

15:22:20   17  court, and so for that reason we're willing to concede that

15:22:24   18  particular thing in order to get that issue on appeal.

15:22:27   19             THE COURT:  So it's less that you think he's

15:22:29   20  likely to succeed on appeal than it is that you think it

15:22:32   21  reflects the fact that this is a somewhat unsettled status of

15:22:35   22  the law?

15:22:36   23             MR. HART:  Yes, Your Honor.

15:22:36   24             THE COURT:  I'm not sure that really complies with

15:22:43   25  the statutory requirements for bond on appeal, but I'll permit

15:22:48  1   that as well.  I'll permit the defendant to remain on release

15:22:54  2   pending the appeal of his case, until such time as either no

15:22:58  3   timely appeal is filed or the appeal is finally resolved, with

15:23:03  4   the time for any further appeals, if any, having expired.

15:23:10  5                That is the tentative sentence of the court.  Are

15:23:16  6   there objections to this sentence?

15:23:18  7                MR. HART:  Not from the Government, Your Honor.

15:23:21  8                MR. HENDERSON:  Nothing further.  Thank you, Your

15:23:23  9   Honor.

15:23:24  10               THE COURT:  Mr. Ackerman, would you stand for the

15:23:26  11  sentence of the court, please.

15:23:26  12               (The defendant complies.)

15:23:28  13               THE COURT:  The court determines that the

15:23:31  14  presentence investigation report and the previously stated

15:23:33  15  findings are accurate, and I'm ordering those findings

15:23:35  16  incorporated into the following sentence:  pursuant to the

15:23:38  17  Sentencing Reform Act of 1984, it is the judgment of the court

15:23:42  18  that the defendant Walter E. Ackerman is hereby sentenced to

15:23:47  19  the custody of the Bureau of Prisons for a term of 170 months

15:23:50  20  on Count 1, 120 months on Count 2, with both counts to be

15:23:56  21  served concurrently.

15:23:57  22               The term of imprisonment shall be followed by five

15:24:00  23  years of supervised release per count, with both counts to run

15:24:04  24  concurrently.  Within 72 hours of release from the custody of

15:24:07  25  the Bureau of Prisons, the defendant is to report to the

15:24:10  1   probation office in the district in which he is released.  And

15:24:13  2   while on supervised release he shall not commit another

15:24:15  3   federal, state, or local crime; he shall comply with the

15:24:19  4   standard conditions of supervision that have been adopted by

15:24:21  5   this court, as well as the special and mandatory conditions of

15:24:24  6   supervision set forth in Part D of the report.

15:24:26  7               The defendant's ordered to pay the United States a

15:24:29  8   special assessment of $200 to the Crime Victims Fund pursuant

15:24:32  9   to 18 U.S.C. 3013.  Payment of that assessment is due

15:24:36  10  immediately and may be satisfied while in Bureau of Prisons

15:24:39  11  custody.  No other fine is imposed.

15:24:43  12              I do have a preliminary order of forfeiture I've

15:24:46  13  just noted.  Has there been a preliminary order of forfeiture

15:24:51  14  entered in this case or do I need to incorporate that into this

15:24:54  15  judgment?

15:24:54  16              MR. HART:  I can't remember, Your Honor.

15:24:55  17              THE COURT:  Do you remember, Shawn?

15:24:58  18              MR. HENDERSON:  No, Your Honor.  We have no

15:25:00  19  objection to incorporating it into the judgment.

15:25:02  20              MR. BREWER:  Your Honor, my recollection is there

15:25:04  21  was nothing that was officially filed.  That's why it was noted

15:25:07  22  in there.  The Court may want to address it.

15:25:09  23              THE COURT:  Thanks, Shawn.  Well, I'll make the

15:25:12  24  preliminary order of forfeiture final as to this defendant as

15:25:13  25  agreed to in the plea agreement and have that incorporated into

15:25:16   1   the judgment.

15:25:16   2          Defendant will be allowed to remain on a release

15:25:21   3   status pending his appeal.  If his appeal is unsuccessful and

15:25:29   4   his release status expires, at that point the defendant will be

15:25:35   5   required to surrender to the facility as designated by the

15:25:39   6   Bureau of Prisons, if appropriate at that time.  If his

15:25:44   7   appeal's unsuccessful, that is to say.

15:25:47   8          I am required to advise both parties of their

15:25:49   9   respective rights to appeal this conviction and sentence.  Any

15:25:51  10   appeal taken is subject to 18 U.S.C. 3742 and subject to any

15:25:56  11   waiver in the plea agreement in this case.  And it was a

15:25:58  12   conditional plea, as I recall, that allows this appeal.

15:26:04  13          I'll advise the defendant that your rights to

15:26:08  14   appeal are only those that remain following your waiver, your

15:26:12  15   conditional waiver, in the plea agreement, which does preserve

15:26:14  16   your right to appeal the Court's prior order, but any appeal

15:26:17  17   rights you have you will lose if you do not timely file a

15:26:20  18   notice of appeal in the district court.  Rules of appellate

15:26:23  19   procedure give you 14 days after the entry of judgment in which

15:26:26  20   to file your notice of appeal.  If you request, the clerk of

15:26:29  21   the court will immediately prepare and file a notice of appeal

15:26:31  22   in your behalf, and if you cannot pay the costs of appeal, you

15:26:34  23   have the right to apply for leave to appeal in forma pauperis.

