#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-10176-01-EFM |
| ) | |
| WALTER ACKERMAN, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

### UNITED STATES' SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS (DOC. 13)

Before this Court on remand is the defendant's motion to suppress an email and four images of child pornography submitted by AOL to the CyberTipline of the National Center for Missing and Exploited Children (NCMEC). The Court of Appeals held that NCMEC is a governmental entity and, in the alternative, that it operated as the government's agent when reviewing materials submitted to the CyberTipline. It also ruled that NCMEC exceeded the scope of the private search conducted by AOL when NCMEC opened and viewed the email and images that were included in AOL's CyberTipline Report. The Court of Appeals did not decide whether the defendant had a reasonable expectation of privacy in his email and, recognizing that this Court's ruling also had not encompassed that issue, remanded for this Court's determination of the defendant's claimed reasonable expectation of privacy and other questions.[1] *United States v. Ackerman*, 831 F.3d 1292,

---

[1] The Court of Appeals noted that this Court's decision did not include factual findings on "Mr. Ackerman's subjective expectations of privacy or the objective reasonableness of those expectations in light of the parties' dealings (e.g., the extent to which AOL regularly accessed emails and the extent to which users were aware of or acquiesced in such access). Facts that could well impact the legal analysis." 831 F.3d at 1305.

1305, 1308-09 (10th Cir. 2016), *reh'g denied* (Oct. 4, 2016).

The Court should deny the defendant's motion to suppress.  Ackerman did not have a reasonable expectation of privacy in the email and images after AOL exercised exclusive control over those materials and terminated Ackerman's account, essentially evicting him for misconduct; NCMEC's subsequent review of the email and images therefore did not constitute a Fourth Amendment search.[2]  Even if NCMEC's review of the contents of AOL's CyberTipline Report was a search implicating the Fourth Amendment's protections, this search did not violate the Fourth Amendment because NCMEC's limited intrusion was reasonable in light of the defendant's diminished privacy interest in the email containing child pornography images and the government's compelling interest in protecting children by preventing the possession and distribution of images of child sexual abuse.  Last, any Fourth Amendment violation that occurred when NCMEC reviewed the email and images submitted does not warrant suppression, because there was no deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, and suppression of the evidence would not serve the exclusionary rule's sole purpose of deterring future Fourth Amendment violations.

## I.      Factual background

AOL is an internet service provider (ISP) that provides a variety of services, including an internet-based email interface for its users.[3]  To use AOL's services, a user must agree to AOL's

---

[2] The government is not claiming that a person who uses a third-party email provider generally lacks a reasonable expectation of privacy in the contents of his account, *cf. United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010), or that Ackerman lacked such a privacy interest before AOL terminated his account (whether by application of the third-party doctrine set forth by the Supreme Court in *United States v. Miller*, 425 U.S. 435, 436, 440-41 (1976) and *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) or otherwise).

[3] Doc. 61, Transcript of Day 1 of Motion Hearing (hereinafter Transcript I), p. 80-81.

Terms of Service (TOS).[4]  As of April 19, 2013, AOL's TOS required that users comply with applicable laws, not participate in illegal activities, not post content that contains explicit or graphic descriptions of sex acts, and not engage in activity that is harmful to AOL or anyone else, and expressly advised that AOL could take any technical, legal, or other action to prevent violations and enforce its TOS.[5]

AOL scanned incoming and outgoing email for malware, viruses, and child pornography.[6] AOL did this because "if people knew that we were sending out viruses or illegal content, they would look upon our brand as not being trustworthy or secure, and they wouldn't want to use our services."[7] To address child pornography, AOL developed its Image Detection and Filtering Process (IDFP), an automated process that scanned email transmitted on its system using hash values of previously identified child pornography images to detect child pornography, terminated the account associated with any email containing child pornography, and then generated a CyberTipline report for submission to the National Center for Missing and Exploited Children (NCMEC).[8]

On April 22, 2013 at roughly 10:23 UTC, the defendant Walter Ackerman used an AOL email account to send an email containing child pornography.[9]  When Ackerman sent the email, AOL's IDFP program detected that it contained child pornography.  As is AOL's practice, and as occurred in this case, AOL terminated Ackerman's account.[10]  AOL testified that termination

---

[4] Transcript I at 82.

