**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-10176-01-EFM |
| | ) | |
| WALTER ACKERMAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**UNITED STATES' REPLY TO DEFENDANT'S**
**BRIEF ON REMAND (DOC. 88)**

This Court should deny the defendant's motion to suppress because NCMEC's review of the email and images submitted with AOL's CyberTipline report did not constitute a Fourth Amendment search. The Court of Appeals did not decide whether the defendant had a reasonable expectation of privacy in the email reviewed by NCMEC, instead determining that *if* the defendant had a reasonable expectation of privacy in the materials that he seeks to suppress, the private search doctrine does not shield the search from Fourth Amendment scrutiny. The Court of appeals explicitly recognized that this Court had not determined whether the defendant had a reasonable expectation of privacy at the time of the purported search, and its remand fully encompasses this question. *United States v. Ackerman*, 831 F.3d 1292, 1305, 1308-09 (10th Cir. 2016), *reh'g denied* (Oct. 4, 2016). The core question before this Court is thus whether the defendant had a reasonable expectation of privacy in the email and images at the time of the allegedly unconstitutional search. Under the totality of circumstances, any expectation of privacy that the defendant may have had in the email and images was not objectively reasonable after AOL terminated his account and submitted the email and images to NCMEC.

Nor did the Court of Appeals hold that the *Jones* trespass test applies to the facts of this case such that NCMEC conducted an unconstitutional trespassory search regardless of whether the defendant had a reasonable expectation of privacy at the time of NCMEC's actions. If the Court of Appeals had reached such a holding, it would not have remanded for this Court to determine the "hard questions [that] remain to be resolved on remand." *Id*. at 1308. At any rate, the defendant cannot make the threshold showing that he had a sufficient *possessory* interest in the copies of the email and images after they were submitted to NCMEC to have standing to bring a trespass-based challenge to their review.

If the Court finds that NCMEC's review of the email and images did constitute a Fourth Amendment search, it still may find that NCMEC's actions were reasonable and thus did not violate the Fourth Amendment. The government is not relying on the special needs doctrine, but on general reasonableness considerations recognized by the Supreme Court in *Maryland v. King*, 133 S.Ct. 1958, 1969 (2013) (citation omitted).

Finally, if this Court finds that NCMEC committed an unconstitutional search, the applicability of the good faith exception remains central to the determination of whether suppression is an appropriate remedy. Contrary to defendant's assertions, the Court of Appeals did not decide whether the good faith exception should apply to any unconstitutional search conducted by NCMEC. Rather, the court decided that the government's presentation of the good faith issue was "insufficient to preserve [this issue] for appellate review." 831 F.3d at 1308 (citations omitted). The Court of Appeals thus pointedly did not address the merits of the government's claim that the good faith exception should apply. And while an appellate decision that a particular issue has been waived on appeal can operate as law of the case on remand, this is only where the district court had decided the issue prior to the appeal. *Concrete Works of*

2

*Colorado, Inc. v. City and County of Denver*, 321 F.3d 950, 992-93 (10th Cir. 2003). This Court is thus free to decide – and should decide – that any Fourth Amendment violation that occurred when NCMEC reviewed the email and images submitted does not warrant suppression, because there was no deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, and suppression of the evidence would not serve the exclusionary rule's sole purpose of deterring future Fourth Amendment violations.

## I.      Whether a Fourth Amendment search occurred remains a question on remand

The Tenth Circuit's rulings on the merits were limited to these: 1) NCMEC is a government entity for purposes of the Fourth Amendment analysis; 2) even if NCMEC were not a government entity, it would be considered a government actor for purposes of the Fourth Amendment analysis; and 3) the "private search" doctrine did not apply. These rulings constitute the law of the case on remand.