15:26:36  24          That is the judgment and sentence of the court.  I

15:26:40  25   believe there are no counts to dismiss.  Is there anything else

15:26:43  1    we need to take up regarding this matter?

15:26:46  2              MR. HART:  Your Honor, I just wanted to check what

15:26:50  3    the conditions of his continued release on bond would be.

15:26:55  4              THE COURT:  I just intend to continue the

15:26:57  5    conditions as they currently exist.

15:26:59  6              MR. HART:  All right.  And that includes

15:27:01  7    electronic monitoring and those sort of things; correct?

15:27:04  8              THE COURT:  Whatever those conditions are.  I

15:27:06  9    frankly had not focused on those conditions before this

15:27:09  10   sentencing.

15:27:09  11             Is there anything that we need to modify on that,

15:27:12  12   Shawn, that you can --

15:27:13  13             MR. BREWER:  I don't think so.  That was my

15:27:14  14   question as well, another one, Your Honor.  Right now he's

15:27:18  15   currently on electronic monitoring, and he is reporting -- we

15:27:25  16   are going to his location.  As the defendant will admit, last

15:27:30  17   week myself and another officer was there, so he's reporting;

15:27:34  18   we're going there to see him.  Electronic monitoring, that is

15:27:37  19   really the only conditions he has.

15:27:38  20             THE COURT:  All right.  It's my intent to continue

15:27:39  21   the conditions that currently exist.  If particularly the

15:27:42  22   United States Probation Office thinks it's appropriate or if

15:27:44  23   the parties wish to make a move for modification of those

15:27:47  24   conditions of release, we'll take that up in the normal course

15:27:50  25   of matters.  But I hadn't anticipated any change at this point.

15:27:53   1            MR. HART:  I just wanted to make sure that they

15:27:55   2   would be the same, Your Honor.  Thank you.

15:27:56   3            THE COURT:  Anything else we need to take up

15:27:57   4   regarding this case?

15:27:58   5            MR. HENDERSON:  No, Your Honor.  Thank you.

15:28:00   6            MR. HART:  No, Your Honor.  Thank you.

15:28:01   7            THE DEFENDANT:  Can I say something?

15:28:03   8            MR. BREWER:  Your Honor, if I may, just one

15:28:04   9   question real quick to make sure I understand correctly.  The

15:28:07  10   defendant's to remain on bond pending the resolution of his

15:28:10  11   appeal, at which time an appeal's decided, if he so loses,

15:28:13  12   that's when he is to go into custody; correct?

15:28:16  13            THE COURT:  I actually ordered that he would

15:28:17  14   self-surrender at that point.

15:28:19  15            MR. BREWER:  Correct, okay.

15:28:20  16            THE COURT:  So as opposed to going to -- I mean,

15:28:23  17   he'll go into custody but he'll go into custody not with the

15:28:27  18   United States Marshals but at the Bureau of Prisons facility.

15:28:28  19            MR. BREWER:  Exactly, Your Honor.  Thank you, Your

15:28:30  20   Honor.

15:28:30  21            MR. HENDERSON:  Your Honor, I apologize.

15:28:31  22   Mr. Ackerman did have one question.

15:28:33  23            THE COURT:  Yes, sir.

15:28:33  24            THE DEFENDANT:  Well, I just -- not a question.  I

15:28:36  25   just wanted to thank you for allowing me to stay out on bond.

| | | |
|---|---|---|
| 15:28:39 | 1 | Thank you very much. |
| 15:28:40 | 2 | THE COURT:  All right.  And I understand that |
| 15:28:42 | 3 | there have been no issues with that, and that's actually a bit |
| 15:28:45 | 4 | unusual under our written statutes, but that's what we'll do in |
| 15:28:50 | 5 | this case. |
| 15:28:50 | 6 | THE DEFENDANT:  Thank you. |
| 15:28:50 | 7 | MR. HENDERSON:  Thank you. |
| 15:28:51 | 8 | THE COURT:  All right.  That concludes our hearing |
| 15:28:52 | 9 | in this case. |
| 15:28:53 | 10 | (Whereupon, the proceedings were concluded at |
| 15:28:54 | 11 | 3:28 PM.) |

C E R T I F I C A T E

I, Johanna L. Wilkinson, United States Court Reporter in and for the District of Kansas, do hereby certify:

That the above and foregoing proceedings were taken by me at said time and place in stenotype;

That thereafter said proceedings were transcribed under my direction and supervision by means of computer-aided transcription, and that the above and foregoing constitutes a full, true and correct transcript of said proceedings;

That I am a disinterested person to the said action.

IN WITNESS WHEREOF, I hereto set my hand on this the 24th day of February, 2015.


s/ Johanna L. Wilkinson
Johanna L. Wilkinson, CSR, CRR, RMR
United States Court Reporter

**JOHANNA L. WILKINSON, CSR, CRR, RMR**
*U.S. District Court, 401 N. Market, Wichita, KS 67202*
(316) 315-4334