[5] Exhibit 5, p. 1; Transcript I at 92-94.

[6] Transcript I at 83-84.

[7] *Id*. at 84.

[8] *Id*. at 84-92.

[9] See Exhibit 1, page 2.

[10] Transcript I at 27-28.

would have been virtually instantaneous to Ackerman sending the email, as the automated IDFP sends a cancel code when it detects contraband.[11] Further, as AOL testified, the termination could have even "bumped the member offline."[12] In any event, AOL terminated the account before submitting its CyberTipline Report, which NCMEC received on April 23, 2013 at roughly 09:36 UTC.[13] AOL's CyberTipline Report included a copy of the email containing the four child pornography images at issue in this case.[14] NCMEC then processed the CyberTip two days later on April 25, 2013 at roughly 16:41 UTC.[15] The CyberTip was reviewed by Special Agent Rick Moore of Homeland Security Investigations (HSI) in Wichita, Kansas, until approximately one month later on May 17, 2013.[16] From information contained in the CyberTipline Report, Agent Moore identified the IP address associated with the email, and obtained a search warrant for the physical location tied to that IP address.[17] On May 30, Agent Moore executed the warrant at Ackerman's residence, and later met with Ackerman at his place of work for a consensual interview.[18]

At the hearing on his motion to suppress, Ackerman's wife testified that she noticed that they no longer had access to their AOL email accounts in April of 2013.[19] She even talked with

---

[11] *Id.* at 94.

[12] *Id.*

[13] *Id.* at 95; Exhibit 1, p. 1.

[14] *Id.* at 11-12 (Agent Moore's testimony that the email in the Cybertip shows it comes from AOL) and 92 (AOL testifying that "a report gets generated" which includes the images).

[15] Exhibit 1, p. 5.

[16] Exhibit 3, p. 36.

[17] Transcript I, p. 12; Exhibit 3.

[18] Transcript I, p. 16; Doc. 37, Memorandum and Order, p. 21.

[19] Doc. 62, Transcript of Day 2 of Motion Hearing (hereinafter Transcript II), p. 149.

the defendant about "why can't we get into our email accounts?"[20] As she explained, "It was all one account, so I just assumed it was because it was in my name, that nobody had access."[21]

For his part, Ackerman agreed that he had a username on his wife's account.[22] He also advised he used the AOL account "[u]p until it was stopped."[23] In response to his counsel's question, "when you used AOL, did you believe that any information that you were sending to other people was private information?" the defendant merely replied "Yes."[24] No testimony was elicited regarding whether the defendant's wife, who owned the account, was prevented from accessing emails sent or received under his username. Nor did Ackerman elaborate on any other efforts to maintain privacy. On cross-examination, Ackerman agreed that he used TOR to anonymize or hide his internet activity.[25]

## II.   There was no search

The threshold question in assessing whether an official search violated the Fourth Amendment is whether a "search" subject to Fourth Amendment scrutiny occurred at all. Outside the context of physical trespass, a search within the meaning of the Fourth Amendment occurs when governmental action infringes "an expectation of privacy that society is prepared to consider reasonable."[26] Reasonableness is "appraised on the basis of the facts as they existed at the time that invasion occurred."[27] Under settled Fourth Amendment principles, it is Ackerman's burden

---

[20] *Id*. at 150.

[21] *Id.*.

[22] *Id*. at 155-156.

[23] *Id*. at 155.

[24] *Id*.

[25] *Id*. at 157.

[26] *Smith v. Maryland,* 442 U.S. 735, 739-741 (1979); *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *United States v. Jones*, — U.S. —, 132 S.Ct. 945, 950 (2012).

[27] *Jacobsen, 466 U.S. at 115.*

to show that, at the time of NCMEC's review of the email and images sent by AOL:  1) Ackerman had an actual, subjective expectation of privacy in the email; and 2) society is prepared to recognize that expectation as objectively reasonable.[28]  The facts of this case do not support the defendant's claim that he had a reasonable expectation of privacy in the email and images that AOL submitted to NCMEC after AOL exercised its rights to monitor its system and then terminated Ackerman's account.