The defendant asserts, "[a] Fourth Amendment search occurred in this case. The Tenth Circuit so held." Doc. 88 at 2. In fact, the Tenth Circuit declined to resolve whether a search implicating Fourth Amendment protections occurred, recognizing that NCMEC's actions "still implicate the Fourth Amendment only if a 'search' took place here" and then expressly noting that this Court had not ruled on the defendant's claimed reasonable expectation of privacy. 831 F.3d 1292 at 1304-05.[1] While the Tenth Circuit recognized that it *could* reach the merits of the defendant's claimed reasonable expectation of privacy, it stated that it would not rule on this issue, because the "attempt" would be "imprudent given that the district court has yet to make

---

1  In denying the Defendant's motion to suppress, this Court expressly declined to decide whether the Defendant had a reasonable expectation of privacy in his email.  *United States v. Ackerman*, 2014 WL 2968164, *5 (D. Kan. 2014) ("The court will assume, without deciding, that Defendant has a reasonable expectation of privacy in his email.").

any factual findings relevant to Mr. Ackerman's subjective expectations of privacy or the objective reasonableness of those expectations in light of the parties' dealings (*e.g.*, the extent to which AOL regularly accessed emails and the extent to which users were aware of or acquiesced in such access). Facts that could well impact the legal analysis." *Id*. at 1304-05. The Court of Appeals thus unequivocally declined to decide whether the defendant had a reasonable expectation of privacy and, instead, remanded that issue. *Id*.

Although the Court of Appeals' decision contains broad language that "NCMEC conducted a 'search' when it opened and examined Mr. Ackerman's email," this language is at the conclusion of its determination that NCMEC exceeded the scope of AOL's private search and that the private search doctrine was therefore inapplicable. *Id*. at 1307-08. The Tenth Circuit did not hold that NCMEC's actions constituted a Fourth Amendment search regardless of whether the defendant had a reasonable expectation of privacy. In addition to prefacing its discussion of the private search issue by clearly stating that it would not decide whether the defendant had a reasonable expectation of privacy, the conclusion of the opinion recognizes that "hard questions remain to be resolved on remand, not least the question whether the third-party doctrine might preclude Mr. Ackerman's claim to the Fourth Amendment's application, a question the government has preserved and the district court and we have reserved." *Id*. at 1308.

The authority cited by the defendant on the law of the case is contrary to his argument that the decision of the Court of Appeals already decided or in any way restricts the otherwise applicable factors that this Court can consider in determining whether the defendant had a reasonable expectation of privacy in the email and images in question at the time of the alleged search by NCMEC. In *United States v. West*, cited by the defendant, the Tenth Circuit stated the basic principle that the decision of the appellate court establishes the law of the case on remand.

646 F.3d 745, 748 (10th Cir. 2011) (declining to consider the defendant's sentencing claim regarding a prior conviction because the court had already decided that issue and remanded for resentencing in a prior appeal by the defendant). The court in *West* further explained that the district court did have discretion to expand the scope of the remand to consider a restitution issue because Tenth Circuit precedent establishes that, when a case is remanded for resentencing, "unless the district court's discretion is specifically cabined, it may exercise discretion on what may be heard." *Id*. at 749. *See also Concrete Works of Colorado, Inc.*, 321 F.3d at 992-93 ("[A] legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.") (citations omitted).

Under Tenth Circuit precedent, the Defendant's suggestion that the Court of Appeals somehow decided the defendant's reasonable expectation of privacy yet left open the possibility that the third-party doctrine – and only the third-party doctrine – could "upset that determination", Doc. 88 at 2, is untenable in light of the Court's unequivocal statements that it was not reaching the question of the defendant's reasonable expectation of privacy. While the third-party doctrine comprises a set of factors that can prevent a person from establishing a reasonable expectation of privacy throughout his dealings with a third party, other circumstances – including actions taken by a third party – may undercut a defendant's privacy interests such that they become no longer reasonable within the meaning of the Fourth Amendment. As a matter of law and logic, where the Tenth Circuit did not resolve the crucial questions of "subjective expectations of privacy or the objective reasonableness of those expectations", even referencing additional circumstances about the "parties dealings" that "could well impact the

legal analysis", 831 F.3d at 1305, this Court is not limited to the third-party doctrine in considering the defendant's claimed reasonable expectation of privacy.

II.     **The defendant fails to show he had an expectation of privacy that was objectively reasonable at the time of the alleged intrusion**

It is the defendant's burden to establish that he had a reasonable expectation of privacy under the circumstances existing at the time that the alleged invasion occurred. *Rawlings v. Kentucky*, 448 U.S. 98, 104-105 (1980); *United States v. Jacobsen*, 466 U.S. 109, 115 (1984). The defendant cannot meet his burden in this case.