### A.  Ackerman has presented inadequate evidence that he had a subjective expectation of privacy

The defendant has not met his burden of showing that he had an actual, subjective expectation of privacy in the email and images at issue.  He has not presented any evidence on how he sought to preserve privacy in the AOL account that, prior to April 23, 2013, he shared with his wife.[29]  Most important, the defendant failed to present any evidence that he maintained an actual, subjective expectation of privacy in his email *after AOL terminated access to his account*, which occurred before AOL's CyberTipline Report about Ackerman was submitted to NCMEC.[30]  As the record reflects, by at least April 23, 2013, AOL had terminated the Ackermans' access to the AOL account, which Ackerman's wife testified that she discussed with him.[31]  Ackerman testified that he used the AOL account "[u]p until it was stopped," but provided no further elaboration.[32]

---

[28] *See, e.g., United States v. Conway*, 73 F.3d 975, 979 (10th Cir. 1995); *United States v. Maestas*, 639 F.3d 1032, 1035 (10th Cir. 2011); *Rawlings v. Kentucky*, 448 U.S. 98, 104-105 (1980).

[29] A defendant maintains a subjective expectation of privacy when the defendant "has shown that 'he sought to preserve something as private.'" *Bond v. United States*, 529 U.S. 334, 338 (2000) (internal alterations omitted) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

[30] Transcript I at 27-28.

[31] *Id*. at 150.

[32] *Id*. at 155.

Based on the foregoing facts, the Court may find that the defendant failed to meet his evidentiary burden of showing that he had a subjective expectation of privacy in the email and images that he seeks to suppress.

### B. Even if Ackerman had a subjective expectation of privacy, society would not recognize it as objectively reasonable

Even if Ackerman has made a sufficient showing that he had an actual, subjective expectation of privacy in the email and images, he cannot demonstrate that any such expectation – after AOL terminated his account and his ability to access or control his email – is one that society is prepared to recognize as objectively reasonable.

Courts considering whether an expectation of privacy is reasonable look to whether it "arises from a source 'outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *United States v. Gordon*, 168 F.3d 1222, 1225–26 (10th Cir. 1999) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143–44 (1978)). That a defendant has conveyed information or effects to a third party can, in various ways, undercut his ability to show that his expectation of privacy was objectively reasonable at the time of the government intrusion. As in this case, a defendant may not be able to establish a legitimate expectation of privacy if the defendant's right to use or control a space in which people generally enjoy a reasonable expectation of privacy is dependent on rights provided by a third party, and the third party acts to terminate those rights. In a line of cases that inform the inquiry before this Court, the Tenth Circuit has recognized that, while a hotel guest typically has a legitimate expectation of privacy in his hotel room and its contents, when the rental period expires or the hotel moves to evict the occupants because of non-payment of rent, that expectation of privacy is no longer one that society is prepared to recognize as objectively reasonable. *See United States v. Croft*, 429 F. 2d 884, 887 (10th Cir. 1970) (since a guest's privacy rights in a hotel

room are dependent on the continuing right to occupy the room, entry of officers after the rental period elapsed did not violate any Fourth Amendment privacy rights); *United States v. Creighton*, 639 F.3d 1281, 1287-88 (10th Cir. 2011) (assuming that defendant had reasonable expectation of privacy in hotel room during some part of occupancy, society would not consider as reasonable any expectation of privacy in hotel room after management took steps to evict occupants for non-payment of rent); *Gordon*, 168 F.3d at 1227 (defendant who arrived shortly before search of motel room leased to another person failed to produce sufficient evidence to establish that he was an overnight guest with a reasonable expectation of privacy in the room); *cf. United States v. Johnson*, 584 F.3d 995, 1003-04 (10th Cir. 2009) (no legitimate expectation of privacy in storage unit obtained using stolen identity, even where rental contract had not been voided, because rental agreement was "voidable at the storage unit owner's option" and defendant's "contractual right to the storage unit was in jeopardy of rescission.").