The undisputed facts show that the government did not conduct a warrantless search of the defendant's email account. Nor did NCMEC ever search the defendant's email account. The "intrusion" at issue is NCMEC's opening and review of an email and four images sent from the defendant's account after they had been submitted as AOL's report to the CyberTipline. The defendant falls particularly short in articulating how any subjective expectation of privacy that he may have had in the email and images was one that society would recognize as objectively reasonable at the time that NCMEC "searched" these materials. Courts determining whether an expectation of privacy is reasonable look to whether it arises from a source "outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas v. Illinois*, 439 U.S. 128, 143–44 (1978). For his response, the defendant points to no concept of real or personal property law, or any understanding recognized or permitted by society, for his claim that he retained a sufficient privacy interest in the email and images after they had been submitted to NCMEC.

The defendant relies heavily on general privacy interests, such as those existing in correspondence sent through the mail, *cf. Ex Parte Jackson*, 96 U.S. 727, 733 (1877), and those

that may exist in the contents of a person's email account, *cf. United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010). These cases do not establish that privacy rights in correspondence continue until delivery to the original recipient in all cases, regardless of additional circumstances. *United States v. Gordon*, 168 F.3d 1222 (10th Cir. 1999), cited by the defendant, is contrary to his assertion. *See*. Doc. 88 at 3. In *Gordon*, the Tenth Circuit held that the defendant had no reasonable expectation of privacy in letters sent to a prison that were seized *prior to delivery*, where the search and seizure of the letters was lawful and likely. 168 F.3d at 1228. In *Warshak*, 631 F.3d at 266, in which the court rejected the government's use of a subpoena to conduct a warrantless search of the defendant's email account, the Sixth Circuit reasoned that the mere right or ability of a third party to access communications is not "decisive" in determining whether a person has a reasonable expectation of privacy in those communications.[2] This observation does not mean, however, that courts assessing a defendant's claimed reasonable expectation of privacy after a third party ISP actually has exercised its rights to monitor and control communications on its system should ignore these and other intervening circumstances.

Nor does the Tenth Circuit's holding that NCMEC exceeded the scope of AOL's private search make AOL's search and the other actions taken by AOL irrelevant to the Court's determination of whether the defendant possessed a legitimate expectation of privacy at the time of NCMEC's contested actions. To the contrary, the court recognized that "dealings" between

---

[2] The defendant is of course correct that in cases that fall under the third-party doctrine, or where there are user agreements such as those involved in *United States v. Young*, 350 F.3d 1302, 1304 (11th Cir. 2003), a defendant may be unable to establish a reasonable expectation of privacy in information or effects at any point, regardless of actions taken by the third party. *See also Warshak*, 631 F.3d at 266 (noting that "if the ISP expresses an intention to 'audit, inspect, and monitor' its subscriber's emails, that might be enough to render an expectation of privacy unreasonable.") Because this case does not involve the warrantless search of the defendant's email account, the question before the Court is not whether the defendant generally had a reasonable expectation of privacy in his email account, such that the government could have conducted a warrantless search of that account.

the defendant and AOL were relevant to the defendant's claimed reasonable expectation of privacy. 831 F.3d at 1305.

The government does not propose a new "termination test", Doc. 88 at 16, but instead relies on longstanding authority governing the assessment of a defendant's claimed reasonable expectation of privacy where the defendant's privacy interests are derived from a third party. The hotel search cases are based on the premise that a defendant legitimately occupying a hotel room is entitled to the same privacy protections for the room and its contents as a person in his own home. *See, e.g.*, *United States v. Anthon*, 648 F.2d 669, 675-76 (10th Cir. 1981). As recognized by these cases, however, a defendant may be unable to establish that he has a legitimate expectation of privacy in a hotel room or he may lose his existing privacy interests in a hotel room and its contents after the hotel regains or reasserts control over the room.