In the hotel search cases, the determinative question is thus whether the defendant had a reasonable expectation of privacy at the time that the room was searched by the government, rather than generally whether hotel guests have a reasonable expectation of privacy in their hotel rooms and the contents thereof. In this case, while the opinion of the Court of Appeals mentioned the possible argument that the third-party doctrine might undermine Ackerman's reasonable expectation of privacy in the email in question, *Ackerman*, 831 F.3d at 1308, the government is not relying on the third-party doctrine or otherwise claiming that a person who uses a third-party email provider generally lacks a reasonable expectation of privacy in the contents of his account, *cf. United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010),[33] or that Ackerman lacked such a

---

[33] In *Warshak*, the Sixth Circuit held that users of commercial internet service providers generally have a reasonable expectation of privacy in the contents of their emails. 631 F.3d at 287-88.

privacy interest before AOL terminated his account.[34]  Instead, Ackerman's use of AOL as a third-party email provider is significant because of specific actions that AOL took that terminated Ackerman's rights to his account – actions that occurred before the alleged governmental intrusion at issue in this case.  *Cf. Croft*, 429 F. 2d at 887 ("since after the rental period expires a guest has no right of privacy, there can be no invasion thereof.").

Against this backdrop, it is clear that Ackerman cannot establish that he had a legitimate expectation of privacy in the email and images contained in AOL's CyberTipline Report, at the time of NCMEC's allegedly unconstitutional review of those materials.  Ackerman chose to use AOL, a private internet service provider, to create and send the email and embedded images.[35]  When AOL determined that one of the images sent by Ackerman on its system constituted child pornography, it terminated Ackerman's account, terminated Ackerman's ability to access or control that email, and provided its contents to NCMEC rather than to the intended recipient.  The testimony and evidence unequivocally show that AOL's termination of Ackerman's account occurred upon discovery of the child pornography in the email, before submission to NCMEC.[36]  Ackerman's claim to a legitimate expectation of privacy thus draws no support from concepts of

---

[34] Under the third-party doctrine, a person who voluntarily conveys information to a third party as part of a business transaction generally cannot establish that he has a reasonable expectation of privacy in the records of that third party pertaining to him, even if they are based on information, such as checks or numbers dialed, that the individual has in some sense provided. *See United States v. Miller*, 425 U.S. 435, 436, 440-41 (1976) (holding that defendant had no reasonable expectation of privacy in copies of his checks and other records obtained from banks and noting that the records were the "business records of the banks"); *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) (defendant had no reasonable expectation of privacy in records of numbers dialed obtained from his phone company).  Under the classic application of the third-party doctrine, and in contrast to the government's argument in this case, an individual lacks a reasonable expectation of privacy in business records pertaining to him throughout his dealings with the third party, regardless of whether the third party has taken or could take action that undermines any previously existing privacy rights.

[35] Ackerman conceded on appeal and the Tenth Circuit has acknowledged that AOL was and is a private party. *Ackerman*, 831 F.3d at 1295.

[36] Transcript I at 27-28.

"real or personal property law," and he cannot show lawful possession of the email that was searched, which the Tenth Circuit has recognized as an "important consideration in determining whether a defendant had a legitimate expectation of privacy" in the area or item searched. *United States v. Lyons*, 992 F.2d 1029, 1031-32 (10th Cir. 1993).[37]  When AOL exercised its rights to monitor Ackerman's email, terminated Ackerman's account, generated a report containing the email and embedded images, and turned it over to NCMEC, Ackerman lost any claim that concepts of real or personal property law support his asserted privacy interests in the material that he seeks to suppress.[38]

Neither has Ackerman shown that his claimed expectation of privacy draws legitimacy from "understandings that are recognized and permitted by society."  In considering claims that an individual had a reasonable expectation of privacy in a hotel room and its contents, the Tenth Circuit has recognized that "mere physical possession or control of property" is insufficient to establish an expectation of privacy meeting the "standard of societal reasonableness". *Conway*, 73 F.3d at 979-80.  Society generally would not recognize as reasonable any claimed expectation of privacy in a rented dwelling such as a hotel room when a third party has taken lawful steps to take control over that dwelling;[39] an individual may lack a legitimate expectation of privacy in an

---

[37] Of course, defendant can have no lawful property or possessory interest in the four contraband child pornography images themselves. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 250, (2002); *Osborne v. Ohio,* 495 U.S. 103, 110 (1990); cf. *Illinois v. Caballes*, 543 U.S. 405, 408 (2005) ("[A]ny interest in possessing contraband cannot be deemed 'legitimate.'").