The defendant suggests that the hotel search cases cited by the government are inapposite because they did not involve "termination by a third party". Doc. 88 at 12-13. It is irrelevant whether a hotel search case involves the loss of a reasonable expectation of privacy because the rental period has lapsed, as in *United States v. Croft*, 429 F.2d 884, 887 (10th Cir. 1970), because of eviction for non-payment of rent, as in *United States v. Creighton*, 639 F.3d 1281, 1287-88 (10th Cir. 2011), or because of termination of the right to occupy the room for some other reason. To the extent that hotel search cases involving eviction for cause are particularly relevant, however, there are plenty of those as well. *See United States v. Banks*, 262 Fed. Appx. 900, 905 (10th Cir. Feb. 1, 2008) (finding that defendant who had been evicted from hotel room had no reasonable expectation of privacy therein and explaining that the reasoning of Croft, which involved the expiration of the rental period, was equally applicable to eviction); *United States v. Peoples*, ___ F.3d ___, 2017 WL 1429099 (8th Cir. Apr. 24, 2017); *United States v.*

*Molsbarger*, 551 F.3d 809, 811 (8th Cir. 2009). In *United States v. Allen*, 106 F.3d 695, 699–700 (6th Cir. 1997), the Sixth Circuit first found that the private search doctrine does not apply to the search of a hotel room (which is akin to a home), but then held that the actions taken by the hotel to evict the defendant from his room extinguished his privacy interests in the room's contents. As the court in *Allen* explained:

> Upon learning that Allen was keeping contraband within the motel, the motel manager locked Allen out of his room. With this action, the motel manager divested Allen of his status as an occupant of the room, and concomitantly terminated his privacy interest in its contents. Once the manager, through private action took possession of the motel room, Allen could no longer assert a legitimate privacy interest in its contents.

*Id*. And, as the hotel cases indicate, the defendant's quip (that a defendant who loses rights to occupy his hotel room does not automatically lose *property* rights in the contents of the room) has no bearing on whether he has lost his *privacy* rights in the room and its contents for purposes of the Fourth Amendment.

The hotel cases illustrate that the defendant cannot establish that he had a legitimate expectation of privacy in the email and images contained in AOL's CyberTipline Report, at the time of NCMEC's allegedly unconstitutional review of those materials. NCMEC's review occurred after AOL affirmatively exercised its rights to monitor and control its system, terminated Ackerman's account and his ability to access or control his email, and delivered the email and images to NCMEC rather than to the intended recipient. Thus, the defendant can point to no legal support of his "privacy" claim at the point of NCMEC's review.

## III.    The *Jones* trespass test does not apply to this case

In *Katz v. United States*, 389 U.S. 347, 353, (1967), the Supreme Court held that the Fourth Amendment does not "turn upon the presence or absence of a physical intrusion into any

given enclosure," and made clear that the "trespass doctrine" enunciated by the Court's previous holdings, which required "physical trespass" and the "seizure of a material object", no longer limited the reach of the Fourth Amendment's protections. In *United States v. Jones*, 132 S. Ct. 945 (2012)*,* the Court made clear that the reasonable expectation of privacy test supplemented but did not supplant the physical trespass test, holding that the warrantless installation and use of a Global Positioning System (GPS) tracking device on a vehicle to continuously monitor its movements over the course of 28 days constituted a trespassory "search" under the Fourth Amendment without regard to whether it infringed on a reasonable expectation of privacy. *Id*. at 949-50. *Jones* did not create a new, hybrid formulation of Fourth Amendment rights, which borrows from *Katz* to define "trespass" as an invasion of a person's *privacy* interests in order to gain information. Yet the defendant repeatedly relies on cases that considered only the defendant's privacy interests, and attempts to use those cases to argue that NCMEC's actions constituted a trespassory search violating the Fourth Amendment. The Court should reject the defendant's invitation to borrow aspects of distinct formulations laid out by the Supreme Court in *Katz* and *Jones* to cobble together a new standard for whether a Fourth Amendment search has occurred.