[38] Nor could Ackerman establish constructive possession over his email at the time of NCMEC's review. *See, e.g., United States v. Lopez*, 372 F.3d 1207, 1212 (10th Cir. 2004) ("constructive possession exists where the defendant knowingly has the power to exercise control or dominion over the item.").  To the extent that the Tenth Circuit's opinion suggests that review of the copy of the email and images submitted to NCMEC might be considered a trespass to chattels under the framework of *United States v. Jones*, Ackerman would lack standing to bring such a claim because he neither controlled nor had constructive or actual possession of the email and images at the time of the purported intrusion, when NCMEC reviewed the email and images.

[39] *See Creighton*, 639 F.3d at 1286; *Croft*, 429 F.2d at 887.

otherwise protected place even where the private party has not yet exercised its right to exclude, as when the rental period expires.[40] In this case, AOL affirmatively exercised its rights to control the email account, such that Ackerman could only use it "until it was stopped,"[41] which was unquestionably before NCMEC's allegedly unconstitutional review of the email and images contained in AOL's CyberTipline Report. Accordingly, Ackerman cannot meet his burden of establishing that any expectation of privacy in the materials from AOL was one that society is prepared to recognize as reasonable, after AOL found an email containing child pornography on its system, asserted lawful control, and terminated Ackerman's account.

## III. Any search conducted by NCMEC was reasonable

Even if Ackerman could establish that he has a Fourth Amendment interest in the contents of AOL's CyberTipline Report, NCMEC's review of the email included in that report was reasonable and therefore complied with the Fourth Amendment.

"As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is 'reasonableness.'" *Maryland v. King*, 133 S. Ct. 1958, 1969 (2013) (citation omitted). A "warrant is not required to establish the reasonableness of *all* government searches; and when a warrant is not required (and the Warrant Clause therefore not applicable), probable cause is not invariably required either." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995). In deciding whether a warrantless search is permissible, this Court "balance[s] the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." *King*, 133 S. Ct. at 1970 (citation omitted). That balancing weighs "on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the

---

[40] *Croft*, 429 F. 2d at 887; see also *Johnson*, 584 F.3d at 1003-04.

[41] Transcript II at 155.

degree to which it is needed for the promotion of legitimate government interests." *United States v. Knights*, 534 U.S. 112, 119 (2001). In light of those principles, even if NCMEC's review of AOL's CyberTipline report qualified as a Fourth Amendment search, that review would be constitutionally reasonable.

Under traditional Fourth Amendment standards, Ackerman had no legitimate expectation of privacy in the email attached to the CyperTipline report at the time of NCMEC's review. *See* Part II, *supra*. But even if this Court disagreed, Ackerman could at most assert only a diminished expectation of privacy for the reasons set forth above. Ackerman's diminished expectation of privacy is a factor that "may render a warrantless search or seizure reasonable." *King*, 133 S. Ct. at 1969 (citation omitted). Furthermore, any invasion of Ackerman's assumed privacy interest was minimal because – at the time of NCMEC's review – AOL had already partially determined the contents of the email, by using hash values to identify one of the four images that it contained as a previously identified image of child pornography.[42] In addition, it is significant that the email contained child pornography, which Ackerman could have no legitimate interest in possessing. *Cf. Illinois v. Caballes*, 543 U.S. 405, 408 (2005) ("[A]ny interest in possessing contraband cannot be deemed 'legitimate.'").

On the other side of the reasonableness balance, the government has "a compelling interest in safeguarding the physical and psychological well-being of minors, destroying the market for child pornography, and preventing the re-victimization of abused and exploited children." *Nelson v. Roberts*, No. 15-3083-EFM, 2016 WL 7405664, at *4 (D. Kan. Dec. 21, 2016) (citing *Osborne v. Ohio*, 495 U.S. 103, 111 (1990), and *New York v. Ferber*, 458 U.S. 747, 756, 760-62 (1982)).

---

[42] *Cf. United States v. Davis*, 785 F.3d 498, 517-18 (11th Cir. 2015) (en banc) (obtaining phone carrier's cell-site location records with a court order was not a Fourth Amendment search; in the alternative, even if obtaining these records was a search, it was constitutionally reasonable).