The Tenth Circuit did not hold that the *Jones* trespass test applies to electronic mail or to the facts of this case such that a Fourth Amendment search occurred regardless of whether the defendant had a reasonable expectation of privacy at the time of the search. If the Court of Appeals had so held, it would not have remanded for this Court to determine whether the defendant had a reasonable expectation of privacy. Instead, the Tenth Circuit's discussion of trespass is framed as a confirmation of its holding that NCMEC exceeded the scope of AOL's private search under *United States v. Jacobsen*, 466 U.S. 109 (1984). The opinion first concludes

that the private search doctrine does not apply to NCMEC's actions because "opening the email and viewing the three other attachments – was enough to risk exposing private, noncontraband information that AOL had not previously examined"; this section is immediately followed by the discussion of the *Jones* trespass theory, which begins by stating: "[o]ur conclusion about this is *confirmed* by yet another and distinct line of authority." 831 F.3d at 1307-08 (emphasis added). The panel's discussion of *Jones* is thus pointedly tethered to its application of the *Jacobsen* private search doctrine, and the panel questioned whether *Jones* created "reason to wonder about" the Supreme Court's conclusion in the second part of *Jacobsen* that the field test for cocaine was not a Fourth Amendment search and whether "reexamining the facts of *Jacobsen* in light of *Jones*, it seems at least possible the Court today would find that a 'search' *did* take place there." *Id*. at 1307 (emphasis in original). The single paragraph discussing the applicability of the *Jones* trespass theory to the defendant's case contains similar qualifying language, describing *Jones*'s "potential" impact and prefacing what the defendant characterizes as a holding with the word "seems". *Id*. at 1307 ("that seems pretty clearly to qualify as a trespass to chattels"). The combination of the qualifying language repeatedly used in the panel's discussion of trespass and the fact that it was not necessary to the court's resolution of the private search issue indicate that it should be treated as dicta. *See Bishop v. Smith*, 760 F.3d 1070, 1083 (10th Cir. 2014) ("Statements which appear in an opinion but which are unnecessary for its disposition are dicta."). To the extent that the panel's discussion of the applicability of *Jones* to electronic mail is an operative holding, it is confined to the court's determination that NCMEC exceeded AOL's private search.

   *Jones* does not support the broad reading urged by the Defendant. Critical to the Supreme Court's decision in *Jones* was the government's acquisition of information "by physically

intruding on a constitutionally protected area" – the suspect's automobile – to attach the device. *Id*. at 950 n.3; *see id*. at 954 (explaining that the case involved "a classic trespassory search"). *Jones* was limited not just by its facts but by its express language to physical intrusion, with the Court also emphasizing: "[i]t is important to be clear about what occurred in this case: The Government physically occupied private property for the purpose of obtaining information. We have no doubt that such a physical intrusion would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." 132 S.Ct. at 949.[3] The majority opinion in *Jones* stated that "[s]ituations involving merely the transmission of electronic signals without trespass" should continue to be evaluated under the *Katz* reasonable expectation of privacy framework.  132 S. Ct. at 953.

The application of the *Jones* trespass test to electronic mail urged by the Defendant would effectively supplant the *Katz* reasonable expectation of privacy test. The defendant relies almost exclusively on cases that turn on the defendant's Fourth Amendment *privacy* interests, such as *Ex parte Jackson*, 96 U.S. 727 (1877) and *United States v. Gordon*, 168 F.3d 1222 (10th Cir. 1999), while glossing over the property and possessory interests that are central to trespass law and the Supreme Court's trespass-based ruling in *Jones. See* Doc. 88 at 4-9. The defendant has not even cited authority applying the *Jones* test rather than the *Katz* test to the physical opening of physical correspondence, such as a Federal Express package. Skipping this step, he urges an even broader application of *Jones.* He seems to suggest that the opening or viewing of a copy of an email, which a person created and in which he had or has a *privacy* interest at any point before its "delivery to the intended recipient," must constitute a Fourth Amendment

---

3 In *Florida v. Jardines*, 133 S. Ct. 1409, 1417 (2013), in which the Court also applied the trespass test, the Court described its holding in *Jones*, explaining that "because the GPS receiver had been physically mounted on the defendant's automobile (thus intruding on his 'effects'), we held that tracking the vehicle's movements was a search."

trespass under *Jones*. Doc. 88 at 7.