"The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."[43] To that end, NCMEC uses "information that's reported into the CyberTipline to drive [their] prevention and educational departments."[44] The statutory scheme that authorizes NCMEC to operate the CyberTipline advances that interest by directing ISPs to report actual knowledge of apparent child-pornography crimes to NCMEC. *See* 18 U.S.C. § 2258A(a). In enacting this scheme, Congress specified that ISPs' CyberTipline reports may include "[t]he complete communication containing any image of apparent child pornography," 18 U.S.C. § 2258A(b)(5), and that NCMEC "shall minimize the number of employees that are provided access to any image provided under section 2258A," 18 U.S.C. § 2258D(d)(1). These provisions demonstrate Congressional intent that NCMEC employees reviewing a CyberTipline report may access any images that are submitted with communications containing child pornography.

In short, a traditional balancing of interests supports the conclusion that NCMEC acted reasonably when it reviewed the email and images that AOL included in its CyberTipline report about Ackerman. Accordingly, even if NCMEC's review constituted a search, that search complied with the Fourth Amendment.

**IV.    The exclusionary rule should not be applied to any Fourth Amendment violation**

Even if the Court finds that NCMEC's review of the contents of AOL's CyberTipline report violated the Fourth Amendment, suppression is unwarranted because NCMEC and law enforcement acted in good faith. Neither NCMEC nor law enforcement demonstrated a deliberate, reckless, or grossly negligent disregard for the defendant's Fourth Amendment rights and,

---

[43] *New York v. Ferber*, 458 U.S. 747, 757 (1982).

[44] Transcript II, p. 71-72.

therefore, suppression of the evidence would not serve the exclusionary rule's "sole purpose," which is "to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236-37 (2011) (citations omitted).[45]  When the actions in this case took place, neither NCMEC nor law enforcement had any reason to believe that NCMEC was acting as a government agent in its longstanding operation of the CyberTipline.  Therefore, this Court should follow the district court's approach in *United States v. Keith*, 980 F. Supp. 2d 33, 45-46 (D. Mass. 2013), and hold that the evidence obtained should not be suppressed because the good-faith exception to the exclusionary rule applies.[46]  If this Court finds that the government acted in good faith, it may choose to bypass the more difficult constitutional issues presented by this case.

In April 2013, NCMEC reviewed Ackerman's CyberTipline report, including the email and its contents, and forwarded the materials to law enforcement.  Law enforcement executed the federal search warrant for Ackerman's residence on May 30, 2013.  It was not until November 2013 that the district court in *Keith* became the first federal court to hold that NCMEC acted as part of the government in its operation of the CyberTipline.  980 F. Supp. 2d at 33.

Despite finding that NCMEC was a government agent and that it had violated the Fourth Amendment in expanding AOL's private search of the defendant's email, the district court in *Keith* declined to suppress the evidence.  The court observed that, in *Illinois v. Krull*, 480 U.S. 340 (1987), the Supreme Court "held that the exclusionary rule should not be applied to suppress evidence obtained by officers who acted in objectively reasonable reliance on a statutory scheme

---

[45] Although the defendant's motion to suppress concerns only the email and images submitted by AOL to NCMEC, the reasons weighing against suppression of those materials would apply equally or even more forcefully to evidence obtained pursuant to the search warrant for the defendant's residence in Lebanon, Kansas.

[46] Before Ackerman's appeal, the government previously raised this claim in its response to Ackerman's motion to suppress.  Doc. 14 at 28-30.

that authorized warrantless administrative searches, even though the statute was later found to violate the Fourth Amendment." 980 F. Supp. 2d at 45-46 (citing *Krull*, 480 U.S. at 340). The court observed that *Krull* is "similar to this case" because "Congress has by statute given NCMEC's CyberTipline a significant role in the investigation and subsequent prosecution of child pornography crimes, and has directed that it be supported by government grants." *Id.* at 46. The court acknowledged that "those who heretofore regarded NCMEC's role only as that of a private party, so that the Fourth Amendment was inapplicable, were not acting in willful or negligent disregard of constitutional principles, but rather pursuant to a view of NCMEC's statutorily sanctioned role." *Ibid.* Thus, "under all the circumstances," the actions of NCMEC and the government in the case were "objectively reasonable, just as the officers' view of the statutory scheme was found to be in *Krull*." *Ibid.*