To the extent that clicking on or opening an email created by another person could qualify as a "trespass to chattels" under *Jones*, the record in this case would not support such an application. The record shows that AOL created and submitted an email file as part of its report to the CyberTipline. Doc. 61, Transcript I, p. 96. The email created by AOL had the filename aol_idfp_3634.eml, and contained the email and four child pornography images sent from Ackerman's account. *Id.*; *see also* Exhibit 1, p. 5. This .eml file created by AOL was the email file opened by NCMEC (and later by law enforcement). Doc. 62, Transcript II, p. 79 & 89; Doc. 61, Transcript I, p. 9 & 12. There was no testimony on whether, upon opening the .eml file created by AOL, the NCMEC analyst would have had to deliberately click on the child pornography image files to open them.[4]  Therefore, if opening an email is akin to installing a tracker on a "protected space or thing" such as a vehicle, any trespass committed by opening an email was against AOL, which created the .eml file, rather than against the defendant.[5]

That distinction might not be crucial to determining the defendant's privacy interests, but it undermines his claim of trespass. The defendant also does not attempt to explain how his proposed analytical framework would apply if the email had been copied 100 or 1,000 times (would opening any of those copies constitute a trespass?) or whether the inquiry into whether a search occurred should turn on whether the person viewing the email is using a program that automatically previews emails or whether email is opened by physically clicking on the file. This Court need not delve into these complications, however, because the defendant clearly lacks

---

4 This may have depended on the computer program being used. Doc. 61, Transcript I, p. 54. Testimony indicates that Agent Moore did not separately open email created by defendant but that he clicked directly on image files. Doc. 61, Transcript I, p. 9, 12, 50-51.

5 The defendant is not claiming that he created the image files, or that he has a property interest in the image files themselves.

standing to bring a trespass-based Fourth Amendment claim.

## IV.     Defendant lacks standing to bring a trespass claim

The Defendant cannot establish a sufficient possessory or property interest in the copy of the email and images contained in AOL's CyberTipline Report to have standing to challenge any trespass committed by NCMEC when it reviewed those materials. The existence of a sufficient possessory interest is essential to a claim for trespass to chattels, under modern tort law and at common law. *See, e.g.*, The Restatement (Second) of Torts § 217(b) (a trespass to chattel may be committed by intentionally using or intermeddling with the chattel in possession of another); Prosser & Keeton, *Prosser and Keeton on Torts,* § 14, 85–86 (1984) (A trespass action at common law could be based on "any direct and immediate intentional interference with a chattel in the possession of another."); *Ward v. Macauley*, (1791) 100 Eng. Rep. 1135, 1135 (K.B.) (Kenyon, C.J.) (trespass action is "founded on possession"). The sufficiency of the defendant's property or possessory interest was not at issue in *Jones.* Despite this, the Supreme Court explicitly noted that, although the Jeep into which the government placed the tracking device was registered to the defendant's wife, the government had acknowledged that the defendant was the "exclusive driver" of the vehicle, that "[i]f Jones was not the owner he had at least the property rights of a bailee," and that the government had not challenged that determination. *Id.* at 948–49 & n.2. The Court further emphasized the significance of having sufficient possessory rights at the time of the alleged trespass in distinguishing its earlier decision in *United States v. Karo*, 468 U.S. 705 (1984), by emphasizing that the defendant in *Karo* was not in possession of the container at the time that the beeper was inserted, whereas "*Jones, who possessed the Jeep at the time the Government trespassorily inserted the information-gathering device*, is on much

different footing." *Jones*, 565 U.S. at 410 (emphasis added).

Standing to bring a trespass-based Fourth Amendment claim under *Jones* requires a showing of a sufficient possessory interest in the place or thing that was intruded upon. In *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1186–87 (9th Cir. 2015), for example, the court noted that "even if a trespassory search occurred" when the police entered a warehouse that was being used as a party space, those who merely had permission to be in the space did not have standing to bring a Fourth Amendment trespass claim. The Ninth Circuit held that, in contrast, the organizers of the event had standing to bring a trespass claim because:

> The organizers had possession of the warehouse, the right to control it, and the right to bring an action in trespass against intruders. *See Smith v. Cap Concrete Inc.,* 133 Cal.App.3d 769, 184 Cal.Rptr. 308, 310 (1982) ("The cause of action for trespass is designed to protect *possessory*—not necessarily ownership—interests in land from unlawful interference. The proper plaintiff in an action for trespass to real property is the person in actual possession...." (citations omitted)). After Cortez impeded Officers Cho and Cervantes at the warehouse door and objected to their presence, the officers' entry into the warehouse was trespassory, thereby implicating *Jones.*

807 F.3d 1178, 1188–89.

Similarly, in the civil tort context, cases applying the trespass to chattels doctrine to electronic communications, including those cited by the Tenth Circuit in *Ackerman*, turn on interference with the possessory interests of one bringing a claim. *See, e.g., eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1069-70 (N.D. Cal. 2000) (granting eBay's request for a preliminary injunction in trespass to chattels cause of action based on use of webcrawlers that interfered with operation of eBay's servers, and noting that "trespass to chattels 'lies where an intentional interference with the possession of personal property has proximately cause injury.'") (quoting *Thrifty–Tel v. Bezenek,* 46 Cal.App.4th 1559, 1566, 54 Cal.Rptr.2d 468 (1996)); *CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F.Supp.1015, 1021 (S.D. Ohio 1997) (finding

that interference with plaintiff's "proprietary computer equipment" through the transmission of bulk, unsolicited email could constitute a trespass to chattels and noting that requirement of possession was met because "[i]t is undisputed that plaintiff has a possessory interest in its computer systems"); *See also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404–05 (2d Cir. 2004) (recognizing that "[a] trespass to a chattel may be committed by intentionally ... using or intermeddling with a chattel in the possession of another," and upholding district court determination that the use of search robots that "consumed a significant portion of the capacity of Register's computer systems" could constitute a trespass to chattels); *Am. Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444, 451–52 (E.D. Va. 1998) ("A trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization").

The cases cited by the defendant concerning general privacy interests in mailed or electronic correspondence do nothing to show that he had a cognizable possessory interest in the email and images reviewed at the time of the alleged trespass by NCMEC. The undisputed facts show that the government did not conduct a warrantless search of the defendant's *email account*, and that NCMEC reviewed only the email and images that AOL submitted with its CyberTipline Report. The Defendant has not cited any authority for his claim that he had possession of the email and images at the time of NCMEC's review or that any possession was sufficient for his trespass to chattels claim, which requires possession of the chattel at the time of the alleged trespass.[6] The defendant unquestionably did not have actual possession of the email and images at the time of NCMEC's review. Nor did he have constructive possession under any Tenth Circuit authority. The quote from *United States v. Medina-Ramos*, 834 F.2d 874, 876 (10th Cir.

---

6 *In re U.S. for Historical Cell Site Data*, 724 F.3d 600, 611 (5th Cir. 2013), cited by the defendant, concerned *privacy interests* under the third-party doctrine.

Case 6:13-cr-10176-EFM   Document 96   Filed 05/08/17   Page 17 of 20

1987) cited by the defendant, Doc. 88 at 6, is from the dissent in that case, in which the Tenth Circuit ruled that venue for a drug offense in New Mexico was improper when the defendants had never physically possessed the drugs in that state and had earlier been removed from the train and lost their ability to control the drugs. *Medina-Ramos* also states the blackletter law that "[a] person in constructive possession of an item knowingly holds the power and ability to exercise dominion and control over it.... 'In essence, constructive possession is the ability to reduce an object to actual possession.' " *Id.* (citing *United States v. Massey,* 687 F.2d 1348, 1354 (10th Cir.1982)).

Although the defendant may have had constructive possession over the email and images at the time that he sent them, AOL terminated his ability to access or control those materials when it terminated his account and provided a copy of the email and images to NCMEC rather than the intended recipient. Any interference with the defendant's *possessory* interests in the email and images occurred before NCMEC's alleged trespass. Ackerman cannot base a trespass claim on something that he did not control or possess at the time of the purported intrusion.