*Krull* applies with the same force here. Like in *Keith*, there "is nothing in the record in this case that would suggest either NCMEC or the police or the magistrate who issued the warrant" to search Ackerman's residence "knew or ought to have known that by relying on the CyberTipline report they were doing something that was unconstitutional under the Fourth Amendment." *Keith*, 980 F. Supp. 2d at 46. NCMEC has been operating the CyberTipline since 1998, and until *Keith*, no federal court had ever questioned whether NCMEC had the authority to review the content of emails flagged as containing child pornography, nor had any court held that NCMEC was a government agent or actor. In fact, prior to *Keith*, the First Circuit had described NCMEC as a private entity. *United States v. Cameron*, 699 F.3d 621, 644 (1st Cir. 2012) (while not reaching the question of whether NCMEC acted as a government agent in running the CyberTipline, noting that "NCMEC is not officially a government entity").

There can be little question that NCMEC and law enforcement were acting in objectively

reasonable reliance on the federal statutory scheme in adopting the course of conduct that it pursued in its operation of the CyberTipline. As the court of appeals recognized, "NCMEC is statutorily obliged to * * * operate the CyberTipline as a means of combating Internet child sexual exploitation." *Ackerman*, 831 F.3d at 1296 (citing 42 U.S.C. § 5773(b)). "ISPs must report any known child pornography violations to NCMEC," which "is statutorily authorized to receive contraband (child pornography) knowingly and to review its contents intentionally." *Id.* at 1297 (citing 18 U.S.C. § 2258A(a), (b)(4)). "Congress allows NCMEC" to perform these actions "precisely because of the unique value it provides in the prosecution of child exploitation crimes." *Ibid.*

Suppression is a remedy of last resort, to be used for the *sole purpose* of deterring future Fourth Amendment violations, and only when the deterrence benefits of suppression outweigh its heavy costs. *Davis*, 564 U.S. at 236-37; *Herring v. United States*, 555 U.S. 135, 140-41 (2009). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. As *Keith* recognized, "[n]o persuasive argument can be made that an organization like NCMEC needs to be deterred from acting in good faith in a way that is consistent with explicit congressional will." 980 F. Supp. 2d at 46; *cf. United States v. Johnson*, 408 F.3d 1313, 1320, 1322-23 (10th Cir. 2005) (declining to suppress evidence seized pursuant to warrantless administrative search of automobile salvage business because officers "'relied, in objective good faith, on a statute that appeared legitimately to allow a warrantless administrative search of [defendant's] business'" (quoting *Krull*, 480 U.S. at 360)).

The costs of suppression, on the other hand, are significant. The court's suppression order, if affirmed, would exclude "reliable, trustworthy evidence bearing on [the defendant's] guilt or

innocence," *Davis*, 564 U.S. at 237, of an abhorrent crime that for decades has been "'a serious national problem.'" *Paroline v. United States*, 134 S. Ct. 1710, 1716 (2014) (quoting *New York v. Ferber*, 458 U.S. 747, 749 (1982)). "In this case, where the likely deterrent value of exclusion is so minimal, the balance tips decidedly against suppression." *Keith*, 980 F. Supp. 2d at 46. "Considering the unspeakable harm caused by child pornography, and the creative and limited conduct of [NCMEC and law enforcement] that was undertaken to mitigate that harm, th[is] Court [should] ha[ve] no trouble concluding that suppression is entirely unwarranted here." *United States v. Acevedo-Lemus*, No. 15-137-CJC, 2016 WL 4208436, at *8 (C.D. Cal. Aug. 8, 2016).

    Respectfully submitted,

    THOMAS E. BEALL
    United States Attorney

    s/ Jason W. Hart
    JASON W. HART, #20276
    Assistant United States Attorney
    301 N. Main, Suite 1200
    Wichita, KS  67202
    316-269-6481
    Fax: 316-269-6484
    Email: Jason.hart2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2017, I electronically filed the foregoing Supplemental Response with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Daniel Hansmeier and Melody Brannon, attorneys for the defendant.

    s/ Jason W. Hart
    JASON W. HART
    Assistant United States Attorney