That a person would not lose existing legitimate *property* interests simply by using a carrier such as FedEx or an electronic mail service such as AOL to send those materials does not provide the defendant with standing to bring a trespass to chattels claim under *Jones*.[7] While the defendant is certainly correct that the Fourth Amendment protects both privacy and property interests, the specific tort of trespass to chattels incorporated into the *Jones* trespass test requires

---

7 The government is not claiming that the fact that the four images were contraband – without more – prevents the defendant from having *any* Fourth Amendment interest in the image files. *Cf. United States v. Jeffers*, 342 U.S. 48, 54 (1951) ("since the evidence illegally seized was contraband the respondent was not entitled to have it returned to him. It being his property, for purposes of the exclusionary rule, he was entitled on motion to have it suppressed as evidence on his trial."). While the defendant is correct that the later discovery of contraband does not prevent a defendant from making a Fourth Amendment claim that *otherwise* applies, he cites no authority for the argument that a person can have sufficient property interests in contraband to support a trespass to chattels claim under *Jones*.

possession of the chattel at the time of the alleged trespass.

## V.     Any search conducted by NCMEC was reasonable

Even if the defendant could establish that he has a Fourth Amendment interest in the contents of AOL's CyberTipline Report, NCMEC's review of the email included in that report was reasonable and therefore complied with the Fourth Amendment. The government is not making an argument based on the special needs doctrine, as suggested by the defendant. Instead, the government is relying on the general reasonableness standard most recently adopted by the Eleventh Circuit Court of Appeals as an alternate holding in *United States v. Davis*, 785 F.3d 498, 517-18 (11th Cir. 2015) (en banc) (obtaining phone carrier's cell-site location records with a court order was not a Fourth Amendment search; in the alternative, even if obtaining these records was a search, it was constitutionally reasonable). The ultimate measure for constitutionality is the reasonableness of the search. Balancing the defendant's privacy concerns in the email and four images contained in AOL's CyberTipline report against the weighty and legitimate governmental interests advanced by NCMEC's conduct, NCMEC acted reasonably when it reviewed the materials submitted by AOL.

## VI.    The exclusionary rule should not be applied to any Fourth Amendment violation

Finally, even if this Court finds that NCMEC's review of the contents of AOL's CyberTipline report violated the Fourth Amendment, the Court can and should find that suppression is unwarranted because NCMEC and law enforcement acted in good faith.

Contrary to defendant's assertions, and as discussed in the preface, the Court of Appeals did not decide whether the good faith exception should apply to any unconstitutional search

conducted by NCMEC, instead determining that the government had insufficiently presented and preserved the issue for appellate review. 831 F.3d at 1308 (citations omitted). The Court of Appeals thus pointedly did not address the merits of the government's claim that the good faith exception should apply. The defendant's recitation of cases recognizing the basic principle that issues decided by a higher court should not be re-litigated in subsequent proceedings in the same case, see Doc. 88 at 20-22, does nothing to advance his suggestion that an Appellate Court's *refusal* to consider an issue on appeal operates as the law of the case.

And while an appellate decision that a particular issue has been waived on appeal can operate as law of the case on remand, this is only where the district court had decided the issue prior to the appeal. *Concrete Works of Colorado, Inc. v. City and County of Denver*, 321 F.3d 950, 992-93 (10th Cir. 2003); *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 206 n. 22 (4th Cir. 1982). Since this Court did not reach the applicability of the good faith exception in the ruling appealed by the defendant, the Tenth Circuit's determination that the government failed to preserve this point for appellate review does not implicate either the "law of the case" doctrine or the corollary "mandate rule."

This Court is thus free to decide – and should decide – that any Fourth Amendment violation that occurred when NCMEC reviewed the email and images submitted does not warrant suppression, because both NCMEC and law enforcement acted in good faith and because suppression of the evidence would not serve the exclusionary rule's sole purpose of deterring future Fourth Amendment violations.


Respectfully submitted,

THOMAS E. BEALL
United States Attorney

s/ Jason W. Hart
JASON W. HART, #20276
Assistant United States Attorney
301 N. Main, Suite 1200
Wichita, KS  67202
316-269-6481
Fax: 316-269-6484

Email: Jason.hart2@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2017, I electronically filed the foregoing Reply with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Daniel Hansmeier and Melody Brannon, attorneys for the defendant.

s/ Jason W. Hart
JASON W. HART
Assistant United States Attorney